1  Paul R. Kiesel, State Bar No. 119854
     kiesel@kiesel-law.com
2  Helen Zukin, State Bar No. 117933
     zukin@kiesel-law.com
3  Matthew A. Young, State Bar No. 266291
     young@kiesel-law.com
4  Cherisse H. Cleofe, State Bar No. 290152
     cleofe@kiesel-law.com
5  **KIESEL LAW LLP**
   8648 Wilshire Boulevard
6  Beverly Hills, California 90211-2910
   Tel:   310-854-4444
7  Fax:   310-854-0812

8  Attorneys for Plaintiff
   KRISTIN BIORN

9

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  KRISTIN BIORN,                        Case No.

14          Plaintiff,                    **COMPLAINT FOR DAMAGES**

15      v.                                1.  Strict Products Liability -
                                              Manufacturing Defect
16  WRIGHT MEDICAL TECHNOLOGY,            2.  Strict Products Liability - Failure to
    INC., a Delaware corporation; and         Warn
17  WRIGHT MEDICAL GROUP, INC., a         3.  Negligence
    Delaware corporation,                 4.  Negligence - Failure to
18                                            Recall/Retrofit
            Defendants.                   5.  Breach of Implied Warranty
19                                        6.  Fraudulent Misrepresentation
                                          7.  Fraudulent Concealment
20                                        8.  Negligent Misrepresentation

21                                        **DEMAND FOR JURY TRIAL**

22

23

24      COMES NOW the Plaintiff, Kristin Biorn, by and through her attorneys of

25  record, Kiesel Law LLP, and hereby files this Complaint for Damages and Jury

26  Trial Demand against Defendants Wright Medical Technology, Inc., a Delaware

27  corporation and Wright Medical Group, Inc., a Delaware corporation, to allege the

28  following causes of action against Defendants, and each of them, as follows:

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**NATURE OF THE ACTION**

1. Defendants have known for several years that their hip replacement device – the Wright Medical PROFEMUR® Total Hip System with PROFEMUR® Stem (the "Stem") and PROFEMUR® Neck (the "Neck") (collectively referred to as "the PROFEMUR® Total Hip System" or "the Device") – was prone to fail within a few years of implantation despite the fact that hip implant devices typically last more than twenty years. The Stem and Neck of Defendants' Device is comprised of cobalt-chromium alloy. Defendants have long known that their Device has a tendency to fracture at the location of the highest tensile stress concentration in the Neck-Stem-body transition during even low to moderate physical activity. As a result of the Device's defects and Defendants' tortious acts/omissions, Plaintiff Kristin Biorn, and many other patients who received these devices, endured unnecessary pain and suffering; debilitating lack of mobility; and a subsequent more difficult revision surgery to replace the faulty Device, giving rise to more pain and suffering, prolonged recovery time, and increased risk of complications and death from surgery.

2. Plaintiff Kristin Biorn has suffered from unnecessary pain, debilitation, hospitalization, and the need to undergo subsequent revision surgery because Defendants defectively designed the Device and failed to adequately warn of the dangers of the Device. Significantly, consequent to reports of complaints of the defects in and fractures of the Device, Defendants have ceased marketing the titanium version of the Device.

**PARTIES**

3. Plaintiff Kristin Biorn (hereinafter "Plaintiff") is, and all times relevant hereto was, a resident and citizen of Los Angeles, California. Plaintiff underwent a left total hip arthroplasty on August 20, 2013. At that time, the PROFEMUR® Total Hip System manufactured, designed, distributed, and warranted by Defendants was implanted into Plaintiff. Plaintiff's surgeon, medical staff, and other healthcare providers met or exceeded the standard of care applicable to the hip replacement

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

surgery. The PROFEMUR® Total Hip System implanted on Plaintiff's left side subsequently failed.

4.     Defendant Wright Medical Technology, Inc. (hereinafter "Wright Technology") is a corporation organized under the laws of the State of Delaware, with its principal place of business located in Memphis, Tennessee, and as such is a citizen of both the State of Tennessee and the State of  Delaware.  Defendant Wright Technology is registered to do business in the State of Tennessee, and may be served with process by serving its registered agent for service, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

5.     Defendant Wright Medical Group, Inc. (hereinafter "Wright Group") is a corporation organized under the laws of the State of Delaware, with its headquarters and principal place of business located in Memphis, Tennessee, and as such is a citizen of both the State of Tennessee and the State of Delaware.  Defendant Wright Group is authorized to do business in Tennessee and may be served with process by serving its registered agent for service, Corporation Service Company, at 2908 Poston Avenue, Nashville, Tennessee  37203-1312.

6.     Defendant Wright Technology is a wholly owned subsidiary of Defendant Wright Group.

7.     At all times relevant hereto, Defendants were engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing and/or introducing into interstate commerce, either directly or indirectly through third-parties or related entities, numerous prosthetic orthopedic products, including the Wright Medical PROFEMUR® Total Hip System.

