Paul R. Kiesel, State Bar No. 119854
   *kiesel@kiesel.law*
Helen Zukin, State Bar No. 117933
   *zukin@kiesel.law*
D. Bryan Garcia, State Bar No. 216904
   *garcia@kiesel.law*
Cherisse H. Cleofe, State Bar No. 290152
   *cleofe@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

Attorneys for Plaintiffs
**KRISTIN BIORN and
RICHARD B. SARAFIAN**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KRISTIN BIORN,<br><br>        Plaintiff,<br><br>    v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and WRIGHT MEDICAL GROUP, INC., a Delaware corporation,<br><br><br>        Defendants. | Case No. CV15-07102 CAS (KSx)<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL FURTHER DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS; AND SUPPLEMENTAL DECLARATION OF D. BRYAN GARCIA IN SUPPORT THEREOF** |
| RICHARD B. SARAFIAN,<br><br>        Plaintiff,<br><br>    v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, INC., a Delaware corporation; MICROPORT ORTHOPEDICS, INC., a Delaware corporation; and DOES 1-10,<br><br>        Defendants. | Judge:    Hon. Karen L. Stevenson<br>Date:     January 23, 2017<br>Time:    11:00 a.m.<br>Crtrm.:   E – 9th Floor<br><br><br>Discovery Cut-Off:  3/20/2017<br>Pretrial Conf. Date: 11/21/2017<br>Trial Date:     12/5/2017 |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

On January 9, 2017, Judge Snyder granted Plaintiffs' Motion to Consolidate both the Biorn and Sarafian cases for trial. The consolidated trial date is December 5, 2017.

## I.   PLAINTIFFS' RESPONSE TO WRIGHT'S POSITION RELATING TO COBALT CHROME LONG NECK FRACTURES

### A.   Plaintiffs Never Agreed that Wright Could Produce a Spreadsheet in Lieu of the Supporting Documentation

Plaintiffs have never agreed that Wright could produce a spreadsheet in lieu of the actual supporting documents, and Wright's representations to the contrary are disingenuous. *See,* Supp. Garcia Decl. at ¶3. Wright's own correspondence, drafted after Wright contends an agreement had been reached, confirms that no agreement was reached as it discusses why Wright continued to object to the production of documents relating to Cobalt Chrome Long Neck fractures. *See,* Ex. "25." Correspondence dated August 9, 2016 and August 30, 2016 also confirm that no agreement had been reached. *See,* Ex. "27" and "28" attached to Supp. Garcia Decl. filed concurrently herewith. Further, Wright never referenced any such agreement to this Court when discussing these discovery disputes on either October 21, 2016 or December 8, 2016. *See,* Supp. Garcia Decl. at ¶6. Clearly, no agreement was ever reached.

### B.   Evidence of Other Cobalt Chrome Long Necks Fractures are Relevant to Plaintiffs' Defective Design Allegations

Wright incorrectly represents to this Court that Plaintiffs' complaints do not allege that the Cobalt Chrome Long Necks were defectively designed.  *See,* Joint Stipulation ("J.S.")at 18:12-15. For example, under Plaintiffs' negligence causes of action, Plaintiffs must prove that Wright failed to use the amount of care in designing the product that a reasonably careful designer or manufacturer would have used in similar circumstances. *Howard v. Omni Hotels Mgmt. Corp.,* 203 Cal. App. 4th 403, 408 (2012) A simple review of the pleadings demonstrates the inaccuracy of Wright's representation.  *See,* for example, Biorn FAC¶¶2, 68, 69, 70, 71, 72, 75, 105, 106, 108, 109, 111, 119, and 129.

### C.   The Spreadsheet May Be Inadmissible at Trial as the Supporting Documents Were Never Provided to Plaintiffs

Wright claims that the spreadsheet it produced is sufficient evidence to allow

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Plaintiffs to prove their claims.  *See,* J.S. at 19:16-20.   A summary of original documents, such as Wright's spreadsheet, may be used in court ***only if the originals or duplicates have been made available to opposing party for examination and/or copying.*** Fed. R. Ev. 1006 *[Emphasis added]*   Indeed, the admissibility of a summary into evidence is conditioned upon the admissibility of the underlying writing or records summarized. *United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir. 1979). Since Wright refuses to provide the underlying documents, Plaintiffs run the risk that Wright's summary spreadsheet may not be admissible at trial.

