# Exhibit A

Paul R. Kiesel, State Bar No. 119854
    *kiesel@kiesel.law*
Helen Zukin, State Bar No. 117933
    *zukin@kiesel.law*
D. Bryan Garcia, State Bar No. 216904
    *garcia@kiesel.law*
Cherisse H. Cleofe, State Bar No. 290152
    *cleofe@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

Attorneys for Plaintiffs
KRISTIN BIORN and
RICHARD B. SARAFIAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN BIORN,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and MICROPORT ORTHOPEDICS, INC., a Delaware corporation.<br><br>Defendants. | Case No. CV15-07102 CAS (KSx)<br><br>Honorable Christina A. Snyder<br><br>**PLAINTIFF KRISTIN BIORN'S SUPPLEMENTAL INITIAL DISCLOSURES** |
| RICHARD B. SARAFIAN,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, INC., a Delaware corporation; MICROPORT ORTHOPEDICS, INC., a Delaware corporation; and DOES 1-10,<br><br>Defendants. | |

00458955-1

Pursuant to Rule 26(a)(1) and Rule 26(e) of the Federal Rules of Civil Procedure, Plaintiff KRISTIN BIORN provides the following Supplemental Initial Disclosures to Defendants WRIGHT MEDICAL TECHNOLOGY, INC. and MICROPORT ORTHOPEDICS, INC.

## INTRODUCTORY COMMENTS

Plaintiff hereby amends and supplements Plaintiff's Initial Disclosures pursuant to Rule 26(a)(1) and Rule 26(e) of the Federal Rules of Civil Procedure. Plaintiff makes these disclosures based upon information available to her pursuant to the investigation that Plaintiff has conducted to date. Plaintiff has not yet completed formal discovery in this matter. These disclosures reflect Plaintiff's current understanding, belief, and knowledge. By making these disclosures, Plaintiff does not represent that she is identifying or producing every witness she may use in support of her allegations.

While Plaintiff and her counsel have investigated sources of information immediately available to them, Plaintiff and her counsel have not yet had sufficient opportunity to interview all persons who have, or may have, knowledge of the facts relevant to this lawsuit or reviewed all documents which refer or relate to such facts. As discovery in this lawsuit continues, additional information, persons, and documents may become known to Plaintiff and her counsel. Plaintiff will produce information relating to experts as may be appropriate under Rule 26(a)(2) at the times provided by that Rule or any order of the Court. These disclosures are, therefore, without prejudice to Plaintiff's right to amend her response or to offer further or different evidence, documents, or information that may come to Plaintiff's attention after these disclosures and expert analysis. In addition, it is possible some individuals listed herein may not in fact possess significant information regarding the issues involved in this litigation, or may only have knowledge which is duplicative of knowledge possessed by others.

Plaintiff submits these disclosures without waiver of any applicable privilege

1  or protection and reserves the right to object to the admissibility at trial of any

2  information contained in or derived from these disclosures. Plaintiff further reserves

3  the right to rely upon the individuals identified in these disclosures for subjects other

4  than those identified herein in response to any disclosure, evidence, or testimony

5  proffered by Defendants.

6      Plaintiff reserves the right to supplement or correct these disclosures upon

7  continuing investigation, discovery, and expert analysis in accordance with Rule

8  26(e). All of the disclosures set forth below are made subject to the objections,

9  reservations, and qualifications set forth above.

10  **DEFINITIONS**

11      A.   "PERSON(S)" includes any natural person, firm, association,

12  organization, partnership, business, trust, corporation, governmental or public entity

13  or any other form of legal entity.

14      B.   "DOCUMENT(S)" or "RECORDS" shall mean all documents,

15  electronically stored information, and tangible things, including without limitation

16  all writings and all other means of recording information, whether written,

17  transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced,

18  or recorded, and including but not limited to: originals, drafts, computer-sorted and

19  computer-retrievable information, copies and duplicates that are marked with any

20  notation or annotation or otherwise differ in any way from the original,

21  correspondence, memoranda, reports, notes, minutes, contracts, agreements, books,

22  records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs,

23  calendars, computer printouts, computer disks, card files, lists of persons attending

24  meetings or conferences, sketches, diagrams, calculations, evaluations, analyses,

25  directions, work papers, press clippings, sworn or unsworn statements, requisitions,

26  manuals or guidelines, audit work papers, financial analyses, tables of organizations,

27  charts, graphs, indices, advertisements and promotional materials, audited and

28  unaudited financial statements, trade letters, trade publications, newspapers and

1    newsletters, photographs, emails, electronic or mechanical records, facsimiles,
2    telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-
3    identical copy is a separate DOCUMENT within the meaning of this term.
4    DOCUMENTS shall also include any removable sticky notes, flags, or other
5    attachments affixed to any of the foregoing, as well as the files, folder tabs, and
6    labels appended to or containing any documents. DOCUMENTS expressly include
7    all ELECTRONIC RECORDS.

8        C.    "ELECTRONIC RECORDS" shall mean the original (or identical
9    duplicate when the original is not available) and any non-identical copies (whether
10   non-identical because of notes made on copies or attached comments, annotations,
11   marks, transmission notations, or highlighting of any kind) of writings of every kind
12   and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or
13   other means. ELECTRONIC RECORDS includes, by way of example and not by
14   limitation, computer programs (whether private, commercial, or work-in-progress),
15   programming notes and instructions, activity listings of email transmittals and
16   receipts, output resulting from the use of any software program (including word
17   processing documents, spreadsheets, database files, charts, graphs and outlines),
18   electronic mail, and any and all miscellaneous files and file fragments, regardless of
19   the media on which they reside and regardless of whether said ELECTRONIC
20   RECORDS exists in an active file, deleted file, or file fragment. ELECTRONIC
21   RECORDS includes without limitation any and all items stored on computer
22   memories, hard disks, diskettes and cartridges, network drives, network memory
23   storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs,
24   removable media, magnetic tapes of all types, microfiche, and any other media used
25   for digital data storage or transmittal. ELECTRONIC RECORDS also includes the
26   file, folder tabs, and containers and labels appended to or associated with each
27   original and non-identical copy.

28       D.    "COMMUNICATION(S)" means any oral, written or electronic

1  transmission of information, including but not limited to meetings, discussions,
2  conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes,
3  conferences, messages, notes or seminars.

4      E.    "RELATING TO," "RELATED TO" or "RELATE(S) TO" means
5  constituting, containing, concerning, embodying, reflecting, identifying, stating,
6  mentioning, discussing, describing, evidencing, or in any other way being relevant
7  to that given subject matter.

8      F.    "PLAINTIFF" shall mean Plaintiff KRISTIN BIORN.

9      G.    "WRIGHT", and "WRIGHT MEDICAL" shall mean Defendant
10  Wright Medical Technology, Inc. and all of its employees and agents, including
11  attorneys, or other PERSONS acting on its behalf.

12      H.    "MICROPORT" OR "MICROPORT ORTHOPEDICS" shall mean
13  Defendant MicroPort Medical B.V. or MicroPort Orthopedics, Inc. and all of its
14  employees and agents, including attorneys, or other PERSONS acting on its behalf.

15      I.    "DEFENDANTS" shall mean Defendants Wright Medical Technology,
16  Inc. and MicroPort Orthopedics, Inc. collectively.

17      J.    "IMPLANT COMPONENTS" shall refer to the surgical prosthetic hip
18  implant components of any hip replacement device manufactured, designed and/or
19  marketed by WRIGHT or MICROPORT.

20      K.    "MODULAR NECK" refers to all modular prosthetic hip implant
21  constructs and/or systems that utilize a neck component and a stem component of
22  any alloy, including, but not limited to, the PROFEMUR HIP IMPLANT SYSTEM,
23  that have been designed, manufactured, marketed, and promulgated by any
24  company, including, but not limited to, WRIGHT or MICROPORT.

25      L.    "PROFEMUR HIP IMPLANT SYSTEM," "PROFEMUR HIP
26  DEVICE" or "PROFEMUR DEVICE" refers, individually and collectively, to all
27  modular prosthetic hip implant constructs and/or systems that have been designed,
28  manufactured, marketed and/or promulgated by WRIGHT or MICROPORT from

00458955-1                                    4                    PLAINTIFF KRISTIN BIORN'S
                                                                   SUPPLEMENTAL INITIAL DISCLOSURES

the year 2000 to the present in any configuration, edition, model, and/or class that utilize a modular component neck made of any type of alloy.

M.      "PROFEMUR NECK" means any Profemur Modular Neck, made of any type of alloy.

N.      "CoCr NECK" means WRIGHT or MICROPORT cobalt-chromium alloy Modular Neck components manufactured, designed, sold, distributed, or marketed, in each of their various sizes, lengths, designs and/or configurations, or their predecessor in name.

## INITIAL DISCLOSURES

**Rule 26(a)(1)(A)(i):**

Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

**Rule 26(a)(1)(A)(i) Disclosure:**

The following are persons likely to have discoverable information that may support Plaintiff's claims:

| Name | Contact Information[1] | Subjects |
|------|------------------------|----------|
| 1. Plaintiff Kristin Biorn | Plaintiff may only be contacted through her counsel of record in this matter. | The facts and circumstances underlying her claims and damages including, but not limited to, the implanted and explanted Profemur device manufactured or sold by Defendants, her condition before, during and after surgeries to her left hip, as well as medical records |

[1] Listed are the last known addresses, telephone numbers, or email addresses for these individuals. Plaintiff obtained this information after a good faith and diligent search for such information. As discovery is ongoing, further responsive information, when available, will be produced in conformance with Rule 26(e).