8.     Defendants were also involved in the business of monitoring and reporting adverse events concerning the Wright Medical PROFEMUR® Total Hip System, and participated in the decision process and response, if any, related to these adverse events.

9.     Defendants Wright Group and Wright Technology are collectively referred to herein as "Defendants" or "Wright".  At all times relevant herein, each of the named

COMPLAINT FOR DAMAGES

Defendants were the representatives, agents, employees, co-conspirators, servants, employees, partners, joint-venturers, franchisees, or alter egos of the other and was acting within the scope of this respective authority by virtue of those interrelationships.

## JURISDICTION AND VENUE

10.     Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, because the Parties are completely diverse in citizenship, as Plaintiff is a California citizen and Defendants are citizens of both Tennessee and Delaware, and the amount in controversy exceeds $75,000.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (c), as a substantial part of the events giving rise to this claim occurred in the State of California.

## STATEMENT OF FACTS

12.     In December 1999, Wright acquired a European manufacturer of artificial hip devices known as Cremascoli Ortho ("Cremascoli") which had designed and manufactured artificial hips with a modular neck component since approximately the year 1985.

13.     Pursuant to the Section 510(k) Premarket Notification Process, on December 13, 2000, Wright received permission from the United States Food and Drug Administration (FDA) to distribute in the United States its first modular neck and stem artificial hips – its PROFEMUR® Hip System, the Devices at issue in the present litigation.

14.     The Devices the FDA permitted Wright to distribute by way of the above-referenced 510(k) process included a modular neck component that had been designed and, since approximately 1985, had been distributed in Europe by Cremascoli.

15.     The FDA never considered and approved the safety of the PROFEMUR® Total Hip System, but instead concluded only that the Device was substantially equivalent to an already legally marketed device, i.e., the Cremascoli modular neck device.

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

16.     Sometime after December 13, 2000, Wright began to manufacture, label, market, promote, distribute, and sell in the United States the Wright Medical Profemur hip system and its components, including the Profemur modular necks.

17.     The Wright Medical Profemur modular necks that were distributed after December 13, 2000, and before August 25, 2009, were all made of a titanium-aluminum-vanadium alloy known as Ti6A14V.

18.     On August 25, 2009, pursuant to a subsequent Section 510(k) Premarket Notification (No. K091423), the FDA permitted Wright to distribute and market a Profemur device manufactured from cobalt chrome alloy instead of Ti6A14V, concluding – without assessing the safety of the device – only that the cobalt chrome alloy device is "substantially equivalent" to the Ti6A14V device..

19.     The Wright Medical Profemur modular necks, as promoted, marketed, distributed and sold in the United States after December 13, 2000, for use with various Wright Medical hip systems, were manufactured in twelve models or styles, six of those twelve were generally identified by Wright as "short" necks (i.e., Catalog #s PHA0-1202, PHA0-1212, PHA0-1222, PHA0-1232, PHA0-1242, and PHA0-1252), and six identified by Wright as "long" necks (i.e., Catalog #s PHA0-1204, PHA0-1214, PHA0-1224, PHA0-1234, PHA0-1244, and PHA0-1254).

20.     In various marketing and promotional material published and distributed by Wright from approximately the year 2002, and into the year 2005, and available to Wright's sales representatives and distributors, surgeons, patients, and the general public, Wright made the following representations, statements, claims, and guarantees about its Profemur modular necks:

> The modular neck used with the Profemur Hip has been employed by Wright Cremascoli for over 15 years.  The necks were designed in 1985 and have been successfully implanted in over 50,000 patients requiring both primary and revision hip procedures.  The necks are used in other Wright Cremascoli hip systems besides the Profemur Hip.  <u>None of the necks has experienced a clinical failure since their inception</u>.

[emphasis added]

and,

> The modular neck system, designed by Cremascoli in 1985 (U.S. Patent #4,957,510), has now been successfully implanted in over 50,000 patients requiring both primary and revision hip arthroplasty. Extensive laboratory tests have proven that the coupling between the modular neck and femoral implant <u>guarantees</u>:
>
> - Structural reliability
> - <u>Absence of significant micromovement</u>
> - <u>Absence of fretting corrosion</u>

[emphasis added]

[Wright Medical Technical Monograph MH688-102 ©2004]

21.   In 2001, Wright made a design change to its PROFEMUR® necks to increase the potential range of motion.

22.   In making the 2001 design change to the Profemur modular necks, Wright changed the geometry, weight, and mass of the Profemur modular necks.

23.   More than 40,000 of the above-referenced modular necks "designed in 1985," and "successfully implanted in over 50,000 patients," and for which Wright claimed, "none of the necks has experienced a clinical failure since their inception," were of the original design that existed prior to the 2001 design change.