## II.   PLAINTIFFS' RESPONSE TO WRIGHT'S POSITION RELATING TO TITANIUM LONG NECK FRACTURES

### A.   Wright Will Not Be Burdened By Producing Documents That Have Already Been Produced in *Pankey v. Wright Medical Group*

Wright contends that production of documents relating to Titanium Long Neck fractures will be "unduly burdensome, harassing, and oppressive." *See,* J.S. at p. 32:10-13. Wright has already been ordered to produce these documents in *Pankey v. Wright Medical Group.  See,* Ex. "20." Accordingly, Wright will suffer no additional burden if the Court orders these documents produced in the instant case.

### B.   Titanium Long Neck Fractures are Relevant in Determining if  the Cobalt Chrome Long Necks are "At Least As Safe and Effective" as the Titanium Long Necks

Wright claims that evidence of Titanium Long Neck fractures are not relevant because the term "substantially equivalent," as used in the FDA filings, does not mean "identical," but rather means that the device is "at least as safe and effective" as a legally marketed device. *See,* J.S. at 33:27-24:1. Even *assuming* arguendo that Wright's position is correct, Plaintiffs are entitled to evidence of Titanium Long Neck fractures as they are relevant in determining if the Cobalt Chrome Long Necks are "at least as safe and effective" as the Titanium Long Necks. Plaintiffs are aware of at least sixty-seven (67) Titanium Long Necks that fractured. However, the modular necks continued to fracture even after the composition was changed to cobalt chrome. Therefore, evidence of Titanium Long Neck fractures are relevant in allowing Plaintiffs to determine if the

Cobalt Chrome Long Necks are "at least as safe and effective" as the Titanium Long Necks.  Also, Plaintiffs believe that the designs of the Titanium Long Necks and the Cobalt Chrome Long Necks are nearly identical.

### C.    Plaintiffs' Requests are Proportional to the Needs of the Case

As more fully set forth in the Joint Stipulation, evidence of Titanium Long Neck fractures are proportional to the needs of the case as the documents are directly relevant to the notice, design defect and failure to properly test issues in Plaintiffs' cases, and because Wright can easily access this information as the documents were produced in *Pankey v. Wright Medical Group.*

### III.    PLAINTIFFS' RESPONSE TO WRIGHT'S POSITION RELATING TO THE ASSET PURCHASE AGREEMENT

### A.    Wright Concedes that The Online Document is Incomplete

Wright's concedes that a complete copy of the Asset Purchase Agreement does not publically exist as there are at least two versions of the document including  (1) a private agreement in Wright's possession (which is signed, has schedules, etc.) and (2) a redacted version on the SEC website. *See,* J.S. at 39:3-6. Accordingly, Wright concedes that the document available online is not a complete copy of the document and, therefore, it must produce the complete Asset Purchase Agreement.

### B.    Concerns Over Confidential Information in the Asset Purchase Agreement are Obviated By the Terms of the Protective Order in This Case

Wright claims that the Asset Purchase Agreement should not be produced as the document contains confidential information which should not be disclosed in discovery. *See,* J.S. at 39:3-6. However, the parties have entered into a Protective Order which obviates these concerns.  *See,* Ex. 22.

### C.    The Incomplete Asset Purchase Agreement Cannot be Authenticated

Wright claims that Plaintiffs' admissibility concerns related to the online Asset Purchase Agreement are misplaced because Plaintiffs will be able to lay the appropriate foundation to authenticate the online document under the Federal Rules.  However,

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL

Plaintiffs cannot lay an adequate foundation to authenticate a version of the Asset Purchase Agreement which Wright concedes is not an accurate, complete copy of the document. Fed. R. Evid. 901(a); *Cook v. Hopkin* (7th Cir. 1986) 783 F. 2d 684, 688.