| | | documenting the implantation and explanation of the Profemur device, and recovery from her hip surgeries and hospitalizations. |
|---|---|---|
| 2. Current and former employees, executives, agents, and corporate representatives of Defendant Wright Medical Technology, Inc. and its subsidiaries, including, but not limited to, individuals identified in Defendants' Initial Disclosures, individuals designated by Defendants as 30(b)(6) witnesses, and individuals that have yet to be identified. | Wright Medical Technology, Inc. or through Defendants' counsel of record. | Plaintiff expects that such individuals (including, but not limited to, individuals identified in Defendant Wright Medical Technology, Inc.'s initial disclosures and discovery responses) possess information forming the basis for this litigation. Subjects include, but are not limited to:<br><br>• Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and |

| | | |
|---|---|---|
| | | • The purchase and sale agreement between Defendants. Third-party involvement in any of the above. |
| 3. Current and former employees, executives, agents, and corporate representatives of Defendant MicroPort Orthopedics, Inc. and its subsidiaries, including, but not limited to, individuals identified in Defendants' Initial Disclosures, individuals designated by Defendants as 30(b)(6) witnesses, and individuals that have yet to be identified. | MicroPort Orthopedics, Inc. or through Defendants' counsel of record. | Plaintiff expects that such individuals (including, but not limited to, individuals identified in Defendant MicroPort Orthopedics, Inc.'s initial disclosures and discovery responses) possess information forming the basis for this litigation. Subjects include, but are not limited to: <br>• Research and development of the Profemur device; <br>• Design and manufacture of the Profemur device; <br>• Testing of the Profemur device; <br>• Communication with FDA regarding the Profemur device; <br>• Post-Market Surveillance of the Profemur device; <br>• Tracking and investigation of complaints of the Profemur device; <br>• Sales information regarding the Profemur device; <br>• Marketing literature regarding the Profemur device; <br>• Warnings related to the Profemur device; <br>• Recall of the Profemur device; <br>• Neck breakage failures with respect to the Profemur device; and |

| | | |
|---|---|---|
| | | • The purchase and sale agreement between Defendants.<br><br>Third-party involvement in any of the above. |
| 4. Present and/or former employees of Advanced Surgical Devices [Wright Medical Technology, Inc. distributor], including William Zurowski. | 3775 Ashwood Avenue, Los Angeles, CA 90066; (310) 391-8176 | Sales, packaging, warnings for the Profemur device implanted in Plaintiff; communications with Defendants, Plaintiff, Dr. Snibbe, and any of Plaintiff's other physicians. |
| 5. Dr. Jason Snibbe, M.D. | 120 South Spalding Drive, Suite 401, Beverly Hills, CA 90212; (310) 860-3048 | The facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, use of the Profemur Device; experience with the Profemur Device and Defendants; the implantation and revision surgery of the Plaintiff's Profemur device; additional surgeries undergone to repair damage from the implantation and revision of the Plaintiff's Profemur device; as well as medical records documenting the implantation, revision, additional surgeries to Plaintiff's hip, and treatment of Plaintiff. |
| 6. Exhale Physical Therapy | 101 Wilshire Blvd., Santa Monica, CA 90401 | The facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, the physical therapy performed to treat injuries related to the implantation of the Profemur device. |

| 7. Dr. Laurie Musto | 881 Alma Real Drive, Suite 110, Pacific Palisades, CA 90272; (310) 454-1212 | One of Plaintiff's primary care physicians, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, the treatment of Plaintiff for pain and discomfort relating to injuries from the implantation of Profemur device. |
| --- | --- | --- |
| 8. Taylor Mackall | 1600 Palisades Drive, Pacific Palisades, CA 90272 | Plaintiff's son, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries on her left hip. |
| 9. Steve Mackall | 2940 Mandeville Canyon Road, Los Angeles CA 90272 | Plaintiff's former husband, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries on her left hip. |
| 10. Stacy Miller | 17442 Doric Street, Granada Hills 91344 | Plaintiff's former assistant, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries to her left hip. She can also provide information relating to the condition of Plaintiff's business before, during, and after the surgeries on Plaintiff's left hip. |

PLAINTIFF KRISTIN BIORN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| 11. Ariana Eskenazi | 5744 Wallis Ln., Woodland Hills, CA 91367; (818) 634-0995 | Plaintiff's former assistant, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries to her left hip. She can also provide information relating to the condition of Plaintiff's business before, during, and after the surgeries on Plaintiff's left hip. |
| --- | --- | --- |
| 12. Yelena Gazal | 16060 Ventura Boulevard, Suite 326, Encino, CA 91346 | Plaintiff's accountant, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries to her left hip, business accounting records, the condition of Plaintiff's business before, during, and after the surgeries on Plaintiff's left hip, Plaintiff's loss of income and future earnings and Plaintiff's general financial condition. |
| 13. Bryan Callahan | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device; • Design and manufacture of the Profemur device; • Testing of the Profemur device; • Communication with FDA regarding the Profemur device; • Post-Market Surveillance of the Profemur device; • Tracking and investigation of complaints of the Profemur device; • Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 14. Satya Nambu | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
|---|---|---|
| 15. Scott Shankle | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 16. Theresa Leister | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

13

| | | |
|---|---|---|
| | | the Profemur device; |
| | | • Marketing literature regarding the Profemur device; |
| | | • Notice of defects and clinical failures of the cobalt chrome modular necks; |
| | | • Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks; |
| | | • Warnings related to the Profemur device; |
| | | • Recall of the Profemur device; |
| | | • Neck breakage failures with respect to the Profemur device; and |
| | | • The purchase and sale agreement between Defendants. |
| | | Third-party involvement in any of the above. |
| 17. Jason Watson | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device; |
| | | • Design and manufacture of the Profemur device; |
| | | • Testing of the Profemur device; |
| | | • Communication with FDA regarding the Profemur device; |
| | | • Post-Market Surveillance of the Profemur device; |
| | | • Tracking and investigation of complaints of the Profemur device; |
| | | • Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 18. Brian McDaniel | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 19. Cathy Park | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 20. Jeanine Redden | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 21. Deborah Daurer | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

18

PLAINTIFF KRISTIN BIORN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | |
|---|---|---|
| | | the Profemur device; <br>• Marketing literature regarding the Profemur device; <br>• Notice of defects and clinical failures of the cobalt chrome modular necks; <br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks; <br>• Warnings related to the Profemur device; <br>• Recall of the Profemur device; <br>• Neck breakage failures with respect to the Profemur device; and <br>• The purchase and sale agreement between Defendants. <br>Third-party involvement in any of the above. |
| 22. Scott Bible | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device; <br>• Design and manufacture of the Profemur device; <br>• Testing of the Profemur device; <br>• Communication with FDA regarding the Profemur device; <br>• Post-Market Surveillance of the Profemur device; <br>• Tracking and investigation of complaints of the Profemur device; <br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 23. Jon Moseley | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 24. Frank Bono | Paragon 28 – 4B Inverness Ct. East, Suite 280, Englewood, CO 80112 | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 25. Michael Carroll | 4691 Barfield Road Memphis, TN 38117 or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

22

| | | the Profemur device; |
|---|---|---|
| | | • Marketing literature regarding the Profemur device; |
| | | • Notice of defects and clinical failures of the cobalt chrome modular necks; |
| | | • Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks; |
| | | • Warnings related to the Profemur device; |
| | | • Recall of the Profemur device; |
| | | • Neck breakage failures with respect to the Profemur device; and |
| | | • The purchase and sale agreement between Defendants. |
| | | Third-party involvement in any of the above. |
| 26. Irina Timmerman | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device; |
| | | • Design and manufacture of the Profemur device; |
| | | • Testing of the Profemur device; |
| | | • Communication with FDA regarding the Profemur device; |
| | | • Post-Market Surveillance of the Profemur device; |
| | | • Tracking and investigation of complaints of the Profemur device; |
| | | • Sales information regarding |

PLAINTIFF KRISTIN BIORN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | the Profemur device; |
|---|---|---|
| | | <ul><li>Marketing literature regarding the Profemur device;</li><li>Notice of defects and clinical failures of the cobalt chrome modular necks;</li><li>Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;</li><li>Warnings related to the Profemur device;</li><li>Recall of the Profemur device;</li><li>Neck breakage failures with respect to the Profemur device; and</li><li>The purchase and sale agreement between Defendants.</li></ul>Third-party involvement in any of the above. |
| 27. Patrick Fisher | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | <ul><li>Research and development of the Profemur device;</li><li>Design and manufacture of the Profemur device;</li><li>Testing of the Profemur device;</li><li>Communication with FDA regarding the Profemur device;</li><li>Post-Market Surveillance of the Profemur device;</li><li>Tracking and investigation of complaints of the Profemur device;</li><li>Sales information regarding</li></ul> |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 28. James Lightman | Wright Medical Technology, Inc. or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 29. Ted Davis | Wright Medical Technology, Inc., MicroPort Orthopedics, Inc. or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding |

| | | |
|---|---|---|
| | | the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 30. C. Lowry Barnes, M.D. | 4301 W Markham St, Little Rock, AR 72205 | • Use of the Profemur device;<br>• Experience with the Profemur device and Defendants; and<br>• Notice to Defendants of defects and clinical failures of the cobalt chromium modular necks. |

In addition to the foregoing, all witnesses identified by any party in its Initial Disclosures and discovery responses would likely have knowledge that supports Plaintiff's claims herein. Plaintiff reserves the right to supplement or correct these Disclosures upon continuing investigation, discovery and expert analysis in

accordance with Rule 26(e).

**Rule 26(a)(1)(A)(ii):**

Provide a copy – or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to supports its claims or defenses, unless the use would be solely for impeachment.

**Rule 26(a)(1)(A)(ii) Disclosure:**

Plaintiff hereby discloses the following categories of documents:

| Category | Location |
|---|---|
| 1. Medical records from Plaintiff's 8/20/2013 surgery, when she was implanted with the Profemur hip device. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 2. Medical records from Plaintiff's 4/6/2015 surgery, when the Profemur hip device was explanted during revision surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 3. Any and all records, including, but not limited to, medical records and billing records, maintained by Dr. Jason Snibbe related to Plaintiff. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 4. Any and all records, including, but not limited to medical records and billing records, maintained by Dr. Laurie Musto related to Plaintiff. | Located at the offices of Dr. Laurie Musto (Pacific Palisades, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 5. Billing records from medical treatment following Plaintiff's 8/20/2013 surgery, when she was implanted with the Wright Profemur hip device. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 6. Billing records from Plaintiff's | Located at the offices of Dr. Jason |

| 4/6/2015 surgery, when the Wright Profemur hip device was explanted during revision surgery. | Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers or RecordTrak. |
| --- | --- |
| 7. Medical records from St. John's Health Center, where Plaintiff was treated following an injury related to the fracture of the Profemur device on 4/5/15. | Located at the offices of St. John's Hospital (Santa Monica, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 8. Billing records from St. John's Health Center, where Plaintiff was treated following an injury related to the fracture of the Profemur device on 4/5/15. | Located at the offices of St. John's Hospital (Santa Monica, CA) or Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers or RecordTrak. |
| 9. Explanted Profemur hip device components, removed from Plaintiff during her 4/6/2015 revision surgery. | Any request for the device is to be done through Plaintiff's counsel. |
| 10. All documents produced by Defendant Wright Medical Technology, Inc. in discovery for this action. | These documents are available through Defendants' counsel. |
| 11. All documents produced by Defendant MicroPort Orthopedics, Inc. in discovery for this action. | These documents are available through Defendants' counsel. |
| 12. All documents, files or records produced in discovery for this action by any Third Party Witness. | These documents, files or records are in the parties' care, custody or control. |
| 13. All documents, files or records produced in discovery for this action by any Third Party Entity. | These documents, files or records are in the parties' care, custody or control. |
| 14. Medical records from Plaintiff's 11/3/2015 hip surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 15. Medical records from Plaintiff's 12/30/15 hip surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars- |