24.   In fact, prior to the year 2001, Wright had received notice of clinical failures in the form of fractures of modular necks that had been implanted in patients in Europe.

25.   In its initial 510(k) Premarket Notification application to distribute its Profemur modular necks in the United States, Wright did not disclose to the FDA that it had notice of clinical failures in the form of modular neck fractures that had been implanted in patients in Europe.

26.   Once Wright filed its 510(k) Premarket Notification application to distribute its Profemur modular necks in the United States, Wright had a duty to report to the FDA any instances it knew, or received notice of, a clinical failure in the form of a fracture of a modular neck that had been implanted in a patient.

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

27.     Once Wright received permission to distribute Profemur modular necks in the United States as a result of its 510(k) Premarket Notification application, Wright had a duty to report to the FDA any instances it knew, or received notice of, a clinical failure in the form of a fracture of a modular neck that had been implanted in a patient.

28.     Prior to January of 2005, Wright knew or received notice of clinical failures in the form of fractures of its modular necks that had been implanted in patients in Europe.

29.     Prior to April 19, 2005, Wright did not report to the FDA any of the instances it knew or received notice that a Profemur modular neck had clinically failed by the modular neck having fractured in a patient in Europe.

30.     On or about April 19, 2005, Wright first reported to the FDA a Profemur modular neck clinical failure where the modular neck implanted in a patient had fractured.

31.     After receiving notice of the first modular neck fracture, Wright received notice of additional modular neck clinical failures in the form of fractures of the modular necks.

32.     The number of Profemur modular neck clinical failures in the form of fractures of the modular neck has continued to increase over time, and continues to increase to the present day, now numbering more than 300 such clinical failures.

33.     Fractures have been reported for both the long and the short versions of the Profemur modular necks.

34.     The fracture rate for Profemur long modular necks is approximately eight times the fracture rate of the Profemur short modular necks.

35.     The fracture rate for Profemur long modular necks implanted in the United States is more than 1% of the total number of Profemur long modular necks implanted in the United States.

36.     Wright did not inform U.S. orthopedic surgeons known by Wright to have implanted its Devices of any reports or concerns about fractures of its Profemur

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

modular necks until a December 1, 2008, "Safety Alert" was sent to certain "medical professionals," which provided, in part, "[W]e have received reports of 43 modular neck failures as of November 21, 2008.  Initial investigations have revealed several commonalities in these failures:  heavyweight males, long modular necks and patient activities such as heavy lifting and impact sports."

37.     At the time Wright sent its December 1, 2008, Safety Alert, Wright in fact was aware of more than 43 modular neck failures (by fracture of the modular neck).

38.     In Wrights' Instructions for Use (IFU) that accompanied the Devices from their introduction into the United States, through 2008, if not later, Wright said that that the Devices were contraindicated for use in obese patients, "[W]here obesity is defined as three times normal body weight."

39.     Prior to August 2010, Wright did not include a warning, precaution, or other advisory as to the use of any of its modular necks in people who weighed more than a specifically stated weight in its IFUs distributed in the United States.

40.     Prior to August 2010, Wright did not state that the use of any of its modular necks was contraindicated in heavyweight males in its IFUs distributed in the United States.

41.     Prior to August 2010, Wright did not state that the use of any of its modular necks was contraindicated in patients who engaged in heavy lifting in its IFUs distributed in the United States.

42.     Prior to August 2010, Wright did not state that the use of any of its modular necks was contraindicated in patients who engaged in impact sports in its IFUs distributed in the United States.

43.     Even though some Wright IFUs for Devices in use prior to August 2010 contained a section titled, "Conditions presenting increased risk of failure include," that section of the IFU did not state that patients weighing more than a certain weight, engaging in a high level of physical activity, engaging in heavy lifting, or engaging in impact sports, would be at an increased risk of failure (fracture) of the modular neck.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

44.     Even though some Wright IFUs for Devices in use prior to August 2010 contained a section titled "Warning," and a subsection within titled "Modular Necks," that subsection of the IFU Wright did not state that patients weighing more than a certain weight, engaging in a high level of physical activity, engaging in heavy lifting, or engaging in impact sports, would be at an increased risk of failure (fracture) of the modular neck.

45.     Even though some Wright IFUs for Devices in use prior to August 2010 contained a section titled "General Product Information," that stated, "An overweight or obese patient can produce high loads on the prostheses, which can lead to failure of the prosthesis," and, "If the patient is involved in an occupation or activity which includes substantial walking, running, lifting, or muscle strain, the resultant forces can cause failure of the fixation of the device, or both," Wright did not state that patients involved in an occupation or activity that included those activities created any higher risk of failure than would exist in any other design of artificial hip stem without a modular neck.

46.     On or after August 25, 2009, Wright began distributing in the United States Profemur modular necks made of a cobalt chrome alloy.