## IV. PLAINTIFFS' RESPONSE TO THE ISSUES RELATED TO THE DOCUMENTS DESIGNATED "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

### A. Plaintiffs Did Not Anticipate that Wright Would Designate Every Document With This Designation

At the time of entering into the Protective Order, Plaintiffs did not anticipate that Wright would designate almost every document with the label "Highly Confidential – Attorneys' Eyes Only." Pursuant to the Protective Order, only documents which "would create a substantial risk of harm that could not be avoided by less restrictive means" were to receive this designation. *See,* Ex. 22 at ¶2.8.  Further, the Protective Order provides that Wright can only designate documents with this designation which Wright believes, in "good faith," would cause Wright significant competitive harm. *See,* Ex. 22 at ¶7.3(h). Given these significant limitations based on the language of the Protective Order, Plaintiffs did not believe, and more importantly did not know, that Wright would designate nearly every document in this case as "Highly Confidential – Attorneys' Eyes Only." This Court can see Wright's overuse of the "Highly Confidential – Attorneys' Eyes Only" designation as Wright has stamped its summary "spreadsheet" of Cobalt Chrome Long Necks fractures, communications to the FDA, and meeting minutes with the FDA with this designation. *See,* Ex. "10," "16," and "17."

### B. Plaintiffs Never Envisioned that Plaintiffs Could Not Provide Documents to A Person With Expertise in the Hip Implant Industry as Wright Had Sold Its Hip and Knee Division

At the time of entering into the Protective Order, Wright was no longer in the business of producing hip implants. As such, Plaintiffs did not interpret, nor intend, that the term "competitor" be construed so broadly as to prevent Plaintiffs from providing documents related to Titanium Long Necks and Cobalt Chrome Long Necks to Plaintiffs' experts, as doing so would prevent Plaintiffs from proving their cases. This

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1 Court should not allow Wright to take such a broad position, and Plaintiffs request that
2 they be able to provide documents labeled with "Highly Confidential – Attorneys' Eyes
3 Only" to Plaintiffs' experts.

### C.   The Protective Order Protects Wright's Stated Concerns

The Protective Order significantly limitations the use of any documents labeled "Highly Confidential – Attorneys' Eyes Only" so as to protect Wright from its stated concerns. Pursuant to the Protective Order, before any documents are provided to an expert, the expert must agree to be bound by the terms of the order. Further, any expert receiving "Highly Confidential – Attorneys' Eyes Only" documents is prevented from using or disclosing any confidential information or items which are reviewed. *See,* Ex. 22 at ¶¶2.8, 2.15, 3.3. Finally, at the end of the proceedings, all persons are required to return any materials which they received. *Id.* at ¶13.

### D.   Plaintiffs Did Implement the Mechanisms in the Protective Order

Contrary to Wright's contentions, Plaintiffs' concerns were addressed through the mechanisms stated in the Protective Order as, on September 12, 2016, Plaintiffs sent a letter to defense counsel indicating which documents Plaintiffs wished to send to Plaintiffs' experts. *See,* Ex. "29" attached to Supp. Garcia Decl. Defendants objected to this request, and the parties then met and conferred, to no avail.

### VI.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that this Motion be granted in its entirety.

DATED: January 9, 2017                  Respectfully submitted,

**KIESEL LAW LLP**

By: _____/s/ Helen Zukin_____

Paul R. Kiesel
Helen Zukin
D. Bryan Garcia

Attorneys for Plaintiff
**KRISTIN BIORN and**
**RICHARD B. SARAFIAN**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# DECLARATION OF D. BRYAN GARCIA

I. D. Bryan Garcia, declare:

1.      I am an attorney at Kiesel Law LLP, counsel of record for both Plaintiff Kristin Biorn and Plaintiff Richard Sarafian (collectively "Plaintiffs").

2.      If called to testify, I could and would testify as to the matters set forth herein.

3.      On July 20, 2016, counsel for the parties held a telephonic conference to discuss the discovery disputes outlined in Plaintiffs' counsel's July 11, 2016 correspondence.  During this conversation, Plaintiffs' counsel never agreed that Plaintiffs would accept a spreadsheet of Cobalt Chrome Long Neck fractures in lieu of the supporting documents within Wright Medical Technology, Inc. and/or MicroPort Orthopedics, Inc.'s possession.