| | |
|---|---|
| | Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 16. Billing records from Plaintiff's 11/3/2015 hip surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 17. Billing records from Plaintiff's 12/30/15 hip surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 18. All publicly available and historic Profemur marketing materials. | Defendants' websites and materials provided to surgeons. |
| 19. All Wright Medical Technology, Inc. SEC filings, including but not limited to, 10Ks. | These documents are in Defendant Wright Medical Technology, Inc. or Wright Medical Group, N.V.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |
| 20. All Wright Medical Group, Inc. SEC filings, including but not limited to, 10Ks. | These documents are in Defendant Wright Medical Group, Inc. or Wright Medical Group, N.V.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |
| 21. All Wright Medical Group, N.V. SEC filings, including, but not limited to, 10Ks. | These documents are in Wright Medical Group, N.V.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |
| 22. All MicroPort Orthopedics, Inc. SEC filings, including, but not limited to, 10Ks. | These documents are in Defendant MicroPort Orthopedics, Inc.'s care, custody or control. These documents are also available through the U.S. Securities |

| | |
|---|---|
| | and Exchange Commission. |
| 23. All MicroPort Scientific Corporation SEC filings, including, but not limited to, 10Ks. | These documents are in Defendant MicroPort Orthopedics, Inc. or MicroPort Scientific Corporation's care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission |
| 24. Any and all records, including, but not limited to medical records and billing records, maintained by Santa Monica Bay Physicians related to the treatment of Plaintiff's left hip. | Located at the offices of Santa Monica Bay Physicians (Santa Monica, CA) or RecordTrak. |
| 25. Any and all records, including not limited to medical records and billing records, maintained by Santa Monica Orthopedic & Sports Medical Group related to the treatment of Plaintiff's left hip. | Located at the offices of Santa Monica Orthopedic & Sports Medical Group (Santa Monica, CA) or RecordTrak. |
| 26. Any and all records, including, but not limited to medical records and billing records, maintained by CC &C Medical Billing Services related to the treatment of Plaintiff's left hip. | Located at the offices of CC &C Medical Billing Services (Los Angeles, CA) or RecordTrak. |
| 27. Any and all records, including, but not limited to medical records and billing records, maintained by BlueCross related to the treatment of Plaintiff's left hip. | Located at the offices of BlueCross (Los Angeles, CA) or RecordTrak. |
| 28. Any and all records, including but not limited to medical records and billing records, maintained by the Los Angeles County Fire Department related to Plaintiff's left hip. | Located at the offices of the Los Angeles County Fire Department (Los Angeles, CA) or RecordTrak. |
| 29. Any and all records, including but not limited to medical records and billing records, maintained by Cedars Sinai Medical Center related to Plaintiff's left hip. | Located at Cedars Sinai Medical Center (Los Angeles, CA) or RecordTrak. |

PLAINTIFF KRISTIN BIORN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | |
|---|---|
| 30. All of Plaintiff's medical records obtained by Defendants through RecordTrak. | These files and/or documents are available on the RecordTrak website: www.recordtrak.com. RecordTrak's address is 651 Allendale Rd. PO Box 61591, King of Prussia, PA 19406. These files and/or documents are also in the care, custody or control of Defendants. |
| 31. All of Plaintiff's imaging studies, including, but not limited to, x-rays, MRI and body scans obtained by Defendants through RecordTrak. | These files, images and documents are available on the RecordTrak website: www.recordtrak.com. RecordTrak's address is 651 Allendale Rd. PO Box 61591, King of Prussia, PA 19406. These files, images and documents are also in the care, custody or control of Defendants. |
| 32. All of Plaintiff's medical billing records obtained by Defendants through RecordTrak. | These files and/or documents are available on the RecordTrak website: www.recordtrak.com. RecordTrak's address is 651 Allendale Rd. PO Box 61591, King of Prussia, PA 19406. These files and/or documents are also in the care, custody or control of Defendants. |
| 33. All accounting records produced by Yelena Gazal in response to Defendants' subpoena. (YG_BIORN001-282) | These records were produced to Defendants at the time of Yelena Gazal's deposition on 5/13/2017. |
| 34. Transcripts of all depositions taken in this action. | These transcripts are available through the parties' counsel. |
| 35. All documents, tangible items, videos, and other media identified as exhibits to any deposition taken in this action. | These exhibits are available through the parties' counsel. |
| 36. All expert reports prepared for this action. | These reports will be available to the parties pursuant to the Court's Scheduling Order. |
| 37. All documents, tangible items, | These materials are available through the |

| | |
|---|---|
| videos, and other media relied upon by experts to formulate their opinions. | parties' counsel. |
| 38. The curriculum vitae (CV) for each expert designated in this action. | These materials are available through the parties' counsel. |
| 39. The Asset Purchase Agreement between the Defendants. | This document is in the care, custody or control of Defendants. |
| 40. All documents produced by Plaintiff in discovery for this action. | These documents are available through Plaintiff's counsel. |
| 41. Documents relating to research and development of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 42. Documents relating to design and manufacture of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 43. Documents relating to testing of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 44. Documents relating to communication with and submissions to the FDA regarding the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 45. Documents relating to Post-Market Surveillance regarding the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 46. Documents relating to tracking and investigation of complaints regarding the Profemur device | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 47. Documents relating to sales of the Profemur device | These documents are in the care, custody or control of Defendants. |
| 48. Documents relating to marketing literature regarding the Profemur device | These documents are in the care, custody or control of Defendants, Defendants' distributors and recipients of any such |

| | related documents. These documents may also be publicly available. |
|---|---|
| 49. Documents relating to notice of defects and clinical failures of the cobalt chrome modular necks. | These documents are in the care, custody or control of Defendants. |
| 50. Documents relating to warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks. | These documents are in the care, custody or control of Defendants. |
| 51. Documents relating to warnings related to the Profemur device. | These documents are in the care, custody or control of Defendants. |
| 52. Documents relating to the recall of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 53. Documents relating to Profemur neck breakage failures without breakages. | These documents are in the care, custody or control of Defendants. |

In addition to the foregoing, all documents identified or produced by any party in its Initial Disclosures and discovery would likely contain information that supports Plaintiff's claims herein. Plaintiff reserves the right to supplement or correct these Disclosures upon continuing investigation and discovery in accordance with Rule 26(e).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Rule 26(a)(1)(A)(iii):**

Provide the computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

**Rule 26(a)(1)(A)(iii) Disclosure:**

Plaintiff seeks the following:

- General damages in excess of $750,000 for personal injuries to Plaintiff to be determined through discovery and presented at trial.
- All past, current, and future medical and incidental expenses, in excess of $635,000, based upon Plaintiff's medical bills to date.
- All loss of earnings, present and future, and loss of earning capacity, based upon personal and business records in Plaintiff's possession to date and provided or to be provided through the course of discovery.
  - Past loss of earnings and benefits from her business in excess of $286,890.
  - Past loss of household services in excess of $26,030.
  - Future loss of earning and benefits from business in excess of $570,500.
  - Future loss of household services in excess of $97,830.
- Punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, in an amount to be determined through discovery and presented at trial.

A more precise computation of Plaintiff's damages is premature at this time because it will require the completion of discovery in this action and include expert analysis. Further responsive information, when available, will be produced in conformance with Rule 26(e).

1  **Rule 26(a)(1)(A)(iv):**

2      Provide for inspection and copying as under Rule 34, any insurance

3  agreement under which an insurance business may be liable to satisfy all or part of a

4  possible judgment in the action or to indemnify or reimburse for payments made to

5  satisfy the judgment.

6  **Rule 26(a)(1)(A)(iv) Disclosure:**

7      Copies of insurance policies and the indemnity agreement were requested by

8  Plaintiff and have been produced by Defendants.

9

10 DATED: May 14, 2017                KIESEL LAW LLP

11

12                                    By:  _____

13                                         Paul R. Kiesel

14                                         Helen Zukin

15                                         D. Bryan Garcia

                                           Cherisse H. Cleofe

16

17                                         Attorneys for Plaintiff Kristin Biorn

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910.

On May 14, 2017, I served the original of the following document(s) described as **PLAINTIFF KRISTIN BIORN'S SUPPLEMENTAL INITIAL DISCLOSURES** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY ELECTRONIC MAIL:** I hereby certify that I served the above-described document on the interested parties in this action by attaching an electronic copy of the document to an email addressed to the parties listed on the Service List at their most recent e-mail address of record in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY PERSONAL SERVICE:** I personally caused the document(s) to be served via messenger service on May 15, 2017, to Duane Morris, LLP at 865 S. Figueroa Street, Suite 3100, Los Angeles CA 90017-5450 by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 14, 2017, at Beverly Hills, California.

Cherisse Cleofe

1

**SERVICE LIST**

2

3    J. Robert Renner, Esq.                        Attorneys for Defendants
4    Katherine Nichols, Esq.                       WRIGHT MEDICAL TECHNOLOGY,
     **DUANE MORRIS LLP**                          INC. AND MICROPORT
5    865 South Figueroa Street, Suite 3100         ORTHOPEDICS, INC.
6    Los Angeles, CA 90017-5450
     Telephone: 213-689-7400
7    Facsimile:  213-689-7401
8    E-mail: RRenner@duanemorris.com
             KNichols@duanemorris.com
9

10   Dana J. Ash, Esq.                             Attorneys for Defendants
     J. Scott Kramer, Esq.                         WRIGHT MEDICAL TECHNOLOGY,
11   Sean K. Burke, Esq.                           INC. AND MICROPORT
12   Ryan J. O'Neil, Esq.                          ORTHOPEDICS, INC.
     **DUANE MORRIS LLP**
13   30 South 17th Street
14   Philadelphia, PA 19103-4196
     Telephone: 215-979-1000
15   Facsimile:  215-979-1020
16   E-mail: DJAsh@duanemorris.com
             JSKramer@duanemorris.com
17           SBurke@duanemorris.com
             RJONeil@duanemorris.com
18

19                    Case No. CV15-07102 CAS (KSx)

20

21

22

23

24

25

26

27

28

1   Paul R. Kiesel, State Bar No. 119854
      *kiesel@kiesel.law*
2   Helen Zukin, State Bar No. 117933
      *zukin@kiesel.law*
3   D. Bryan Garcia, State Bar No. 216904
      *garcia@kiesel.law*
4   Cherisse H. Cleofe, State Bar No. 290152
      *cleofe@kiesel.law*
5   **KIESEL LAW LLP**
    8648 Wilshire Boulevard
6   Beverly Hills, California 90211-2910
    Tel:   310-854-4444
7   Fax:   310-854-0812

8   Attorneys for Plaintiffs
    KRISTIN BIORN and
9   RICHARD B. SARAFIAN

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12  | KRISTIN BIORN, | Case No. CV15-07102 CAS (KSx) |
    | --- | --- |
13  | Plaintiff, | Honorable Christina A. Snyder |
14  | v. | **PLAINTIFF RICHARD B. SARAFIAN'S SUPPLEMENTAL INITIAL DISCLOSURES** |
15  | WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and MICROPORT ORTHOPEDICS, INC., a Delaware corporation. | |
16  | | |
17  | Defendants. | |
18  | RICHARD B. SARAFIAN, | |
19  | Plaintiff, | |
20  | v. | |
21  | WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; WRIGHT MEDICAL GROUP, INC., a Delaware corporation; MICROPORT ORTHOPEDICS, INC., a Delaware corporation; and DOES 1-10, | |
22  | | |
23  | | |
24  | Defendants. | |
25  | | |

26

27

28

00458535-1

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

1    Pursuant to Rule 26(a)(1) and Rule 26(e) of the Federal Rules of Civil

2    Procedure, Plaintiff RICHARD B. SARAFIAN provides the following

3    Supplemental Initial Disclosures to Defendants WRIGHT MEDICAL

4    TECHNOLOGY, INC. and MICROPORT ORTHOPEDICS, INC.

5    **INTRODUCTORY COMMENTS**

6    Plaintiff hereby amends and supplements Plaintiff's Initial Disclosures

7    pursuant to Rule 26(a)(1) and Rule 26(e) of the Federal Rules of Civil Procedure.