47.     Profemur modular necks distributed in the United States made of cobalt chrome are made in the same twelve sizes, versions and dimensions as the Profemur Ti6A14V modular necks.

48.     Despite the change in materials, the Profemur cobalt chrome modular necks remain susceptible to micromotion and fretting corrosion at the neck-stem junction, similar to the otherwise identical model of Profemur Ti6A14V modular necks.

49.     Despite the change in materials, the Profemur cobalt chrome modular necks continue to fail (fracture) at the neck-stem junction from cyclic loading and metal fatigue, similar to the otherwise identical model of Profemur Ti6A14V modular necks.

50.     Notwithstanding Wright's knowledge, Wright has never directly informed patients in the United States who received its Profemur modular necks, and have not yet

COMPLAINT FOR DAMAGES

experienced a modular neck fracture, that its Profemur products have experienced higher than anticipated rates of failure due to fracture of the modular neck.

51.    Notwithstanding Wright's knowledge, Wright has never informed patients in the United States who received its Profemur modular necks, and have not yet experienced a modular neck fracture, that higher weight and/or higher levels of activity may place patients at an increased risk and rate of failure due to fracture of the modular necks.

52.    Notwithstanding Wright's knowledge, Wright has never directly asked Wright sales representatives/distributors or surgeons in the United States to directly inform any surgeons/patients who used/received these modular necks that patients of higher weight and/or higher levels of activity may be placed at an increased risk and rate of failure due to fracture of the modular necks.

53.    Patient testimonials that have from time to time appeared on the Wright website and were available to Wright sales representatives/distributors, physicians, patients and the public from 2005 to the present, and/or that appeared in printed materials published by Wright from 2005 to the present, have represented that patients who received Wright artificial hips have already returned or are about to return to such activities as running, jogging, snow skiing, water skiing, marathon running, tennis, racquetball, golf, horseback riding, work that involves lifting and moving of heavy objects, active military duty in Iraq, karate, competitive wrestling and competitive motocross racing, among other activities.

54.    Patient testimonials that have from time to time appeared on the Wright website, and in printed materials published by Wright from 2005 to the present, have been from men who received the Devices and weighed in excess of 250 pounds.

55.    In 2014, MicroPort Orthopedics, Inc. ("MicroPort"), a third-party, acquired Wright Medical's OrthoRecon Division, which was the hip division responsible for designing an selling Profemur modular necks.

56.     On August 11, 2015, MicroPort announced a voluntary recall of the Long

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

8° Varus Cobalt Chrome Modular Neck, model PHAC-1254, in the interest of "patient safety". This is the exact cobalt chromium Wright Profemur modular neck implanted in Plaintiff Kristin Biorn.

57.     The August 11, 2015, notice issued by MicroPort Chairman, Dr. Zaohua Chang, reported that "[a]s of the date of [the] announcement, MicroPort Orthopedics [had] received 28 reports of implant failures" related to the cobalt chrome neck.

### PLAINTIFF KRISTIN BIORN'S PROFEMUR® DEVICE

58.     Plaintiff Kristin Biorn brings this product liability personal injury action as a recipient of a defective medical device, i.e., a modular prosthetic hip, designed, manufactured, and distributed by Defendants.

59.     On or about August 20, 2013, Plaintiff Kristin Biorn had left total hip arthroplasty, at which time she had the Device properly implanted by Jason Snibbe, M.D., at Cedars-Sinai Medical Center of Los Angeles, California. Specifically, Plaintiff received the Profemur "VV" Long neck, model PHAC-1254, made from cobalt chrome alloy.

60.     Based upon the patient population that Defendants intended its Profemur hip systems to be implanted in and at the time Plaintiff Kristin Biorn had the Device implanted, she was an appropriate patient to be implanted with this hip system.

61.     Subsequent to the date of implant, Plaintiff Kristin Biorn used her Device in a normal and expected manner.

62.     On or about April 5, 2015, the femoral neck of the Device suddenly and catastrophically failed, breaking into two pieces.

63.     At the time of this catastrophic failure, Plaintiff Kristin Biorn was performing a normal and expected activity of daily living.

64.     On April 5, 2015, following the catastrophic failure of the device, Plaintiff Kristin Biorn was taken to the St. John's Hospital emergency room before she was transported by ambulance to Cedars-Sinai Medical Center of Los Angeles.

65.     On April 6, 2015, Plaintiff Kristin Biorn's failed Device was surgically

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

removed by Jason Snibbe, M.D., at Cedars-Sinai Medical Center of Los Angeles, California, in a surgical procedure commonly called a "revision".

66.     At the time the Device was implanted in Plaintiff Kristin Biorn, it was in the same condition in all relevant respects as when it left Wright's control.