4.      Attached hereto as Exhibit "27" is a true and correct copy of Plaintiffs' correspondence dated August 9, 2016.

5.       Attached hereto as Exhibit "28" is a true and correct copy of Plaintiffs' correspondence dated August 30, 2016.

6.      During telephonic conferences with the Court on October 21, 2016 and December 8, 2016 discussing the discovery issues that are the subject of the present motion, Defendants never represented to the Court that any agreement was reached where Plaintiffs would accept a spreadsheet of Cobalt Chrome Long Neck fractures in lieu of the supporting within Wright Medical Technology, Inc. and/or MicroPort Orthopedics, Inc.'s possession.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

SUPPLEMENTAL DECLARATION OF
D. BRYAN GARCIA IN SUPPORT
THEREOF

7.     Attached hereto as Exhibit "29" is a true and correct copy of Plaintiffs' correspondence dated September 12, 2016.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 9, 2017, at Beverly Hills, California.

_____
D. Bryan Garcia

SUPPLEMENTAL DECLARATION OF
D. BRYAN GARCIA IN SUPPORT
THEREOF

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

# EXHIBIT 27



# Kiesel Law LLP

D. Bryan Garcia, Esq.
garcia@kiesel.law

August 9, 2016

<u>*Via E-Mail Only*</u>

Ryan J. O'Neil, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
Tel:     215-979-1107
Fax:     215-689-0844
Email: RJOneil@duanemorris.com

RE:     <u>Kristin Biorn – Case No. CV15-07102 CAS (KSx)</u>
        <u>Richard B. Sarafian – Case No. CV15-09397 CAS (KSx)</u>

Dear Ryan:

Please allow this to serve as a reply to your correspondence dated July 28, 2016, as well as Plaintiff Biorn's final attempt to resolve the deficiencies in Defendant Wright Medical Technology, Inc.'s ("WMT") discovery responses before Plaintiff seeks the Court's assistance with this matter.

First and foremost, thank you for sending the additional documents responsive to Plaintiff's Demands for Production, as well as identifying the Bates range for the development and regulatory file as discussed in our prior meet and confer conference. Further, in the hopes of enabling the parties to resolve the outstanding discovery disputes without the Court's involvement, Plaintiff is willing to withdraw Demand for Production Number 1 (all documents produced in prior lawsuits) from our ongoing meet and confer efforts.  Nevertheless, outstanding issues remain and, as such, please consider the following.

<u>AS CONFIRMED BY A PRIOR COURT ORDER IN *PANKEY V. WRIGHT MEDICAL GROUP, INC.,* UNDER THE FEDERAL DISCOVERY RULES, PLAINTIFF IS ENTITLED TO CONDUCT DISCOVERY RELATING TO FAILURES IN *ALL* SIZES OF MODULAR NECKS IN *BOTH* THE PROFEMUR TITANIUM AND COBALT CHROME HIP IMPLANT SYSTEMS</u>

As you are aware, Plaintiff and WMT disagree as to whether Plaintiff is entitled to conduct discovery as to any, and all, failures which occurred in any PROFEMUR modular



Ryan J. O'Neil, Esq.
August 9, 2016
Page 2

necks (**not** just PHAC-1254) in either the Titanium or the Cobalt Chrome Hip Implant Systems.[1] In considering WMT's position, Plaintiff discovered another case in which WMT was a party, and where the exact same discovery issue arose. In *Pankey v. Wright Medical Group, Inc.*, United States District Court, Central District of Illinois, Case No. 09-2150, plaintiff Glenn D. Pankey underwent hip replacement surgery on his right hip on February 7, 2007. In that surgery, plaintiff's doctor placed a Profemur® prosthesis, model PHA0-1254, long neck, 8 Degree Var/Val Long, in plaintiff's right hip. At some point after the surgery was completed, the modular neck failed, resulting in nearly an identical lawsuit being initiated by Pankey as in the present case.

In that case, Pankey propounded discovery seeking PROFEMUR documents relating to all modular necks that failed in both the Titanium and Cobalt Chrome Hip Implant Systems. In responding to plaintiff's discovery requests, WMT objected to the scope of plaintiff's request on the exact same basis as in the present action (*e.g.* that plaintiff was not entitled to conduct discovery on modular necks other than the product which plaintiff received, and not entitled to conduct discovery on the other PROFEMUR Hip Implant System, that being the Cobalt Chrome system). Accordingly, plaintiff filed a motion seeking to compel further responses (and documents) from WMT. In considering plaintiff's motion, the Pankey court considered the narrowness of plaintiff's request (*i.e.* only failures in PROFEMUR modular necks); plaintiff's representation that he was only seeking reports, photographs, and records; plaintiff's arguments relating to the relevance of the materials; plaintiff's representation relating to the similarities among various PROFEMUR products; and plaintiff's articulated theories relating to the failure of plaintiff's hip prosthesis which plaintiff hoped to confirm or disconfirm through analysis of the other neck failures. After considering both the plaintiff's and WMT's position, the Pankey court **granted** plaintiff's motion and **ordered** WMT to respond to discovery, and produce documents, related to the failures of all modular necks in both the PROFEMUR Titanium and Cobalt Chrome Hip Implant Systems. [See, Exhibit "1"]