8    Plaintiff makes these disclosures based upon information available to him pursuant

9    to the investigation that Plaintiff has conducted to date. Plaintiff has not yet

10    completed formal discovery in this matter. These disclosures reflect Plaintiff's

11    current understanding, belief, and knowledge. By making these disclosures, Plaintiff

12    does not represent that he is identifying or producing every witness he may use in

13    support of his allegations.

14    While Plaintiff and his counsel have investigated sources of information

15    immediately available to them, Plaintiff and his counsel have not yet had sufficient

16    opportunity to interview all persons who have, or may have, knowledge of the facts

17    relevant to this lawsuit or reviewed all documents which refer or relate to such facts.

18    As discovery in this lawsuit continues, additional information, persons, and

19    documents may become known to Plaintiff and his counsel. Plaintiff will produce

20    information relating to experts as may be appropriate under Rule 26(a)(2) at the

21    times provided by that Rule or any order of the Court. These disclosures are,

22    therefore, without prejudice to Plaintiff's right to amend his response or to offer

23    further or different evidence, documents, or information that may come to Plaintiff's

24    attention after these disclosures and expert analysis. In addition, it is possible some

25    individuals listed herein may not in fact possess significant information regarding

26    the issues involved in this litigation, or may only have knowledge which is

27    duplicative of knowledge possessed by others.

28    Plaintiff submits these disclosures without waiver of any applicable privilege

1  or protection and reserves the right to object to the admissibility at trial of any

2  information contained in or derived from these disclosures. Plaintiff further reserves

3  the right to rely upon the individuals identified in these disclosures for subjects other

4  than those identified herein in response to any disclosure, evidence, or testimony

5  proffered by Defendants.

6      Plaintiff reserves the right to supplement or correct these disclosures upon

7  continuing investigation, discovery, and expert analysis in accordance with Rule

8  26(e). All of the disclosures set forth below are made subject to the objections,

9  reservations, and qualifications set forth above.

10  **DEFINITIONS**

11      A.  "PERSON(S)"  includes  any  natural  person,  firm,  association,

12  organization, partnership, business, trust, corporation, governmental or public entity

13  or any other form of legal entity.

14      B.  "DOCUMENT(S)"  or  "RECORDS"  shall  mean  all  documents,

15  electronically stored information, and tangible things, including without limitation

16  all writings and all other means of recording information, whether written,

17  transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced,

18  or recorded, and including but not limited to: originals, drafts, computer-sorted and

19  computer-retrievable information, copies and duplicates that are marked with any

20  notation or annotation or otherwise differ in any way from the original,

21  correspondence, memoranda, reports, notes, minutes, contracts, agreements, books,

22  records, checks, vouchers, invoices, purchase orders, ledgers, diaries, logs,

23  calendars, computer printouts, computer disks, card files, lists of persons attending

24  meetings or conferences, sketches, diagrams, calculations, evaluations, analyses,

25  directions, work papers, press clippings, sworn or unsworn statements, requisitions,

26  manuals or guidelines, audit work papers, financial analyses, tables of organizations,

27  charts, graphs, indices, advertisements and promotional materials, audited and

28  unaudited financial statements, trade letters, trade publications, newspapers and

00458535-1          2          PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

newsletters, photographs, emails, electronic or mechanical records, facsimiles, telegrams and telecopies, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate DOCUMENT within the meaning of this term. DOCUMENTS shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. DOCUMENTS expressly include all ELECTRONIC RECORDS.

C.    "ELECTRONIC RECORDS" shall mean the original (or identical duplicate when the original is not available) and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. ELECTRONIC RECORDS includes, by way of example and not by limitation, computer programs (whether private, commercial, or work-in-progress), programming notes and instructions, activity listings of email transmittals and receipts, output resulting from the use of any software program (including word processing documents, spreadsheets, database files, charts, graphs and outlines), electronic mail, and any and all miscellaneous files and file fragments, regardless of the media on which they reside and regardless of whether said ELECTRONIC RECORDS exists in an active file, deleted file, or file fragment. ELECTRONIC RECORDS includes without limitation any and all items stored on computer memories, hard disks, diskettes and cartridges, network drives, network memory storage, archived tapes and cartridges, backup tapes, floppy disks, CD-ROMs, removable media, magnetic tapes of all types, microfiche, and any other media used for digital data storage or transmittal. ELECTRONIC RECORDS also includes the file, folder tabs, and containers and labels appended to or associated with each original and non-identical copy.

D.    "COMMUNICATION(S)" means any oral, written or electronic

1  transmission of information, including but not limited to meetings, discussions,
2  conversations, telephone calls, telegrams, memoranda, letters, telecopies, telexes,
3  conferences, messages, notes or seminars.

4      E.    "RELATING TO," "RELATED TO" or "RELATE(S) TO" means
5  constituting, containing, concerning, embodying, reflecting, identifying, stating,
6  mentioning, discussing, describing, evidencing, or in any other way being relevant
7  to that given subject matter.

8      F.    "PLAINTIFF" shall mean Plaintiff RICHARD B. SARAFIAN.

9      G.    "WRIGHT", and "WRIGHT MEDICAL" shall mean Defendant
10 Wright Medical Technology, Inc. and all of its employees and agents, including
11 attorneys, or other PERSONS acting on its behalf.

12     H.    "MICROPORT" OR "MICROPORT ORTHOPEDICS" shall mean
13 Defendant MicroPort Medical B.V. or MicroPort Orthopedics, Inc. and all of its
14 employees and agents, including attorneys, or other PERSONS acting on its behalf.

15     I.    "DEFENDANTS" shall mean Defendants Wright Medical Technology,
16 Inc. and MicroPort Orthopedics, Inc. collectively.

17     J.    "IMPLANT COMPONENTS" shall refer to the surgical prosthetic hip
18 implant components of any hip replacement device manufactured, designed and/or
19 marketed by WRIGHT or MICROPORT.

20     K.    "MODULAR NECK" refers to all modular prosthetic hip implant
21 constructs and/or systems that utilize a neck component and a stem component of
22 any alloy, including, but not limited to, the PROFEMUR HIP IMPLANT SYSTEM,
23 that have been designed, manufactured, marketed, and promulgated by any
24 company, including, but not limited to, WRIGHT or MICROPORT.

25     L.    "PROFEMUR HIP IMPLANT SYSTEM," "PROFEMUR HIP
26 DEVICE" or "PROFEMUR DEVICE" refers, individually and collectively, to all
27 modular prosthetic hip implant constructs and/or systems that have been designed,
28 manufactured, marketed and/or promulgated by WRIGHT or MICROPORT from

00458535-1                    4          PLAINTIFF RICHARD B. SARAFIAN'S
                                         SUPPLEMENTAL INITIAL DISCLOSURES

the year 2000 to the present in any configuration, edition, model, and/or class that utilize a modular component neck made of any type of alloy.

M.    "PROFEMUR NECK" means any Profemur Modular Neck, made of any type of alloy.

N.    "CoCr NECK" means WRIGHT or MICROPORT cobalt-chromium alloy Modular Neck components manufactured, designed, sold, distributed, or marketed, in each of their various sizes, lengths, designs and/or configurations, or their predecessor in name.

## INITIAL DISCLOSURES

### Rule 26(a)(1)(A)(i):

Provide the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.

### Rule 26(a)(1)(A)(i) Disclosure:

The following are persons likely to have discoverable information that may support Plaintiff's claims:

| Name | Contact Information[1] | Subjects |
|---|---|---|
| 1. Plaintiff Richard B. Sarafian | Plaintiff may only be contacted through his counsel of record in this matter. | The facts and circumstances underlying her claims and damages including, but not limited to, the implanted and explanted Profemur device manufactured or sold by Defendants, his condition before, during and after surgeries to his hip, as well as medical records |

[1] Listed are the last known addresses, telephone numbers, or email addresses for these individuals. Plaintiff obtained this information after a good faith and diligent search for such information. As discovery is ongoing, further responsive information, when available, will be produced in conformance with Rule 26(e).

| | | documenting the implantation and explanation of the Profemur device, and recovery from his hip surgeries and hospitalizations. |
|---|---|---|
| 2. Current and former employees, executives, agents, and corporate representatives of Defendant Wright Medical Technology, Inc. and its subsidiaries, including, but not limited to, individuals identified in Defendants' Initial Disclosures, individuals designated by Defendants as 30(b)(6) witnesses, and individuals that have yet to be identified. | Wright Medical Technology, Inc. or through Defendants' counsel of record. | Plaintiff expects that such individuals (including, but not limited to, individuals identified in Defendant Wright Medical Technology, Inc.'s initial disclosures and discovery responses) possess information forming the basis for this litigation. Subjects include, but are not limited to: <ul><li>Research and development of the Profemur device;</li><li>Design and manufacture of the Profemur device;</li><li>Testing of the Profemur device;</li><li>Communication with FDA regarding the Profemur device;</li><li>Post-Market Surveillance of the Profemur device;</li><li>Tracking and investigation of complaints of the Profemur device;</li><li>Sales information regarding the Profemur device;</li><li>Marketing literature regarding the Profemur device;</li><li>Warnings related to the Profemur device;</li><li>Recall of the Profemur device;</li><li>Neck breakage failures with respect to the Profemur device; and</li></ul> |

| | | |
|---|---|---|
| | | • The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 3. Current and former employees, executives, agents, and corporate representatives of Defendant MicroPort Orthopedics, Inc. and its subsidiaries, including, but not limited to, individuals identified in Defendants' Initial Disclosures, individuals designated by Defendants as 30(b)(6) witnesses, and individuals that have yet to be identified. | MicroPort Orthopedics, Inc. or through Defendants' counsel of record. | Plaintiff expects that such individuals (including, but not limited to, individuals identified in Defendant MicroPort Orthopedics, Inc.'s initial disclosures and discovery responses) possess information forming the basis for this litigation. Subjects include, but are not limited to:<br>• Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and |