67.     The PROFEMUR® Total Hip System (and its components) implanted in Plaintiff Kristin Biorn was not merchantable, but was unreasonably dangerous for its intended and/or reasonably foreseeable uses in that:

A.     It was and is unreasonably dangerous as a result of one or more of a combination of the following:

(1)     the neck was designed in such a manner as to be subjected to excessive micromotion and fretting corrosion, thereby increasing the potential for failure;

(2)     the surface of the section of the neck that was inserted into the femoral stem was designed in such a manner as to increase the potential for fretting and corrosion and failure;

(3)     the portion of the neck that was inserted in the femoral stem was in a narrow, confined space, thereby increasing the potential for fretting, corrosion and failure;

(4)     the components were designed in such a way as to make the modular neck component susceptible to fretting and corrosion, thereby increasing the potential for failure;

(5)     the components were designed in such a way as to make the modular neck component susceptible to fatigue fractures;

(6)     the risk of neck fracture outweighed the utility of the Device;

(7)     a reasonably prudent manufacturer or seller, given knowledge of the Device's condition, would not have marketed or sold the Device; and

(8)     there may be other conditions or defects yet to be determined.

B.     It was dangerous to an extent beyond which would be contemplated by the

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

12                                                     COMPLAINT FOR DAMAGES

ordinary consumer with the ordinary knowledge common to the community as to its characteristics in that:

> (1) the ordinary consumer would not contemplate that the system would catastrophically fail within less than eight years after implantation; and

> (2) the ordinary consumer would not contemplate that the ordinary activities of daily living would result in the system catastrophically failing within less than eight years after implantation.

68. The Device is not designed to withstand the normal activities of daily living after implantation without premature failure from fatigue fractures.

69. The Device is not designed to withstand the normal activities of daily living after implantation in active or heavier weight patients without premature failure from fatigue fractures.

70. The Device was not tested in design and development at the level of forces that were known would be encountered in the normal activities of daily living.

71. The Device was not tested in design and development at the level of forces that were known would be encountered in the normal activities of daily living of active or heavier weight patients.

72. The Device was not tested for the FDA Section 510(k) Premarket Notification Process at the level of forces that were known would be encountered in the normal activities of daily living.

73. The Device was not tested for the FDA Section 510(k) Premarket Notification Process at the level of forces that were known would be encountered in the normal activities of daily living of active or heavier weight patients.

74. The Device was not tested in design and development at the level of forces equal to the level of activities of patients that Wright promoted and marketed these devices to.

75. The Device was not tested for the FDA section 510(k) Premarket Notification Process at the forces equal to the level of activities of patients that Wright

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

promoted and marketed these devices to.

76. The Device was known by Defendants to be failing from fatigue fractures of the modular necks prior to the date of its FDA section 510(k) Premarket Notification application.

77. The Device was known by Defendants to be failing from fatigue fractures of the modular necks prior to December 13, 2000, the date it received permission from the FDA to distribute these devices in the United States.

78. The Device was known by Defendants to be failing at higher than expected rates from fatigue fractures of the modular necks prior to the date of its implantation in Plaintiff Kristin Biorn.

79. The Device was known by Defendants to be failing at higher than expected rates from fatigue fractures of the modular necks prior to April 5, 2015, the date it fractured in Plaintiff Kristin Biorn.

80. Prior to the implant of the Device in Plaintiff Kristin Biorn, Wright did not warn patients, surgeons, customers, or its sales representatives/distributors that the Device was known to be failing from fatigue fractures at higher than expected rates.

81. Prior to the implant of the Device in Plaintiff Kristin Biorn, Wright did not warn patients, surgeons, customers, or its sales representatives/distributors that the Device was known to be failing from fatigue fractures in high activity or heavier weight patients at higher than expected rates.

82. Prior to the sudden catastrophic failure of Plaintiff Kristin Biorn's Device, Wright did not warn patients that the Profemur modular neck was known to be suddenly and catastrophically failing without warning from fatigue fractures during normal activities of daily living.

83. Prior to the sudden catastrophic failure of Plaintiff Kristin Biorn's Device, Wright did not warn patients that the Profemur modular neck was known to be suddenly and catastrophically failing without warning from fatigue fractures in high activity or heavier weight patients.

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

84.     On or about April 5, 2015, the PROFEMUR® Total Hip System implanted in Plaintiff Kristin Biorn's left side catastrophically failed, i.e., fractured at the Neck, as a result of one or more or a combination of the foregoing unreasonably dangerous conditions.

85.     As a direct and proximate result of the failure of the PROFEMUR® Total Hip System, Plaintiff Kristin Biorn has sustained injuries and damages including, but not limited to:

(a)     undergoing surgery to remove and replace the failed prosthesis system;

(b)     past and future pain and anguish, both in mind and in body;

(c)     permanent diminishment of her ability to participate in and enjoy the affairs of life;

(d)     medical bills associated with the replacement procedure and recovery therefrom;

(e)     future medical expenses;

(f)     loss of enjoyment of life;

(g)     loss of past and future earnings and earning capacity;

(h)     disfigurement; and

(i)     physical impairment.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**
**(Against All Defendants)**

86.     Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

87.     At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed, and promoted the PROFEMUR® Total Hip System that was

COMPLAINT FOR DAMAGES

implanted in Plaintiff on or about August 20, 2013.