In the present case, the outstanding discovery issues are ***identical*** to those issues which were addressed in the Pankey decision, and which were resolved in plaintiff's favor (*e.g.* whether plaintiff is entitled to conduct discovery on the failures of all PROFEMUR modular necks in both the Titanium and Cobalt Chrome Hip Implant Systems). Should Plaintiff be required to file a motion to compel, Plaintiff will assert similar arguments demonstrating the relevance of PROFEMUR modular neck fractures in all modular necks which were persuasive in having the Pankey court rule in plaintiff's favor.

---

[1] These issues relate to Demands for Production numbers 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 20, 22, 32, 33, 34, 35, 36, 37, 38, 43, 46, 47, 48, and 52.

**KL** Kiesel Law

Ryan J. O'Neil, Esq.
August 9, 2016
Page 3

Although we are only in the initial phases of discovery, Plaintiff believes that the dimensions of the distal tapered end of the modular neck, and of the oval slot to which the neck is inserted, are *identical* in all PROFEMUR modular necks (not just PHAC-1254) no matter the material from which the PROFEMUR Hip Implant System is composed (either Titanium or Cobalt Chrome).  This belief is supported by WMT's representations to the Federal Drug Administration when WMT applied for 510(k) approval.  Moreover, based on Plaintiff's research, it appears that there have been numerous failures at the exact same location as Plaintiff's device notwithstanding they type of neck used (*e.g.* neutral short/long; varus vulgus short/long, etc.), or the material of the neck (*e.g.* Titanium or Cobalt Chrome).  Therefore, it may not matter which modular neck a surgeon used (*e.g.* neutral short/long; varus vulgus short/long, etc.), or whether the product was Titanium or Cobalt Chrome, as the stresses at that location may be the same, or at least very similar.  Based upon this belief, the failure of PROFEMUR modular necks in all sizes (*e.g.* neutral short/long; varus vulgus short/long, etc.) and materials (Titanium and Cobalt Chrome) in the exact same location as Plaintiff's failure entitles Plaintiff examine these other failures to rule out, or to demonstrate, potential causes of failure.  (*e.g.*, to determine if the similar design defect is related to the failure of the neck in Plaintiff's hip prosthesis).  Accordingly, by limiting the scope of Plaintiff's discovery requests to merely failures of PROFEMUR necks in both the Titanium and Cobalt Chrome Hip Implant Systems, Plaintiff believes that the narrow and specific scope of Plaintiff's requests are proportional to the needs of the present case.

## DEMANDS FOR PRODUCTION NOS. 7, 10, 12, 20, 22, 23-28, 44 AND 48

It appears that there was an overall misunderstanding as it relates to these Demands for Production.  In our prior telephonic meet and confer effort, Plaintiff did not agree that the production of a spreadsheet would resolve our discovery issues as it relates to Demand for Production numbers 7, 10, 12, 20, 22, 23-28, 44 and 48.[2]  Rather, Plaintiff will require that responsive documents be produced as it relates to each and every one of these discovery requests.

Demands for Production Numbers 7, 27, 28 and 44 seek all documents which relate to the reports of implant failures of the PROFEMUR DEVICE with the Cobalt Chrome neck.  Plaintiff's discovery requests include all models of Cobalt Chrome necks, not just the PHAC-1254 modular neck.  As this is an over encompassing discovery issue, Plaintiff refers you to our meet and confer efforts above.

---

[2] The agreement which was reached related to Plaintiff's Special Interrogatories, not the Demands for Production, as discussed below.