| | | |
|---|---|---|
| | | • The purchase and sale agreement between Defendants.<br><br>Third-party involvement in any of the above. |
| 4. Present and/or former employees of Advanced Surgical Devices [Wright Medical Technology, Inc. distributor], including William Zurowski. | 3775 Ashwood Avenue, Los Angeles, CA 90066; (310) 391-8176 | Sales, packaging, warnings for the Profemur device implanted in Plaintiff; communications with Defendants, Plaintiff, Dr. Snibbe, and any of Plaintiff's other physicians. |
| 4. Dr. Jason Snibbe, M.D. | 120 South Spalding Drive, Suite 401, Beverly Hills, CA 90212; (310) 860-3048 | The facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, use of the Profemur Device; experience with the Profemur Device and Defendants; the implantation and revision surgery of the Plaintiff's Profemur device; as well as medical records documenting the implantation, revision, and treatment of Plaintiff. |
| 6. Darren Sarafian | (310) 963-8686 Deran@mac.com | Plaintiff's brother, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries on his hip. |
| 7. Tedi Sarafian | (310) 717-9442 Ted111@mac.com | Plaintiff's brother, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries on his hip. |

| 8. Damon Sarafian | (760) 567-4240<br>Dsarafian@mac.com | Plaintiff's brother, who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries on his hip. |
| 9. Daniel Frederick | (562) 299-4098 | Witness who can provide facts and circumstances underlying Plaintiff's claims and damages including, but not limited to, Plaintiff's condition before, during, and after the surgeries on his hip. |
| 10. Bryan Callahan | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 11. Satya Nambu | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | • modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 12. Scott Shankle | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | |
|---|---|---|
| | | • modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 13. Theresa Leister | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | • modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 14. Jason Watson | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 15. Brian McDaniel | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 16. Cathy Park | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 17. Jeanine Redden | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 18. Deborah Daurer | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | |
|---|---|---|
| | | • modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 19. Scott Bible | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks; <br> • Warnings related to the Profemur device; <br> • Recall of the Profemur device; <br> • Neck breakage failures with respect to the Profemur device; and <br> • The purchase and sale agreement between Defendants. <br><br> Third-party involvement in any of the above. |
| 20. Jon Moseley | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device; <br> • Design and manufacture of the Profemur device; <br> • Testing of the Profemur device; <br> • Communication with FDA regarding the Profemur device; <br> • Post-Market Surveillance of the Profemur device; <br> • Tracking and investigation of complaints of the Profemur device; <br> • Sales information regarding the Profemur device; <br> • Marketing literature regarding the Profemur device; <br> • Notice of defects and clinical failures of the cobalt chrome modular necks; <br> • Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 21. Frank Bono | Paragon 28 – 4B Inverness Ct. East, Suite 280, Englewood, CO 80112 | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 22. Michael Carroll | 4691 Barfield Road Memphis, TN 38117 or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 23. Irina Timmerman | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | • modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 24. Patrick Fisher | Wright Medical Technology, Inc.; MicroPort Orthopedics, Inc.; or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 25. James Lightman | Wright Medical Technology, Inc. or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

| | | |
|---|---|---|
| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
| 26. Ted Davis | Wright Medical Technology, Inc., MicroPort Orthopedics, Inc. or through Defendants' counsel of record. | • Research and development of the Profemur device;<br>• Design and manufacture of the Profemur device;<br>• Testing of the Profemur device;<br>• Communication with FDA regarding the Profemur device;<br>• Post-Market Surveillance of the Profemur device;<br>• Tracking and investigation of complaints of the Profemur device;<br>• Sales information regarding the Profemur device;<br>• Marketing literature regarding the Profemur device;<br>• Notice of defects and clinical failures of the cobalt chrome modular necks;<br>• Warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome |

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

| | | modular necks;<br>• Warnings related to the Profemur device;<br>• Recall of the Profemur device;<br>• Neck breakage failures with respect to the Profemur device; and<br>• The purchase and sale agreement between Defendants.<br>Third-party involvement in any of the above. |
|---|---|---|
| 27. C. Lowry Barnes, M.D. | 4301 W Markham St, Little Rock, AR 72205 | • Use of the Profemur device;<br>• Experience with the Profemur device and Defendants; and<br>• Notice to Defendants of defects and clinical failures of the cobalt chromium modular necks. |

In addition to the foregoing, all witnesses identified by any party in its Initial Disclosures and discovery responses would likely have knowledge that supports Plaintiff's claims herein. Plaintiff reserves the right to supplement or correct these Disclosures upon continuing investigation, discovery and expert analysis in accordance with Rule 26(e).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

26

PLAINTIFF RICHARD B. SARAFIAN'S
SUPPLEMENTAL INITIAL DISCLOSURES

**Rule 26(a)(1)(A)(ii):**

Provide a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody or control and may use to supports its claims or defenses, unless the use would be solely for impeachment.

**Rule 26(a)(1)(A)(ii) Disclosure:**

Plaintiff hereby discloses the following categories of documents:

| Category | Location |
|---|---|
| 1. Medical records from Plaintiff's 8/10/2012 surgery, when he was implanted with the Profemur hip device. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 2. Medical records from Plaintiff's 10/11/2015 surgery, when the Profemur device was explanted during revision surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 3. Any and all records, including, but not limited to, medical records and billing records, maintained by Dr. Jason Snibbe related to Plaintiff. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 4. Any and all records, including but not limited to medical records and billing records, maintained by Cedars Sinai Medical Center related to Plaintiff's left hip. | Located at Cedars Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak), through Plaintiff's health insurance providers, or RecordTrak. |
| 5. Any and all records, including, but not limited to, medical records and billing records, maintained by West Hollywood Healthcare & Wellness Centre related to Plaintiff's left hip. | Located at the offices of West Hollywood Healthcare & Wellness Centre (West Hollywood, CA), Plaintiff's counsel of record (Beverly Hills, CA) or RecordTrak. |

| 6. Billing records from medical treatment following Plaintiff's 8/10/2012 surgery, when he was implanted with the Profemur hip device. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| --- | --- |
| 7. Billing records from Plaintiff's 10/11/2015 surgery, when the Profemur hip device was explanted during revision surgery. | Located at the offices of Dr. Jason Snibbe (Beverly Hills, CA), Cedars-Sinai Medical Center (Los Angeles, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 8. Any and all records, including but not limited to medical records and billing records, maintained by ProHealth Advanced Imaging related to Plaintiff's left hip. | Located at the offices of ProHealth Advanced Imaging (Beverly Hills, CA), through Plaintiff's health insurance providers or RecordTrak. |
| 9. Any and all records, including but not limited to medical records and billing records, maintained by Long Beach Memorial Hospital, where Plaintiff was treated following an injury related to the fracture of the Profemur device on 10/09/2015. | Located at the offices of Long Beach Memorial Hospital (Long Beach, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 10. Explanted Profemur hip device components, removed from Plaintiff during his 10/11/2015 revision surgery. | Any request for the device is to be done through Plaintiff's counsel. |
| 12. Any and all records, including but not limited to medical records and billing records, maintained by Community Hospital of Long Beach, where Plaintiff was treated following an injury related to the fracture of the Profemur device on 10/9/2015. | Located at the offices of Community Hospital of Long Beach (Long Beach, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 13. Any and all records, including, but not limited to medical records and billing records, maintained by UCLA Medical Center related to Plaintiff's left | Located at UCLA Medical Center (Long Beach, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or |

| | |
|---|---|
| hip | RecordTrak. |
| 14. Any and all records, including, but not limited to medical records and billing records, maintained by Blue Cross/Blue Shield related to Plaintiff.. | Located at Blue Cross/Blue Shield, Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 15. Any and all records, including, but not limited to medical records and billing records, maintained by Dr. Soroya Bacchus related to Plaintiff. | Located at the office of Dr. Soroya Bacchus (Santa Monica, CA), Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 16. Any and all records, including, but not limited to medical records and billing records, maintained by Blue Shield of California related to Plaintiff. | Located at Blue Shield of California, Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 17. Any and all records, including, but not limited to medical records and billing records, maintained by Medicus related to Plaintiff. | Located at Medicus, Plaintiff's counsel of record (Beverly Hills, CA), or RecordTrak. |
| 18. Any and all records, including, but not limited to medical records and billing records, maintained by Kaiser Permanente related to Plaintiff. | Located at Kaiser Permanente, Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 19. Any and all records, including, but not limited to medical records and billing records, maintained by Mink Radiology related to Plaintiff. | Located at Mink Radiology, Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 20. Any and all records, including, but not limited to medical records and billing records, maintained by Rite Aid related to Plaintiff's left hip treatment. | Located at Rite Aid, Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 21. Any and all records, including, but not limited to medical records and billing records, maintained by CMS related to Plaintiff. | Located at CMS, Plaintiff's counsel of record (Beverly Hills, CA), through Plaintiff's health insurance providers, or RecordTrak. |
| 22. Any and all records, including, but not limited to medical records and billing records, maintained by Los Angeles Fire Department related to | Located at the offices of the Los Angeles Fire Department or RecordTrak. |

| | |
|---|---|
| Plaintiff's left hip. | |
| 23. All documents produced by Defendant Wright Medical Technology, Inc. in discovery for this action. | These documents are available through Defendants' counsel. |
| 24. All documents produced by Defendant MicroPort Orthopedics, Inc. in discovery for this action. | These documents are available through Defendants' counsel. |
| 25. All documents, files or records produced in discovery for this action by any Third Party Witness. | These documents, files or records are in the parties' care, custody or control. |
| 26. All documents, files or records produced in discovery for this action by any Third Party Entity. | These documents, files or records are in the parties' care, custody or control. |
| 27. All publicly available and historic Profemur marketing materials. | Defendants' websites and materials provided to surgeons. |
| 28. All Wright Medical Technology, Inc. SEC filings, including but not limited to, 10Ks. | These documents are in Defendant Wright Medical Technology, Inc. or Wright Medical Group, N.V.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |
| 29. All Wright Medical Group, Inc. SEC filings, including but not limited to, 10Ks. | These documents are in Defendant Wright Medical Group, Inc. or Wright Medical Group, N.V.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |
| 30. All Wright Medical Group, N.V. SEC filings, including, but not limited to, 10Ks. | These documents are in Wright Medical Group, N.V.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |
| 31. All MicroPort Orthopedics, Inc. SEC filings, including, but not limited to, 10Ks. | These documents are in Defendant MicroPort Orthopedics, Inc.'s care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission. |