88.    At all times relevant hereto, the PROFEMUR® Total Hip System was expected to, and did, reach prescribing physicians and consumers, including Plaintiff Kristin Biorn and Plaintiff's physician, without a substantial change in the condition in which it was sold.

89.    At all times relevant hereto, Plaintiff Kristin Biorn and Plaintiff's healthcare providers used the PROFEMUR® Total Hip System for its intended or reasonably foreseeable purpose.

90.    At all times relevant hereto, the PROFEMUR® Total Hip System was dangerous, unsafe, and defective in manufacture. Such defects included, but were not limited to an unreasonably high propensity for corrosion, fretting, and fatigue under normal and expected use of the device, leading to fracture of the modular neck and catastrophic failure of the device, requiring revision surgery.

91.    Plaintiff Kristin Biorn is informed and believes, and thereupon alleges, that the PROFEMUR® Total Hip System implanted in Plaintiff was defectively manufactured because it differed from the manufacturer's design and specifications, or from typical units of the same product line.

92.    As a direct, legal, proximate, and producing result of the defective manufacture of the PROFEMUR® Total Hip System implanted in Plaintiff Kristin Biorn Plaintiff sustained as set forth above.

93.    The dangerous, unsafe, and defective manufacturing of the PROFEMUR® Total Hip System implanted in Plaintiff Kristin Biorn was a substantial factor in causing Plaintiff's injuries as set forth above.

### SECOND CLAIM FOR RELIEF
### STRICT PRODUCTS LIABILITY – FAILURE TO WARN
**(Against All Defendants)**

94.    Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

COMPLAINT FOR DAMAGES

95.   The PROFEMUR® Total Hip System was defective and unreasonably dangerous when it left the possession of Defendants in that it contained warnings insufficient to alert the medical community and patients, including Plaintiffs and Plaintiff's healthcare providers, to the dangerous risks associated with the PROFEMUR® Total Hip System when used for its intended and reasonably foreseeable purpose. The dangers and risks included, but were not limited to an unreasonably high propensity for corrosion, fretting, and fatigue under normal and expected use of the device, leading to fracture of the modular neck and catastrophic failure of the device, requiring revision surgery.

96.   At all times relevant hereto, Plaintiff and Plaintiff's healthcare providers used the PROFEMUR® Total Hip System for its intended or reasonably foreseeable purpose.

97.   Plaintiff and Plaintiff's healthcare providers could not have discovered any defect in the PROFEMUR® Total Hip System through the exercise of due care.

98.   Defendants knew or should have known, by the use of scientific knowledge available before, at, and after the time of manufacture, distribution, and sale of the PROFEMUR® Total Hip System, of potential risks and side effects associated with the PROFEMUR® Total Hip System. Defendants knew or should have known of the defective condition, characteristics, and risks associated with said product, as previously set forth herein.

99.   The warnings and instructions provided with the PROFEMUR® Total Hip System by Defendants did not adequately warn of the potential risks and side effects of the PROFEMUR® Total Hip System, which risks were known or scientifically knowable to Defendants.

100.   Defendants had a continuing duty to warn the medical community and public, including Plaintiff and Plaintiff's healthcare providers, of the potential risks and increased failure rate associated with the PROFEMUR® Total Hip System.

101.   As a direct, legal, proximate, and producing result of Defendants' failure

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

17

COMPLAINT FOR DAMAGES

to warn, Plaintiff sustained injuries as set forth above.

102.   Defendants' failure to adequately warn of the potential risks and side effects of the PROFEMUR® Total Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE
### (Against All Defendants)

103.   Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

104.   At all times relevant hereto, Defendants designed, manufactured, distributed, sold, marketed, and promoted the PROFEMUR® Total Hip System for implantation into customers, such as Plaintiff, by physicians and surgeons in the United States.

105.   At all times relevant hereto, Defendants knew or should have known that the novel design of the PROFEMUR® Total Hip System necessitated clinical trials and other pre-marketing evaluations of risk and efficacy. Such testing would have revealed the increased risk of failure and complications associated with the PROFEMUR® Total Hip System. A reasonable manufacturer under the same and similar circumstances would have conducted additional testing and evaluation of the PROFEMUR® Total Hip System's safety and performance prior to placing the PROFEMUR® Total Hip System into the stream of commerce.