Ryan J. O'Neil, Esq.
August 9, 2016
Page 4

Further, based on a review of the documents produced by WMT in discovery to date, it is readily apparent that responsive documents to Demand Numbers 7, 27, 28 and 44 are within WMT's possession, custody or control as WMT has an Incident Report file which has relevant information for Plaintiff's case (*e.g.* weight; the customer initiation the Incident Report; the person initiating the report, the person assigned to the investigation, whether an investigation was required, the reasons no investigation was performed, the conclusions, photographs of the failure, etc.)  Further, as set forth in the Pankey decision attached as Exhibit "1," WMT also maintains photographs, test results, and reports performed by, or for, WMT.  This information is relevant to the allegations asserted in Plaintiff's complaint and, therefore, we will require that the documents responsive to this request be produced.

As it relates to Demands for Production numbers 10, 12, 20, 22, 23-26, 28, 44 and 48, Plaintiff's discovery requests are broader than merely the Cobalt Chrome necks as Plaintiff's requests seek documents for the PROFEMUR DEVICE, which includes all modular necks composed of both Titanium and Cobalt Chrome.  Again, this is an over encompassing issue and, as such, we would refer WMT to Plaintiff's meet and confer efforts above.

## <u>DEMAND FOR PRODUCTION NUMBER 31</u>

Demand for Production number 31 seeks the Purchase and Sales Agreement between WMT and MicroPort B.V. or MicroPort Orthopedics, Inc.  Although WMT claims that a complete copy of this document is equally available to Plaintiff, we have not been able to find a fully executed document with all the applicable exhibits and/or schedules.  Further, even if Plaintiff was able to find a fully executed document, which Plaintiff has not, Plaintiff would still be required to have WMT authenticate the document before it could be admitted at trial.  As such, please provide a complete copy of this document so that we need not burden the Court with this simple matter, which we should be able to resolve.

## <u>SPECIAL INTERROGATORIES NUMBERS 5-7,11 and 16</u>

These interrogatories seek the number of Cobalt Chrome necks which have been sold/fractured/revised.  For the most part, WMT has resolved the outstanding discovery issues in relation to these interrogatories by way of the spreadsheet which has now been produced in discovery.  However, one outstanding issue remains as Special Interrogatory number 11 seeks the identity of the surgeons who notified WMT of fractures of the Cobalt Chrome neck.  Unfortunately, WMT's spreadsheet does not provide this information even though these surgeons are witnesses who have relevant information to demonstrate the similarity of the fractures between their cases, and those in both Biorn

Ryan J. O'Neil, Esq.
August 9, 2016
Page 5


and Sarafian.  Accordingly, this singular issue still remains outstanding, and Plaintiff will require that this information be provided.

Notwithstanding the above meet and confer efforts, in conformity with Local Rule 37-1, please provide dates and times within the next ten (10) days to schedule a telephonic conference for purposes of attempting to resolve these discovery disputes. I hope that this is helpful, and will assist in further resolving our outstanding discovery disputes without the need for Court intervention.

Very truly yours,

KIESEL LAW LLP

By: _____

D. Bryan Garcia, Esq.

DBG:sd
Enclosure (as stated).

# Exhibit "1"

E-FILED
Wednesday, 06 April, 2011 03:53:20 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
#### Urbana Division

| | |
|---|---|
| GLENN D. PANKEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | )  Case No.  09-2150 |
| WRIGHT MEDICAL GROUP,  INC., | ) |
| a corporation; et al., | ) |
| | ) |
| **Defendants.** | ) |

# <u>ORDER</u>

In June 2009, Plaintiff Glenn D. Pankey filed a Complaint against Defendants Wright Medical Group, Inc., Wright Medical Technology, Inc., and Wright Medical Europe SA (#1). Plaintiff brings a products liability claim in connection with a hip prosthesis system.  Plaintiff received a hip replacement in October 2007, but the prosthesis failed and had to be removed in April 2009.  Federal jurisdiction is based on diversity pursuant to 28 U.S.C. § 1332.

In February 2011, Plaintiff filed Plaintiff's Motion to Compel Specific Discovery (#52). Defendants filed Defendants' Response in Opposition to Plaintiff's Motion to Compel Specific Discovery (#55).  In Plaintiff's motion, Plaintiff seeks to narrow a previous discovery request, which this Court denied, finding the request overly broad.  (See Order #48).  This Court hereby **GRANTS** Plaintiff's Motion to Compel Specific Discovery **(#52)** for the reasons given below.