| | |
|---|---|
| 32. All MicroPort Scientific Corporation SEC filings, including, but not limited to, 10Ks. | These documents are in Defendant MicroPort Orthopedics, Inc. or MicroPort Scientific Corporation's care, custody or control. These documents are also available through the U.S. Securities and Exchange Commission |
| 33. All of Plaintiff's medical records obtained by Defendants through RecordTrak. | These files and/or documents are available on the RecordTrak website: www.recordtrak.com. RecordTrak's address is 651 Allendale Rd. PO Box 61591, King of Prussia, PA 19406. These files and/or documents are also in the care, custody or control of Defendants. |
| 34. All of Plaintiff's imaging studies, including, but not limited to, x-rays, MRI and body scans obtained by Defendants through RecordTrak. | These files, images and documents are available on the RecordTrak website: www.recordtrak.com. RecordTrak's address is 651 Allendale Rd. PO Box 61591, King of Prussia, PA 19406. These files, images and documents are also in the care, custody or control of Defendants. |
| 35. All of Plaintiff's medical billing records obtained by Defendants through RecordTrak. | These files and/or documents are available on the RecordTrak website: www.recordtrak.com. RecordTrak's address is 651 Allendale Rd. PO Box 61591, King of Prussia, PA 19406. These files and/or documents are also in the care, custody or control of Defendants. |
| 36. Transcripts of all depositions taken in this action. | These transcripts are available through the parties' counsel. |
| 37. All documents, tangible items, videos, and other media identified as exhibits to any deposition taken in this action. | These exhibits are available through the parties' counsel. |
| 38. All expert reports prepared for this action. | These reports will be available to the parties pursuant to the Court's |

| | Scheduling Order. |
|---|---|
| 39. All documents, tangible items, videos, and other media relied upon by designated experts in this action. | These materials are available through the parties' counsel. |
| 40. The curriculum vitae (CV) for each expert designated in this action. | These materials are available through the parties' counsel. |
| 41. Documents relating to research and development of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 42. Documents relating to design and manufacture of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 43. Documents relating to testing of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 44. Documents relating to communication with and submissions to the FDA regarding the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 45. Documents relating to Post-Market Surveillance regarding the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 46. Documents relating to tracking and investigation of complaints regarding the Profemur device | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 47. Documents relating to sales of the Profemur device | These documents are in the care, custody or control of Defendants. |
| 48. Documents relating to marketing literature regarding the Profemur device | These documents are in the care, custody or control of Defendants, Defendants' distributors and recipients of any such related documents. These documents may also be publicly available. |

| 49. Documents relating to notice of defects and clinical failures of the cobalt chrome modular necks. | These documents are in the care, custody or control of Defendants. |
|---|---|
| 50. Documents relating to warnings given to Defendants or received by Defendants regarding defects and clinical failures of the cobalt chrome modular necks. | These documents are in the care, custody or control of Defendants. |
| 51. Documents relating to warnings related to the Profemur device. | These documents are in the care, custody or control of Defendants. |
| 52. Documents relating to the recall of the Profemur device. | These documents are in the care, custody or control of Defendants. These documents are also available through the FDA. |
| 53. Documents relating to Profemur neck breakage failures without breakages. | These documents are in the care, custody or control of Defendants. |
| 54. The Asset Purchase Agreement between the Defendants. | This document is in the care, custody or control of Defendants. |
| 55. All documents produced by Plaintiff in discovery for this action. | These documents are available through Plaintiff's counsel. |

In addition to the foregoing, all documents identified or produced by any party in its Initial Disclosures and discovery would likely contain information that supports Plaintiff's claims herein. Plaintiff reserves the right to supplement or correct these Disclosures upon continuing investigation and discovery in accordance with Rule 26(e).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Rule 26(a)(1)(A)(iii):**

Provide the computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

**Rule 26(a)(1)(A)(iii) Disclosure:**

Plaintiff seeks the following:

- General damages in excess of $750,000 for personal injuries to Plaintiff to be determined through discovery and presented at trial.
- All past, current, and future medical and incidental expenses, in excess of $445,000, based upon Plaintiff's medical bills to date.
- All loss of earnings, present and future, and loss of earning capacity, based upon personal and business records in Plaintiff's possession to date and provided or to be provided through the course of discovery.
- Punitive and/or exemplary damages in an amount sufficient to punish Defendants and deter similar conduct in the future, in an amount to be determined through discovery and presented at trial.

A more precise computation of Plaintiff's damages is premature at this time because it will require the completion of discovery in this action and include expert analysis. Further responsive information, when available, will be produced in conformance with Rule 26(e).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**Rule 26(a)(1)(A)(iv):**

Provide for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**Rule 26(a)(1)(A)(iv) Disclosure:**

Copies of insurance policies and the indemnity agreement were requested by Plaintiff and have been produced by Defendants.

DATED: May 14, 2017                    KIESEL LAW LLP


By:  _____
                                Paul R. Kiesel
                                Helen Zukin
                                Matthew A. Young
                                Cherisse H. Cleofe

                                Attorneys for Plaintiff Richard B. Sarafian

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 8648 Wilshire Boulevard, Beverly Hills, CA 90211-2910.

On May 14, 2017, I served the original of the following document(s) described as **PLAINTIFF RICHARD SARAFIAN'S SUPPLEMENTAL INITIAL DISCLOSURES** on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY ELECTRONIC MAIL:** I hereby certify that I served the above-described document on the interested parties in this action by attaching an electronic copy of the document to an email addressed to the parties listed on the Service List at their most recent e-mail address of record in this action. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY PERSONAL SERVICE:** I personally caused the document(s) to be served via messenger service on May 15, 2017, to Duane Morris, LLP at 865 S. Figueroa Street, Suite 3100, Los Angeles CA 90017-5450 by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 13, 2017, at Beverly Hills, California.

Cherisse Cleofe

**SERVICE LIST**

1

2

3  J. Robert Renner, Esq.                    Attorneys for Defendants
   Katherine Nichols, Esq.                   WRIGHT MEDICAL TECHNOLOGY,
4  **DUANE MORRIS LLP**                       INC. AND MICROPORT
                                             ORTHOPEDICS, INC.
5  865 South Figueroa Street, Suite 3100
   Los Angeles, CA 90017-5450
6  Telephone: 213-689-7400
7  Facsimile:  213-689-7401
   E-mail: RRenner@duanemorris.com
8          KNichols@duanemorris.com

9  Dana J. Ash, Esq.                         Attorneys for Defendants
10 J. Scott Kramer, Esq.                     WRIGHT MEDICAL TECHNOLOGY,
   Sean K. Burke, Esq.                       INC. AND MICROPORT
11 Ryan J. O'Neil, Esq.                      ORTHOPEDICS, INC.
12 **DUANE MORRIS LLP**
13 30 South 17th Street
   Philadelphia, PA 19103-4196
14 Telephone: 215-979-1000
   Facsimile:  215-979-1020
15 E-mail: DJAsh@duanemorris.com
16        JSKramer@duanemorris.com
          SBurke@duanemorris.com
17        RJONeil@duanemorris.com

18

19                    Case No. CV15-09397 CAS (KSx)

20

21

22

23

24

25

26

27

28

00458535-1                              2                    PROOF OF SERVICE

# Exhibit B

1   J. Robert Renner (SBN 148587)
     Katherine L. Nichols (SBN 228893)
2   **DUANE MORRIS LLP**
     865 S. Figueroa Street, Suite 3100
3   Los Angeles, CA  90017-5450
     Telephone:  213.689.7400
4   Facsimile:   213.689.7401
     E-mail:  RRenner@duanemorris.com
5           KNichols@duanemorris.com

6   Dana J. Ash (admitted *pro hac vice*)
     J. Scott Kramer (admitted *pro hac vice*)
7   Sean K. Burke (admitted *pro hac vice*)
     Ryan J. O'Neil (admitted *pro hac vice*)
8   **DUANE MORRIS LLP**
     30 South 17th Street
9   Philadelphia, PA  19103-4196
     Telephone: 215.979.1000
10  Facsimile: 215.979.1020
     E-mail:  DJAsh@duanemorris.com
11         JSKramer@duanemorris.com
          SBurke@duanemorris.com
12        RJONeil@duanemorris.com

13  Attorneys for Defendants
     Wright Medical Technology, Inc. and
14  MicroPort Orthopedics, Inc.

15          IN THE UNITED STATES DISTRICT COURT

16         FOR THE CENTRAL DISTRICT OF CALIFORNIA

17

18  KRISTIN BIORN,           Case No.:  CV15-07102 CAS (KSx)

19         Plaintiff,     Honorable Christina A. Snyder
                       Magistrate Judge Karen L. Stevenson
20      v.
                       **DEFENDANTS WRIGHT**
21  WRIGHT MEDICAL TECHNOLOGY,  **MEDICAL TECHNOLOGY,**
     INC., a Delaware corporation; and   **INC.'S AND MICROPORT**
22  MICROPORT ORTHOPEDICS, INC., a **ORTHOPEDICS, INC.'S**
     Delaware corporation,         **OBJECTIONS TO PLAINTIFFS'**
                       **SUPPLEMENTAL INITIAL**
23         Defendants.    **DISCLOSURES**

24

25

26

27

28

1

2

RICHARD B. SARAFIAN,

3

4                    Plaintiff,

5     v.

6

7     WRIGHT MEDICAL TECHNOLOGY,
      INC., a Delaware corporation; and

8     MICROPORT ORTHOPEDICS, INC., a
      Delaware corporation , and DOES 1-10,

9     inclusive,

10                    Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

2          PLEASE TAKE NOTICE THAT Defendants Wright Medical Technology,

3    Inc. ("Wright Medical") and MicroPort Orthopedics, Inc. ("MicroPort" and, together

4    with Wright Medical, "Defendants") hereby OBJECT to Plaintiffs Kristin Biorn's

5    and Richard Sarafian's Supplemental Initial Disclosures.  Specifically, Defendants

6    object to Plaintiffs' disclosure of C. Lowry Barnes, M.D. as a person likely to have

7    discoverable information that may support Plaintiffs' claims.

8          As an initial matter, Dr. Barnes is a surgeon in Little Rock, Arkansas who has

9    used Wright Medical's products, including the PROFEMUR® cobalt-chrome

10   modular neck component at issue in this case.  Presumably, Plaintiffs will seek to

11   admit testimony from Dr. Barnes concerning his results from implanting the

12   PROFEMUR® cobalt-chrome modular neck.  Defendants object to any such

13   expected testimony on grounds that Dr. Barnes is not a treating physician of either

14   Plaintiff, and otherwise had no involvement with the issues relevant to this action.

15   Any testimony from Dr. Barnes concerning his own experiences with the

16   PROFEMUR® cobalt-chrome modular neck is irrelevant, and will only serve to

17   prejudice Defendants, because those experiences are comprised of different patients,

18   who received different products, utilizing a different surgical technique, and had

19   various unique medical histories and conditions completely separate and apart from

20   those of Plaintiffs.