106.   At all times relevant hereto, Defendants knew or should have known of the serious complications and high failure rate associated with the PROFEMUR® Total Hip System. Despite receiving hundreds of reports of serious complications from healthcare providers, Defendants chose (1) not to perform any additional testing of the PROFEMUR® Total Hip System; (2) not to investigate other potential causes of the complications; (3) not to suspend sales or distribution; and (4) not to warn physicians and patients of the PROFEMUR® Total Hip System's unreasonably high propensity for

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

corrosions, fretting and fatigue under normal and expected used of the device, leading to fracture of the modular neck and catastrophic failure of the device, requiring revision surgery.

107.   As a direct, legal, proximate, and producing cause of Defendants' negligent design, testing, manufacturing, marketing, selling, and promoting the PROFEMUR® Total Hip System, Plaintiff suffered injuries as set forth above.

108.   Defendants' negligent design, testing, manufacturing, selling, and promoting the PROFEMUR® Total Hip System, was a substantial factor in causing Plaintiff's injuries as set forth above.

### FOURTH CLAIM FOR RELIEF
### NEGLIGENCE – FAILURE TO RECALL/RETROFIT
#### (Against All Defendants)

109.   Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

110.   At all times relevant hereto, Defendants knew or should have known that the design of the PROFEMUR® Total Hip System and its warnings were likely to be dangerous when used in an intended or reasonably foreseeable manner.

111.   Despite the severity and number of complaints Defendants received, Defendants failed to recall, retrofit, or warn patients or physicians about the danger of the PROFEMUR® Total Hip System.

112.   Reasonable manufacturers, distributors, sellers, promoters, and designers under the same or similar circumstances would have recalled the PROFEMUR® Total Hip System

113.   As a direct, legal, proximate, and producing result of Defendants' failure to recall the PROFEMUR® Total Hip System, Plaintiff suffered injuries as set forth above.

114.   Defendants' failure to recall the PROFEMUR® Total Hip System was a substantial factor in causing Plaintiff's injuries as set forth above.

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

### FIFTH CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY
**(Against All Defendants)**

115.   Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

116.   At the time Defendants designed, tested, marketed, promoted, and sold the PROFEMUR® Total Hip System, Defendants knew of the intended, reasonably foreseeable uses and impliedly warranted the PROFEMUR® Total Hip System to be of merchantable quality and safe and fit for such use.

117.   Plaintiff and Plaintiff's healthcare providers, in deciding to use the Device as part of Plaintiff Kristin Biorn's total hip replacement, reasonably relied upon the skill and judgment of Defendants as to whether the PROFEMUR® Total Hip System was of merchantable quality and safe and fit for its intended or reasonably foreseeable use.

118.   In breach of the implied warranty given by Defendants, the PROFEMUR® Total Hip System was not of merchantable quality or safe or fit for its intended or reasonably foreseeable use because the product was merchantable, in a defective condition and unreasonably dangerous and unfit for its intended use. The merchantable, defective, and unreasonably dangerous nature of the PROFEMUR® Total Hip System included, but was not limited to, an unreasonably high propensity for corrosion, fretting, and fatigue under normal and expected use of the device, leading to fracture of the modular neck and catastrophic failure of the device, requiring revision surgery.

119.   As a direct, legal, proximate, and producing result of Defendants' breach of warranty, Plaintiff suffered injuries as set forth above.

### SIXTH CLAIM FOR RELIEF
### FRAUDULENT MISREPRESENTATION
**(Against All Defendants)**

120.   Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as

COMPLAINT FOR DAMAGES

though fully set forth herein.

121.   The Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, that the PROFEMUR® Total Hip System had been properly tested and was safe and effective for its indicated use.

122.   The representations made by Defendants to the medical and healthcare community, and to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, regarding the safety and performance of the PROFEMUR® Total Hip System were, in fact, false.

123.   Defendants knew or should have known that the PROFEMUR® Total Hip System had not been sufficiently tested, was defectively designed, and lacked adequate warnings and instructions.

124.   Defendants knew or should have known that the PROFEMUR® Total Hip System could and would cause severe and grievous injury to users of said product, and that the PROFEMUR® Total Hip System's inherent dangers exceeded any purported, inaccurate, and/or downplayed warnings.

125.   When said representations were made by Defendants, Defendants knew those representations to be false and exhibited a willful, wanton, and reckless disregard for the truth of said representations.

126.   Said representations were made by Defendants with the intent to defraud and deceive Plaintiff, Plaintiff's healthcare providers, the medical community, and the general public. Defendants intended said representations to induce Plaintiff, Plaintiff's healthcare providers, the medical community and the general public, to recommend, implant, and/or purchase the PROFEMUR® Total Hip System for use as part of total hip replacement surgery. Defendants' actions evinced a callous, reckless, willful, and depraved indifference to the health, safety, and welfare of Plaintiff.

127.   At all relevant times, Plaintiff and Plaintiff's healthcare providers were unaware of the falsity of said representations and reasonably believed them to be true.

128.   In reliance upon Defendants' representations, Plaintiffs were induced and

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

did use the PROFEMUR® Total Hip System, thereby sustaining severe and permanent personal injuries, and is now at an increased risk of sustaining severe and permanent personal injuries in the future.