## I.  Standard

A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  FED. R. CIV. P. 26(b)(1).  The party from whom the documents are requested must provide the documents or state a specific objection.  FED. R. CIV. P. 34(b)(2).  Upon such an objection, a party seeking discovery may move for an order to compel production.  FED. R. CIV. P. 37.  In considering a motion to compel discovery, the district court exercises significant discretion, and may fashion a

ruling appropriate for the circumstances of the case. FED. R. CIV. P. 37(5); *see also Gile v. United Airlines, Inc.*, 95 F.3d 492, 495-96 (7th Cir. 1996).

## II. Discussion

Plaintiff underwent hip replacement surgery on October 14, 2004. On March 21, 2008, the prosthesis system failed, and had to be removed and replaced. The Defendants designed, manufactured, distributed, and sold the hip prosthesis system. Plaintiff brings a suit for products liability, alleging the prosthesis system was unreasonably dangerous for its intended or reasonably foreseeable uses. Plaintiff alleges that his hip prosthesis failed due to design flaws related to neck of the prosthesis system.

Defendants maintain a list documenting instances where necks in their hip prostheses systems have failed. (#52-2, sealed). Defendants have performed tests and taken photographs of the necks for over 44 of these failures. Plaintiff seeks to obtain these photographs and reports. Specifically, Plaintiff asks this Court to compel Defendants to produce "all photographs and test results and reports performed by or for the Defendants as to failed PROFEMUR modular prosthesis necks." (#52, p. 5).

Plaintiff argues that the test reports related to failures in all models of Wright PROFEMUR prostheses are relevant to the failure of Plaintiff's hip prosthesis. Plaintiff argues that all of these reports are relevant to demonstrating that the neck of Plaintiff's hip prosthesis was unreasonably dangerous. Plaintiff points out that the dimensions of the distal tapered end of the modular neck and of the oval slot to which the neck is inserted are the same in various PROFEMUR products. Plaintiff further notes that examining these other failures is necessary for appropriate scientific inquiry, to rule out or to demonstrate potential causes of failure. For example, Plaintiff seeks to compare failure incidents for titanium alloy necks versus cobalt chromium necks to determine if the difference in material is related to the failure of the neck in Plaintiff's hip prosthesis.

2

Defendants respond that Plaintiff's discovery request is overly broad, because Plaintiff seeks information pertaining to items unrelated to those implanted in Plaintiff. Defendants argue that Plaintiff's discovery request is substantially similar to Plaintiff's previous discovery request, which this Court denied. Furthermore, Defendants argue that an affidavit from Plaintiff's expert is not sufficient to establish that Plaintiff's discovery request is relevant. Dr. Pugh's expert report concludes that it is scientifically appropriate to analyze all failures of the prostheses, not just the failure suffered by Plaintiff. In essence, Defendants' position is that alleged fractures of the prostheses of other individuals are irrelevant to Plaintiff's action.

The Court notes that Plaintiff's present discovery request is slightly more narrow than his previous request. First, Plaintiff has asked for reports, photographs, and records related to failures of necks, as opposed to necks and stems. Second, Plaintiff specifies he is seeking reports, photographs, and records. Furthermore, Plaintiff has made additional arguments regarding the relevance of these materials. For example, Plaintiff notes design similarities among various PROFEMUR products. Plaintiff has also specified certain theories related to the failure of Plaintiff's hip prosthesis it hopes to confirm or disconfirm through analysis of the other neck failures.

Given these considerations, this Court grants Plaintiff's Motion to Compel, in part. Defendants are hereby ordered to produce the following: photographs, test results, and reports performed by or for the Defendants as to failed PROFEMUR modular prosthesis necks, as listed by Plaintiff in his motion to compel. (#52, p. 4, ¶ 12). For now, the Court limits discovery to these existing items listed by Plaintiff (#52, p. 4, ¶ 12); the Court declines to grant Plaintiff's broader request for all photographs, test results, and reports performed by or for Defendants as to failed PROFEMUR necks "including but not limited to those listed in Confidential Exhibit #2." In making this Order, the Court notes that Plaintiff's discovery request is reasonably calculated to lead to the discovery of admissible evidence, but the Court does not find at this time that the reports in question are admissible evidence. Additionally, Defendants have indicated their willingness to supplement the list documenting instances in which necks in their hip prostheses systems have failed. Given Defendants' acquiescence to this discovery request, the Court orders

3

Defendants to supplement the incident list.  Last, the Court notes that, because the parties' briefs and memoranda adequately addressed the issue, the Court denies Plaintiff's request for oral argument.