21         Moreover, Defendants object on grounds that Dr. Barnes was not disclosed by

22   Plaintiffs until late the night of May 14, 2017—just hours before the close of fact

23   discovery on May 15, 2017—thereby leaving Defendants without an opportunity to

24   depose or otherwise take discovery on Dr. Barnes.  Prior to this time, Defendants

25   had no knowledge of Dr. Barnes' existence as a potential witness in this case

26   because Plaintiffs had never previously disclosed Dr. Barnes in any capacity, despite

27   the fact discovery has been ongoing for over a year.  Indeed, Dr. Barnes was not

28

1

disclosed in Plaintiffs' Initial Disclosures, or in response to any of Defendants' properly and timely served discovery requests specifically seeking, among other things, the identity of any and all persons with knowledge or information pertaining to Plaintiffs' claims, or any and all potential witnesses at trial. Defendants are now prejudiced by not being afforded the opportunity to discover, and subsequently counter, Dr. Barnes' potential testimony as it relates to Plaintiffs—whom he has never treated and to whom he otherwise has no connection—and the devices which Plaintiffs received and are at issue in this case, thereby providing Plaintiffs with an unfair advantage in this case.

Based upon the foregoing, Defendants object to Plaintiffs' late disclosure of Dr. Barnes as a person likely to have discoverable information that may support Plaintiffs' claims, as well as the inclusion of Dr. Barnes as a witness in this case in any capacity. Defendants reserve the right to amend and/or supplement these objections in accordance with the rules of the Court.

Dated: June 12, 2017

**DUANE MORRIS LLP**

_____
J. Robert Renner
Katherine L. Nichols
Dana J. Ash (admitted *pro hac vice*)
J. Scott Kramer (admitted *pro hac vice*)
Sean K. Burke (admitted *pro hac vice*)
Ryan J. O'Neil (admitted *pro hac vice*)

*Attorneys for Defendants*
Wright Medical Technology, Inc. and
MicroPort Orthopedics, Inc.

2

**PROOF OF SERVICE**

I am a resident of the state of California, I am over the age of 18 years, and I am not a party to this lawsuit.  My business address is Duane Morris LLP, 865 S. Figueroa Street, Suite 3100, Los Angeles, CA 90017.  On the date set forth below, I served the following document(s):

**DEFENDANTS WRIGHT MEDICAL TECHNOLOGY, INC. AND MICROPORT ORTHOPEDICS, INC.'S OBJECTIONS TO PLAINTIFFS' SUPPLEMENTAL INITIAL DISCLOSURES**

on the interested party(ies) in this action in the following manner:

**[ X ]  BY E-MAIL:**  On the date set forth below, at Los Angeles, California, I caused the foregoing document(s) to be served by e-mail transmission to the e-mail address(es) set forth below, as last given by that person on any document which he or she has filed in the cause and served on the party making the service.  The document(s) was(were) transmitted by e-mail from a computer in the offices of Duane Morris.  The e-mail transmission(s) was(were) reported as delivered to the party(ies) at the indicated e-mail address(es), and no undeliverable message from the recipient's server was received by the sender of the e-mail.

**[ X ]  BY MAIL:**  On the date set forth below, at Los Angeles, California, I placed the document(s) in a sealed envelope(s), addressed as set forth below, for collection and mailing with the United States Postal Service.  I am readily familiar with the firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  According to that practice, the correspondence will be deposited with the United States Postal Service that same day in the ordinary course of business, with first-class prepaid postage thereon.  Service made pursuant to CCP § 1013a(3), upon motion of a party served, shall be presumed invalid if the postal cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing contained in the affidavit.

Helen Zukin, Esq.                              *Attorneys for Plaintiff*
D. Bryan Garcia, Esq.
Cherisse H. Cleofe, Esq.
KIESEL LAW LLP
8648 Wilshire Boulevard
Beverly Hills, CA 90211-2910
Email address: Zukin@kiesel.law
Email address: Garcia@kiesel.law
Email address: Cleofe@kiesel.law

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on June 12, 2017, at Los Angeles, California.

Diana Garcia

3

Exhibit C

1

1

2                        UNITED STATES DISTRICT COURT

3                        CENTRAL DISTRICT OF CALIFORNIA

4

5

6    KRISTIN BIORN,                ) Case No. CV15-07102CAS

7

8            Plaintiff,            ) (Consolidated with

9

10   v.                           ) Case No. CV15-09397CAS

11

12   WRIGHT MEDICAL TECHNOLOGY,    ) (KSx))

13   INC., a Delaware Corporation; )

14   and MICROPORT ORTHOPEDICS,    )

15   INC., a Delaware Corporation. )

16

17

18           Defendants.           )

19

20

21

22   RICHARD B. SARAFIAN,          ) Case No. CV15-07102CAS

23

24           Plaintiff,            ) (Consolidated with

25

Barnes, MD, C. Lowry - 07/24/2017

2

1    v.                              ) Case No. CV15-09397CAS

2

3    WRIGHT MEDICAL TECHNOLOGY,      ) (KSx))

4    INC., a Delaware Corporation; )

5    and MICROPORT ORTHOPEDICS,      )

6    INC., a Delaware Corporation. )

7

8

9            Defendants.            )

10

11

12

13

14

15            VIDEOTAPED ORAL DEPOSITION

16

17                    OF

18

19            C. LOWRY BARNES, MD

20

21        Taken July 24, 2017, at 9:00 a.m.

22

23

24

25

```
                                                                        3

1

2                                                                2

3

4

5        1                              APPEARANCES

6        2

7          ON BEHALF OF THE PLAINTIFFS:

8        4

9        5  MR. BRIAN GARCIA, ESQUIRE
            KIESEL LAW, LLP
10       6  8648 WILSHIRE BOULEVARD
            BEVERLY HILLS, CALIFORNIA 90211
11       7  (310)854-4444
            garcia@kiesel.law
12       8

13       9
     ON BEHALF OF THE DEFENDANTS:
14
     MR. J. SCOTT KRAMER, ESQUIRE    DUANE MORRIS, LLP
15   30 SOUTH SEVENTEENTH STREET     PHILADELPHIA, PENNSYLVANIA 19103-4196
     (215)979-1000    JSKramer@duanemorris.com
16

17   ALSO PRESENT:  TOM HALLUM, VIDEOGRAPHER

18

19

20

21

22

23

24

25
```

Barnes, MD, C. Lowry - 07/24/2017

14

1    Q    Okay.  And did you not search for these at the

2    direction of counsel?

3    A    As I answered before, it was my understanding I

4    didn't bring anything because you all had everything,

5    so I did not bring it.

6    Q    Okay.  And you got that understanding from

7    counsel?

8    A    The fact that you all were going back and forth

9    legally with your request and an objection to that.

10    Q    But -- okay.

11        What communications exist between you and, let's

12    say, Ms. Biorn?  Any?

13    A    None.

14    Q    You haven't met her?

15    A    Never.

16    Q    Talked to her on the phone?

17    A    Never.

18    Q    Same questions with regard to Mr. Sarafian, ever

19    met him?

20    A    Same answer.

21    Q    You are not going to offer any opinion about

22    their medical condition?

23    A    I will not.

24    Q    Pardon?

25    A    I will not.  My -- the only thing I will make an

15

1    opinion regarding is what is in my report.

2    Q    What, in response to request No. 3, which related

3    to communications between you and counsel for the

4    plaintiffs, what kinds of written communications, if

5    any, were exchanged between you and counsel?

6    A    Very few.  Mainly setting the date for the

7    deposition, arranging things like that.  Otherwise,

8    telephone conversations.

9    Q    When were you first retained as an expert witness

10   for the plaintiffs?

11   A    I guess a couple months ago.  I don't have a

12   definite date.

13   Q    Did you or your office provide a contract to

14   counsel to engage your expert witness services?

15   A    Not a contract.  A listing of fees for me to be

16   involved, but no contract.

17   Q    Like a fee schedule?

18   A    Correct.

19   Q    Was that a standard one or one that you developed

20   just for this relationship?

21   A    I developed for this relationship.  I don't have

22   a standard fee schedule because I don't do this.

23   Q    Do you have the fee schedule that you developed

24   for this matter?

25   A    Do I have it with me?

45

1  that it was a surgical technique thing.  And because I

2  wasn't having problems, surgeons would come in my

3  operating room to see how I did titanium necks and the

4  process we just talked about.

5       Once I started describing problems with the

6  chrome cobalt neck, unfortunately, they said, well, we

7  think it may be a surgical technique.  Well, it's hard

8  to believe it was a surgical technique, and just -- so

9  I said, I didn't change anything and people have been

10  parading through my operating room for a few years to

11  see how I did the operation.

12  Q    The -- have you looked at the records of

13  Ms. Biorn?

14  A    I can't recall.  I read her deposition, but I

15  don't remember looking at the records.  I don't think

16  I looked at any records.

17  Q    Okay.  Do you remember looking at the records of

18  Mr. Sarafian?

19  A    I don't.

20  Q    Did you look at his deposition?

21  A    I did.

22  Q    Do you have an understanding that Ms. Biorn, at

23  the time of -- well, let me ask it this way.

24       You understand that both of these patients

25  experienced fractures of their cobalt chrome neck?

63

1    Q    Do you ever take vacation?

2    A    I do.

3    Q    About how many -- to do 700 hips a year --

4    A    That's hips and knees.

5    Q    Hips and knees.  You do eight to ten a day?

6    A    Correct.

7    Q    Or more?

8    A    I'm not sure I've ever done more than ten, maybe

9    11 on some days, all primaries.

10    Q    All primaries?

11    A    These are all primaries.  If I'm doing revisions,

12    in a day, I don't do 11.

13    Q    Revisions would take longer?

14    A    Correct.

15    Q    Customarily, you would do -- would it be fair to

16    say, you do a few primaries -- or you do primaries and

17    a couple of revisions every day?

18    A    Exactly.  My volume is less now.

19    Q    Which joint gets revised more frequently, the

20    knee or the hip, in your hands, let's say?

21    A    I probably do -- I think I probably do more

22    revision knees than hips now.

23    Q    The problems that you were discussing with Wright

24    Medical, problems you were seeing in your patients,

25    you said had to do with -- did not have to do with

Barnes, MD, C. Lowry - 07/24/2017

64

1    fracture.    Correct?

2    A    That is correct.

3    Q    And they had to do with either the presence or

4    your concern about tissue damage and/or pseudotumor.

5    Correct?

6    A    Correct.    Corrosion and pseudotumor.

7    Q    Well, let me talk about tissue damage or

8    pseudotumor impact to the patient before we get to --

9    A    Sure.

10    Q    -- the device.    So, it was the complication that

11    you were concerned, that some of your patients who had

12    cobalt chrome necks either had or might be

13    experiencing tissue damage and/or pseudotumor?

14    A    Tissue reaction, yeah, leading to tissue damage.

15    Q    Do you consider a pseudotumor a tissue reaction?

16    A    I do.

17    Q    What is a pseudotumor?

18    A    It's an area of necrotic material that is a

19    body's response to particular matter.