129.   Defendants brought the PROFEMUR® Total Hip System to the market, and acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff.

130.   As a direct, legal, proximate, and producing result of Defendants' false representations, Plaintiffs suffered the injuries set forth herein.

## SEVENTH CLAIM FOR RELIEF
## FRAUDULENT CONCEALMENT
### (Against All Defendants)

131.   Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

132.   Defendants knew their representations were false or recklessly disregarded the truth of said representations.

133.   In representations to Plaintiff, Plaintiff's healthcare providers, and/or the FDA, Defendants omitted, concealed or suppressed material information regarding the safety and performance of the PROFEMUR® Total Hip System, including, but not limited to:

(a)   An unreasonably high propensity for corrosion, fretting and fatigue under normal and expected use for the device, leading to fracture of the modular neck and catastrophic failure of the device, requiring revision surgery.

(b)   That the PROFEMUR® Total Hip System had an unacceptably high rate of failures requiring revision surgery;

(c)   That the safety and performance of the PROFEMUR® Total Hip System was not adequately rested and/or known by Defendants;

(d)   That patients implanted with the PROFEMUR® Total Hip System were at increased risk of experiencing painful and debilitating product failure and were more likely to undergo revision surgery than patients using other hip

COMPLAINT FOR DAMAGES

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

implant devices;

(e) The PROFEMUR® Total Hip System was designed, manufactured, marketed, promoted, distributed, and sold negligently, defectively, and/or improperly;

(f) That safer alternatives were available.

134. Defendants purposefully downplayed and understated the serious nature of the risks associated with the use of the PROFEMUR® Total Hip System in order to increase and sustain sales.

135. Defendants had sole access to material facts regarding the safety and performance of the PROFEMUR® Total Hip System. Defendants know Plaintiff and Plaintiff's healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment, omission, and suppression of material facts as set forth herein.

136. Plaintiff and Plaintiff's healthcare providers relied on Defendants' incomplete and inaccurate representations as to the safety and performance of the PROFEMUR® Total Hip System when selecting, recommending, and implanting the PROFEMUR® Total Hip System.

137. As a direct, legal, proximate, and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

### EIGHTH CLAIM FOR RELIEF
### NEGLIGENT MISPRESENTATION
### (Against All Defendants)

138. Plaintiff repeats, re-alleges, and hereby incorporates by reference all of the allegations and statements contained in Paragraphs 1 through 85 above, inclusive, as though fully set forth herein.

139. Defendants had a duty to truthfully represent to the medical community, and to Plaintiff, Plaintiff's healthcare providers, and the FDA, that the PROFEMUR® Total Hip System was properly tested and found to be safe and effective for its intended use.

COMPLAINT FOR DAMAGES

140.   Defendants knew or should have known that their representations regarding the safety and performance of the PROFEMUR® Total Hip System were, in fact, false.

141.   Defendants failed to exercise ordinary care in determining the truth or falsity of their representations and by misrepresenting the safety and performance of the PROFEMUR® Total Hip System.

142.   Defendants breached their duty to present truthful representations by knowingly, or by want of ordinary care, misrepresenting the safety and performance of the PROFEMUR® Total Hip System.

143.   As a direct, legal, proximate, and producing result of Defendants' concealment of material facts, Plaintiff has suffered injuries as set forth herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and/or severally, as follows:

1.   For general damages for personal injuries to Plaintiff, according to proof;

2.   For all past, current, and future medical and incidental expenses, according to proof;

3.   For all loss of earnings, present and future, and loss of earning capacity, according to proof;

4.   For punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, according to proof;

5.   For prejudgment interest, as provided by law;

6.   For reasonable attorneys' fees;

7.   For costs of litigation; and

/ / /

/ / /

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES

1       8.     For such other and further relief as this Court may deem just and

2       proper.

3

4  Dated: September 8, 2015        Respectfully submitted,

5                                 KIESEL LAW LLP

6

7                           By:       /s/ Helen Zukin

8                                 Paul R. Kiesel

9                                 Helen Zukin

10                                Matthew A. Young

11                                Cherisse H. Cleofe

12                                Attorneys for Plaintiff

13                                **KRISTIN BIORN**

14

15                     **DEMAND FOR JURY TRIAL**

16    Plaintiff hereby demands a trial by jury to the full extent permitted by law.

17

18 Dated: September 8, 2015        Respectfully submitted,

19                                KIESEL LAW LLP

20

21

22                          By:       /s/ Helen Zukin

23                                Paul R. Kiesel

                                    Helen Zukin

24                                Matthew A. Young

25                                Cherisse H. Cleofe

26                                Attorneys for Plaintiff

27                                **KRISTIN BIORN**

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

COMPLAINT FOR DAMAGES