### III.  Summary

For the reasons stated above, this Court hereby **GRANTS** Plaintiff's Motion to Compel Specific Discovery (**#52**).

ENTER this 6th day of April, 2011.

_____ s/ DAVID G. BERNTHAL _____
U.S. MAGISTRATE JUDGE

# EXHIBIT 28

# KL

## Kiesel Law LLP

D. Bryan Garcia, Esq.
garcia@kiesel.law

August 30, 2016

*Via E-Mail Only - RJOneil@duanemorris.com*

Ryan J. O'Neil, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

> RE:    Kristin Biorn – Case No. CV15-07102 CAS (KSx)
>        Richard B. Sarafian – Case No. CV15-09397 CAS (KSx)

Dear Ryan:

In our recent telephonic conference, Wright Medical Technology, Inc. ("WMT") agreed to produce all documents relating to similar fractures as those in Plaintiff's case. In that regard, as you are aware, it is apparent that Corrective and Preventative Action ("CAPA) number 290 was initiated by WMT and/or Microport, and this CAPA is relevant to the recall of PHAC-1254.  Specifically, on August 3, 2015, Microport made the following representation in relation to the recall of PHAC-1254:

> "We are recalling [PHAC-1254] as we have noted unanticipated postoperative fractures.  A CAPA (290) has been initiated to investigate root cause; this field action is part of the CAPA recommendation …"

As such, after reviewing WMT's production, Plaintiff will require that all documents (e.g. testing, photographs, incident reports, etc.) related to Incident Numbers 13100077; 14050064; 14060096; 14060214; 14090177; 14090434; 14100044; 14100115; 14100118; 14110001; 15010225; 15010288; 15020055; 15030185; 15030276; 15030280; 15050015; and 15050562 be produced as these all relate to CAPA number 290.  Please provide these additional documents by the close of business on Tuesday, September 6, 2016.  Of course, should you require more time to respond, we are willing to accommodate any additional time needed, but only to the extent it does not inure to the detriment of our client.

Ryan J. O'Neil, Esq.
August 30, 2016
Page 2

       I solicit your prompt attention to this matter, and I thank you in advance for your anticipated cooperation.

                    Very truly yours,

                    KIESEL LAW LLP

By:                                 
                    D. Bryan Garcia, Esq.

DBG:sd

# EXHIBIT 29



# Kiesel Law LLP

D. Bryan Garcia, Esq.
garcia@kiesel.law

September 12, 2016

*<u>Via E-Mail Only - RJOneil@duanemorris.com</u>*

Ryan J. O'Neil, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103

RE:   <u>Kristin Biorn – Case No. CV15-07102 CAS (KSx)</u>
      <u>Richard B. Sarafian – Case No. CV15-09397 CAS (KSx)</u>

Dear Ryan:

In conformity with section 7.3(h) of the Stipulated Protective Order entered into between the parties, Plaintiffs intend on showing documents produced by Wright Medical Technology, Inc. ("WMT") marked with bates stamps WMT_BIORN000001 through WMT_BIORN004015 to Plaintiff's expert, some of which have been designated as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY.  Plaintiffs hereby request that WMT agree to allow Plaintiffs to provide these documents to their expert.  Plaintiffs do not believe that WMT can meet the requisite showing of "significant competitive harm" as WMT has already sold off the entire OrthoRecon business to MicroPort Orthopedics, Inc.  Should WMT not respond to this correspondence by the close of business on September 26, 2016, Plaintiffs will assume that WMT has no objection to Plaintiffs' providing these documents to their expert, and Plaintiffs will proceed accordingly.

Very truly yours,

KIESEL LAW LLP

By: _____
    D. Bryan Garcia, Esq.

DBG:sd

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 9, 2017.

Respectfully Submitted,

**KIESEL LAW LLP**

By: ____*/s/ Helen Zukin*____
    Helen Zukin
    *zukin@kiesel.law*
    8648 Wilshire Boulevard
    Beverly Hills, California 90211
    Tel.: (310) 854-4444
    Fax: (310) 854-0812