20    Q    And it often presents as a fluid collection?

21    A    It often presents as pain.    And then you can

22    have -- pseudotumors can be fluid, they can be solid,

23    or they can be a combination of the two.

24    Q    And you would diagnose them based on --

25    preoperatively diagnose them based on ultrasound?

66

1   would do the lab work initially and if the ESR and CRP

2   came back elevated, we would order the aspiration.

3        It's done under for -- the needle goes into the

4   hip joint so they don't have to go to a fluid

5   collection, but to the hip joint itself because that's

6   what you were looking for, an infected joint.  The

7   fluid was not to diagnose a pseudotumor, but to rule

8   out an infection.

9   Q    I see.  So the aspiration, when that occurred,

10  did that occur in every patient?

11  A    Most of them, I assume, but I can't remember the

12  exact numbers.

13  Q    Well, when it was ordered, it was directed toward

14  the joint and not toward any fluid collection?

15  A    Assuming the fluid collection would be in the

16  joint if it were infected.

17  Q    Do you consider the tissue around the neck of a

18  modular hip system to be in the joint?

19  A    Yes.

20  Q    Now, are you aware from your review of any of the

21  materials you looked at that Ms. Biorn didn't have any

22  metallosis or necrotic tissue at the time of her

23  revision?

24  A    Yeah.

25  Q    Are you aware from the materials you reviewed of

67

1   any kind that Mr. Sarafian didn't have any metallosis

2   or necrotic tissue at the time of his revision?

3   A    Correct.

4   Q    Are you aware that the plaintiffs' expert, who

5   looked at the explants of Ms. Biorn and Mr. Sarafian

6   under magnification, have not determined that there

7   was any corrosion of these devices?

8   A    Correct.

9   Q    And the problems that you were talking with

10  Wright about involved patients that you believed had

11  tissue damage or adverse tissue reactions or a

12  Profemur associated with releasing material from their

13  cobalt chrome stem?

14  A    I didn't believe it.  I proved it.

15  Q    But the -- your discussions were about the

16  release of wear material and/or ions from the cobalt

17  chrome stem?

18  A    Correct.  Cobalt neck.

19  Q    Cobalt chrome neck?

20  A    And titanium stem.

21  Q    Now, your comment that you proved it, what is

22  your basis for that statement?

23  A    Probably the two true experts in this area are

24  Josh Jacobs and Bob Irvin.  And, at Rush, they

25  reviewed the material from my operating room and

71

1    these plaintiffs and the absence of findings of

2    corrosion and the absence of finding pseudotumors in

3    these three patients.   Right?

4    A     Correct.   But I haven't seen the tissue that was

5    taken to be studied and I haven't looked at the -- I

6    don't remember looking at the report of the expert

7    that was hired to look at those, and whether or not

8    they were scanning electron microscopy, and how much

9    experience that expert has in looking for this

10   problem.

11   Q     But based on what you do know, you don't think

12   that any of those, tissue damage, pseudotumor,

13   corrosion, were existent in these two patients?

14                MR. GARCIA:   Objection.   I believe he

15          said "significant corrosion," but, okay.

16   A     Correct.

17   BY MR. KRAMER:

18   Q     And your discussions with Wright, once again,

19   were not -- back in 2013, were not focused on the risk

20   of fracture because you hadn't had any fractures?

21   A     That's correct.

22   Q     Did you have any suggestions to Wright Medical at

23   the time you first started using the cobalt chrome

24   necks as to additional testing that should have been

25   done?

1    fracture."

2    A    Correct.

3    Q    Looking at the issue prospectively, in live time,

4    was it your opinion when you first started using the

5    cobalt chrome necks that Wright Medical had failed in

6    any way in their testing of the component?

7    A    No.  That's the key aspect of that statement "was

8    in retrospect."

9    Q    So it is only with the passage of time and the

10   addition of additional scientific knowledge that you

11   think there was some inadequacy in testing?

12   A    Correct.

13   Q    And, in fact, you were in a position where you

14   could have influenced the testing?

15   A    Absolutely.  In a limited degree.  Realize, I'm a

16   consultant.  If I had influence, true influence, if I

17   had the same influence in 2013 when I called a problem

18   to this issue, we wouldn't be dealing with it.  So, I

19   mean, influence is relative.  Right?

20   Q    Of course.  Influence, not control.

21   A    Yeah.

22   Q    Now, even retrospectively, what test would you

23   suggest that Wright Medical should have employed to

24   ensure freedom from corrosion, corrosion fretting, and

25   fracture?

98

1    A    I don't know what they are called, but there are

2    now some better corrosion tests for corrosion in

3    mechanical situations within pH changes and eddy

4    currents, et cetera, between the components that we

5    didn't have access to at the time.

6    Q    Okay.  So those tests were not available at the

7    time?

8    A    If they were, we didn't know about them.

9    Q    And speaking now, you don't know the names of

10   those tests?

11   A    I don't.  It's not my area of expertise.

12   Q    Yet you are offering opinions critical of Wright

13   Medical in an area that is not your area of expertise?

14   A    In retro -- I very carefully clarify that in

15   retrospect.  Anybody can see now there's a problem

16   with the prosthesis.  It doesn't take an expert to see

17   that there are corrosion issues and fractures.

18   Q    But your criticism is set forth in failed to

19   adequately test?

20   A    I said, "in retrospect."  We know that now.

21   Q    And even now, you can't name tests that would

22   have provided additional information?

23   A    As I just said, it would be repetitive, but I

24   will be glad to say, I couldn't tell you the name of

25   that test now.  But if I needed to do that test, I

1    could figure out how to get it done.

2    Q    Going in the next paragraph of page 2 of your

3    report, in the sentence beginning, "In 2012," a

4    concern about the neck stem junction?

5    A    Correct.

6    Q    Do you see that?

7    A    Yes.

8    Q    There is some reference to two dissimilar metals.

9    Do you see that?

10   A    Yes.

11   Q    Is your criticism of Wright Medical related to --

12   somehow to the neck being cobalt chrome and the

13   Profemur being titanium?

14   A    Is it now, the fact that nothing was done about

15   it?

16   Q    Yeah.

17   A    Yeah.  I think that's -- I mean, now, we know

18   that is part of the issue with the corrosion issue, is

19   there are two dissimilar metals.  And we know that

20   because we have seen it with the Stryker Rejuvenate

21   and Stryker ABG and now with this implant.  We don't

22   know exact causes.

23        You could have other issues, but certainly, the

24   flexural rigidity issue is a potential problem, the

25   reason why that occurs.  And that's -- so, there are a

100

1    lot of reasons to cause it.  But, yeah, we think now

2    that the dissimilar metals are an issue in galvanic

3    corrosion.

4         We know that initially, not a major issue because

5    the passivation layer, with that -- when something

6    happens to the passivation layer in this instance that

7    corrosion happens.

8    Q    Did you experience corrosion when the neck and

9    the stem were comprised of similar or identical

10   titanium?

11   A    It did occur to some degree, but not at the same

12   rate.  And, so, the reaction is different because the

13   chrome cobalt and the body's toleration of chrome

14   cobalt and titanium.

15   Q    Are you talking about -- and the body's

16   tolerance, you are talking about tissue reactions?

17   A    Correct.

18   Q    And the tissue reactions were not present in

19   either Ms, Biorn or Mr. Sarafian, to your knowledge?

20   A    Correct.

21   Q    Do you point to any authority articles that

22   suggest that galvanic reaction is some factor at the

23   neck stem juncture in cobalt chrome necks?

24   A    An article, no.  I can't name a specific article,

25   but I think if you were to look at what has been

101

1    published by Jacobs or Cooper or some of the others, I

2    think you would find that in reference to.  I don't

3    know that -- I can't call you a reference name, a

4    reference article.

5    Q    Well, you were certainly aware when you first

6    started using cobalt chrome necks that they were in

7    association with a titanium stem and there were two

8    similar metals at that juncture.  Right?

9    A    Two dissimilar metals.

10   Q    Two dissimilar metals?

11   A    Yeah.  Just like -- and I felt okay with it at

12   the time because that's what we had been doing with

13   the other in the neck for years.

14   Q    Sure.  At the neck and the head.  Right?

15   A    Yeah, putting a chrome cobalt head on a titanium

16   neck.

17   Q    And lots of articles had dismissed any

18   involvement of galvanic exchange or corrosion in these

19   uses of cobalt chrome and titanium in medical devices,

20   hadn't they?

21               MR. GARCIA:  Objection.  Calls for

22          facts not in evidence.

23   A    I'm not sure I can refer to any articles.  I'm

24   not sure any articles actually said that, but we

25   didn't see problems with it early on.  We have seen

132

1    Q    I was speaking in terms of your data as of

2    mid-2013.

3    A    Okay.

4    Q    You have a sentence here on page 2 of your

5    report, where at the end of that first full paragraph

6    on page two, "I do not recall ever being informed

7    about the number of chrome cobalt neck fractures that

8    have occurred."

9    A    True.

10   Q    Did you ever ask about them?

11   A    No, I didn't talk to them.  I don't have anything

12   to do with the hip team at Wright Medical, so --

13   Q    Isn't that -- is that kind of a random statement

14   there?  What does that have to do with your

15   interaction with Wright Medical?

16   A    It is nothing about Wright Medical, more about

17   this case.  Actually, if anything, I'd hope that was

18   helping you to say, I don't have any idea about

19   modular necks because my issue -- fractures -- my

20   issue was not with fractures.

21        My issue was with chrome cobalt, so I was trying

22   to be as open and honest as I could because my issue

23   at the time was with the corrosion issues, not

24   fractures.

25   Q    Okay.  So your comment there at the bottom of

Barnes, MD, C. Lowry - 07/24/2017

133

1    that paragraph is that I don't recall any discussion

2    about a number or any discussion at all because that

3    wasn't my issue?

4    A    Not my issue.

5    Q    Understood.  The next paragraph, where you state

6    that if Wright Medical had acted differently, patients

7    who subsequently have hip surgery may have received

8    different component parts.  Do you see that?

9    A    Yes.

10   Q    Is that a medical opinion that you are offering

11   there?  An orthopaedic opinion?

12   A    It's a temporal opinion based upon the fact that

13   if a company quit selling blue shirts a certain day,

14   nobody could have a problem with a blue shirt after

15   that.

16   Q    Okay.  So it's not really an opinion?

17   A    It's common sense, I believe.

18   Q    Okay.  It's not really an opinion as you state in

19   the -- that's based on your expertise in orthopaedic

20   surgery or your experience with the products?

21   A    No, experience as a human.

22   Q    And the next paragraph, you say on your -- so

23   based on your clinical experience and knowledge of

24   cobalt chrome modular necks, it's my opinion and has

25   been since early 2013 that the modular necks are