Helen Zukin, State Bar No. 117933
  *zukin@kiesel.law*
D. Bryan Garcia, State Bar No. 216904
  *garcia@kiesel.law*
Melanie Meneses Palmer, State Bar No. 286752
  *palmer@kiesel.law*
Cherisse H. Cleofe, State Bar No. 290152
  *cleofe@kiesel.law*
Ashley M. Conlogue, State Bar No. 292083
  *conlogue@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

George E. McLaughlin
  *gem@w-mlawgroup.com*
**WARSHAUER-MCLAUGHLIN LAW GROUP, P.C.**
1890 Gaylord Street
Denver, CO 80206
Tel:   720-420-9800
Fax:   303-322-3423

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN BIORN,<br><br>              Plaintiff,<br><br>      v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and MICROPORT ORTHOPEDICS, INC., a Delaware corporation.<br><br>              Defendants. | Case No. CV15-07102 CAS (KSx) [Consolidated with Case No. CV15-09397 CAS (KSx)]<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:     Hon. Christina A. Snyder<br>Crtrm.:    8D, 8th Floor |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| RICHARD B. SARAFIAN, | Date: | November 13, 2017 |
| | Time: | 10:00 a.m. |
| Plaintiff, | Crtrm: | 8D |
| v. | Trial: | December 5, 2017 |
| WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; MICROPORT ORTHOPEDICS, INC., a Delaware corporation; and DOES 1-10, | | |
| Defendants. | | |

PLAINTIFFS' OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S
MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................1

II.  STATEMENT OF FACTS .....................................................................2

  A.  By 2004 Wright Was Aware Of The Risks Of The PROFEMUR Modular Neck, But Concealed Those Risks From The Public ..............2

  B.  Wright Launched The CoCr Modular Neck But Quickly Learned It Suffered From The Same Defects As Were Seen In Titanium Modular Necks ....................................................................................3

  C.  Despite Continuing Reports Of Both CoCr and Titanium Modular Neck Failures, MicroPort Failed To Recall Or Provide Post-Sale Warnings To Plaintiffs ........................................................4

III.  SUMMARY JUDGMENT STANDARD ...............................................6

IV.  ARGUMENT .........................................................................................7

  A.  Defendant's Motion Is Not Supported By Admissible Evidence ...........7

  B.  As A Successor Manufacturer, MicroPort Has A Continuing Duty To Warn Patients Of Risks Associated With The PROFEMUR System .............................................................................8

    1.  The Continuing Duty To Warn Extends To Successor Entities Like MicroPort .............................................................9

    2.  MicroPort Gained Knowledge Of The Increased Risk Of Fracture Associated With CoCr Modular Necks Which Triggered Their Duty To Warn ....................................10

  C.  Material Facts Support Plaintiffs' Negligence – Failure To Recall/Retrofit Claim .......................................................................11

  D.  MicroPort's Failure To Warn And Failure To Timely Recall Was A Proximate Cause of Plaintiffs' Injuries ...........................................12

  E.  MicroPort Concealed Material Facts Of The Number Of Fatigue Fractures At the Oval Taper Junction From Dr. Snibbe And The Orthopedic Community ......................................................................13

  F.  Material Facts Support Plaintiffs' Fraudulent Misrepresentation Claim ................................................................................................14

  G.  A Factual Dispute Exists With Respect to Plaintiffs' Negligent Misrepresentation Claim ...................................................................15

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

H.    Material Facts Exist Which Support an Award of Punitive Damages ................................................................................ 16

V.    CONCLUSION ................................................................................ 18

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**PLAINTIFFS' OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

## Cases

*American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,*
 96 Cal. App. 4th 1017 (2002)................................................................16

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ..........................................................................6

*Balido v. Improved Mach., Inc.,*
 29 Cal. App. 3d 633 (1972).................................................................11

*Burroughs v. Precision Airmotive Corp.,*
 78 Cal. App. 4th 681 (2000)................................................................10

*Campbell v. State Dept. of Soc. & Health Servs.,*
 671 F.3d 837 (9th Cir. 2011) ...............................................................6

*Elias v. Hewlett-Packard, Co.,*
 No. 12-CV-00421(LHK), 2014 U.S. Dist. 16836 (N.D. Cal. Feb 5, 2014)....14

*Engalla v. Permanente Medical Group, Inc.,*
 15 Cal. 4th 951 (1997).......................................................................14

*Evon v. Law Offices of Sidney Mickell,*
 688 F.3d 1015 (9th Cir. 2012)...............................................................6

*Gee v. Tenneco, Inc.,*
 615 F.2d 857 (9th Cir. 1980)................................................................9

*Hernandez v. Badger Constr. Equip. Co.,*
 28 Cal. App. 4th 1791 (1994)..............................................................11

*Hernandez v. City of Oakley,*
 No. C-11-02415 JCS, 2012 U.S. Dist. LEXIS 159256 (N.D. Cal. Nov. 6,
 2012)................................................................................................12

*Hoch v. Allied-Signal, Inc.,*
 24 Cal. App. 4th 48 (1994)..................................................................17

*Johnson & Johnson v. Superior Court,*

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

3

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

192 Cal. App. 4th 757 (2011) ........................................................................ 16

*King Tuna, Inc. v. Anova Food, Inc.*,
    No. 07-CV-7451 ODW (JWJX), 2009 U.S. Dist. LEXIS 22901 (C.D. Cal.
    Mar. 10, 2009) ............................................................................................. 7

*Liebling v. Novartis Pharm. Corp.*,
    No. 11-CV-10263 MMM (MRWx), 2014 U.S. Dist. LEXIS 195476 (C.D.
    Cal. Mar. 24, 2014) ..................................................................................... 7

*Lunghi v. Clark Equipment Co.*,
    153 Cal. App. 3d 485 (1984) ........................................................... 8, 10, 11

*Munchkin, Inc. v. Luv N' Care, Ltd.*,
    No. 2:13-cv-07228 ODW (AGRx), 2015 U.S. Dist. LEXIS 189539 (C.D. Cal.
    Jan. 21, 2015) .............................................................................................. 7

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp.,
Inc.*,
    171 Cal. App. 4th 35 (2009) ........................................................................ 16

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30 (1975) ........................................................................... 15

*Oxford v. Foster Wheeler LLC*,
    177 Cal. App. 4th 700 (2009) ...................................................................... 8

*R Power Biofuels, LLC v. Chemex LLC*,
    No. 16-CV-00716 LHK, 2016 U.S. Dist. LEXIS 156727 (N.D. Cal. Nov. 11,
    2016) ........................................................................................................... 15

*Resnick v. Hyundai Motor Am., Inc.*,
    No. CV 16-00593-BRO (PJWx), 2016 U.S. Dist. LEXIS 160179 (C.D. Cal.
    Nov. 14, 2016) ............................................................................................ 14

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    630 F.3d 866 (9th Cir. 2010) ...................................................................... 6

*Roberts v. Electrolux Home Prods.*,
    No. 12-CV-1644 CAS (VBKx), 2013 U.S. Dist. LEXIS 185488 (C.D. Cal.
    Mar. 4, 2013) ......................................................................................... 10, 11

**PLAINTIFFS' OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

*Romero v. Nev. Dep't of Corr.*,
    No. 2:08-cv-808 JAD (VCF), 2013 U.S. Dist. LEXIS 168736 (D. Nev. Nov.
    27, 2013) ................................................................................................7

*Rosa v. Taser Int'l, Inc.*,
    684 F.3d 941 (9th Cir. 2012) ...............................................................8

*Samuels v. Holland Am. Line-USA, Inc.*,
    656 F.3d 948 (9th Cir. 2011) ...............................................................6

*Spinks v. Equity Residential Briarwood Apartments*,
    171 Cal. App. 4th 1004 (2009) ...........................................................17

*Thrifty-Tel, Inc. v. Bezenek*,
    46 Cal. App. 4th 1559 (1996) .............................................................15

*Tomek v. Apple, Inc.*,
    636 Fed. Appx. 712 (9th Cir. 2016) ...................................................14

*Torres v. Xomox Corp.*,
    49 Cal. App. 4th 1 (1996) .....................................................................8

*Universal By-Products, Inc. v. City of Modesto*,
    43 Cal. App. 3d 145 (1974) ................................................................15

*Valentine v. Baxter Healthcare Corp.*,
    68 Cal. App. 4th 1467 (1999) ...............................................................8

**California Cases**

CACI 1205 .................................................................................................8

CACI 1222 .................................................................................................8

CACI 1223 ...............................................................................................11

**Federal Statutes**

21 C.F.R. 803 ...........................................................................................9

21 C.F.R. 803.50 ......................................................................................9

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

5

21 C.F.R. 806 ................................................................................................9

21 C.F.R. 820 ................................................................................................9

21 C.F.R. 820.3 .............................................................................................9

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**PLAINTIFFS' OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant MicroPort Orthopedics, Inc. (hereinafter "MicroPort") fails to carry its burden on summary judgment as to Plaintiffs Richard B. Sarafian's and Kristin Biorn's (herein after "Sarafian and Biorn") claims for negligence, negligent failure to recall/retrofit, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, and punitive damages. The record before the Court establishes that there are genuine issues of material fact regarding: (1) whether MicroPort's failure to provide a post-sale warning was reasonable under the circumstances; (2) whether MicroPort's failure to recall or retrofit was unreasonable under the circumstances; and (3) whether MicroPort's intentional concealment of known safety risks from surgeons and patients constitute clear and convincing evidence of malice, fraud or oppression.

Plaintiffs suffered catastrophic injuries as a result of the flawed design of the CoCr modular neck, and the evidence reveals that MicroPort's failure to warn of the known dangers of the component was the cause. Before the launch of the CoCr modular neck in 2009, Wright, MicroPort's predecessor, manufactured and sold a virtually identical component, the PROFEMUR titanium modular neck. A review of the evidence in this case demonstrates that the long titanium modular neck has a well-documented failure history that foreshadowed the dangers of the CoCr modular neck. By 2008, based on the failure history of the titanium modular neck, Wright had all the information that would have led a reasonable medical device manufacturer to halt production of the CoCr modular neck. However, prioritizing profits over patient safety, Wright rushed the CoCr modular neck to market without adequate testing, and continued to sell the device even after it became clear that the CoCr modular necks suffered from the same design defect as the titanium modular necks.

/ / /

MicroPort purchased the entire PROFEMUR product line from Wright in January, 2014. Through the corporate knowledge which was immediately obtained at the time of the sale, MicroPort became aware of the inherent risk of fracture associated with the CoCr modular neck. Despite this knowledge, MicroPort downplayed the increasing number of fractures, even after the evidence regarding the CoCr's inherent defects started mounting. MicroPort failed to recall the device or to provide a clear and specific warning to surgeons or patients regarding the true risks of fatigue fracture for more than a year and a half after initially becoming aware of the problem. For Plaintiffs, the delay was catastrophic.

## II.    STATEMENT OF FACTS

### A.    By 2004 Wright Was Aware Of The Risks Of The PROFEMUR Modular Neck, But Concealed Those Risks From The Public

The complete PROFEMUR Hip System is comprised of two separate component parts: a PROFEMUR tapered stem and a PROFEMUR modular neck. The two components are joined together at the oval taper junction, also known as the neck-stem interface. Wright launched the PROFEMUR line domestically in the early 2000s. SGD 1. At that time, the modular neck component was manufactured only in titanium alloy. Shortly thereafter, in 2005, Wright began receiving notice of PROFEMUR neck fractures at the oval taper junction. SGD 2.

By October 2008, Wright was aware of at least twenty-nine modular neck fractures, and was forced to address the rising failure rate through an internal investigation mandated by the Food and Drug Administration ("FDA"), a Corrective and Preventive Action ("CAPA").[1] SGD 3. The investigation revealed that all of the

---

[1] The FDA requires that all manufacturing companies establish and maintain procedures for implementing a CAPA process, which identifies the action(s) needed to correct and prevent recurrence of a nonconforming product and other quality problems. 21 CFR 820.100 (2017). The purpose of a CAPA investigation is to collect and analyze information, identify and investigate product and quality problems, and take appropriate and effective corrective and/or preventive action to
(footnote continued)

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

2

reported modular neck fractures occurred at the oval taper junction, the very location where Sarafian's and Biorn's modular necks fractured. SGD 4. By December of 2008 the reported number of fractures had grown to thirty-five. SGD 5. That same year a CRITT Report concluded that the titanium modular neck failure was not due to "bad material" or a "metallurgic defect[]," placing in question the design of the component, not its titanium composition. SGD 6.

While internally grappling with the increasing number of reported titanium modular neck fractures, Wright concealed from Dr. Snibbe, Mr. Sarafian's and Ms. Biorn's implanting surgeon, and the orthopedic community, the extent and severity of the problem. SGD 7. Instead of warning orthopedic surgeons of the dangers posed by the PROFEMUR modular neck design, Wright minimized the fractures as isolated occurrences that happened only in overweight, "high demand" patients. SGD 8.

### B. Wright Launched The CoCr Modular Neck But Quickly Learned It Suffered From The Same Defects As Were Seen In Titanium Modular Necks

To protect the profitability of its PROFEMUR product line, Wright scrambled to replace the titanium neck with a "substantially equivalent" component that could integrate seamlessly with the PROFEMUR stem.[2] In 2009 Wright introduced the CoCr modular neck to the public. SGD 12. Wright touted the CoCr modular neck

_____

prevent or minimize device failures. *Id.*

[2] Before marketing the CoCr modular neck, Wright had to obtain authorization from the Food and Drug Administration ("FDA"), and the fastest approach to getting a product cleared is through the 510(k) application process. SGD 9. In order to receive 510(k) clearance, Wright had to establish that the CoCr modular neck was **substantially equivalent** to a legally marketed device, known as a predicate device. In its submission to the FDA, Wright represented that the predicate device of the CoCr modular neck was the titanium modular neck. SGD 10, 11.

3

for its "superior strength," and ability to provide greater stability to more active, demanding patients. SGD 13.

On June 17, 2013, Wright received notice of the first CoCr modular neck fracture. SGD 14. Wright's internal records confirm that this fracture occurred at the oval taper junction, but Dr. Snibbe was never notified of this fracture. SGD 15.

If Dr. Snibbe had known of the actual risks associated with the CoCr modular neck, he would not have utilized it in either Sarafian's or Biorn's hip replacement surgery. SGD 16. Had Dr. Snibbe learned of these risks after Plaintiffs' respective implantation surgeries but before their catastrophic failures, he would have notified Sarafian and Biorn of the true fracture risk and would have discussed the possibility of a planned revision surgery to replace the defective modular neck component. SGD 17. Similarly, had Sarafian and Biorn been advised of the fracture risk before their devices fractured they would have undergone a planned revision surgery. SGD 18. In a planned revision surgery the surgeon can remove the modular neck from the stem without cutting through the patient's bone, muscles, and tendons, as is required in an emergency trochanteric osteotomy after implant fracture. SGD 19.

C.   **Despite Continuing Reports Of Both CoCr and Titanium Modular Neck Failures, MicroPort Failed To Recall Or Provide Post-Sale Warnings To Plaintiffs**

In early 2013, a Wright consultant warned the company of a serious corrosion problem involving the CoCr modular necks. In a series of emails to various Wright corporate executives, including its president, Dr. Lowry Barnes, an experienced orthopedic surgeon and Wright consultant, expressed grave concerns regarding the CoCr modular neck. He was experiencing clinical failures in his patients, and urged Wright to pull the component from the market without further delay. SGD 20. Wright elected to disregard Dr. Barnes' warnings, and kept the CoCr modular necks on the market. Instead, it turned its focus to selling its hip and knee division to MicroPort.

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**PLAINTIFFS' OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S MOTION FOR SUMMARY JUDGMENT**

On January 9, 2014, Wright sold its OrthoRecon Division to MicroPort Orthopedics, Inc. ("MicroPort"). The OrthoRecon Division was the hip division responsible for the design, manufacture, marketing, and sale of the CoCr modular neck. SGD 21. As part of the acquisition, a majority of Wright's employees responsible for the engineering, design, testing, marketing, and complaint tracking of the PROFEMUR product line immediately transitioned to MicroPort, which took over Wright's facilities. SGD 22. Accordingly, all of Wright's institutional knowledge was transferred to MicroPort at the time of the sale. *Id*. It was a seamless and instantaneous transfer at the date of the closing. By then, there were already three reported CoCr modular neck fractures of which Wright (and now MicroPort) were aware. SGD 23.

As the new manufacturer of the PROFEMUR system, MicroPort also inherited Wright's obligations of complaint reporting, post-market testing, and post-sale warnings to consumers (SGD 24) – obligations which MicroPort initially ignored. SGD 25.

Unable to ignore the increasing rate of fracture any longer, on July 9, 2014, MicroPort initiated a CAPA internal investigation to assess the risks posed by the CoCr modular neck. SGD 26. Fracture analyses confirmed that all failed necks fractured at the oval taper junction, and exhibited the same signs of fretting and corrosion as was seen in the titanium modular neck fractures. SGD 27. MicroPort's investigative team recognized that CoCr modular necks were fracturing at a high rate, and ultimately recommended that the company cease manufacturing the component and "remove any existing inventory from the market." *Id.*

In conjunction with the CAPA 290 investigation, in February 2015, at MicroPort's request, Brad James, a principal engineer at Exponent (where two of Defendants' experts in this case work) examined and analyzed two fractured CoCr necks that exhibited substantial fretting corrosion at the oval taper junction. SGD 28. Notably, Brad James found that the fatigue cracks in the fractured neck components

5

initiated from within the oval taper junction in the exact manner in which the titanium modular necks had fractured. SGD 29. Still, MicroPort took no immediate action to notify surgeons or remove the product from the market. CoCr modular necks continued to fracture. SGD 30-32.

MicroPort continued to receive reports of modular neck fractures after Plaintiffs' implantation surgeries. By January 9, 2015, the total number of CoCr fractures reported had climbed to fourteen. SGD 30. On April 5, 2015, the day Biorn's CoCr modular neck fractured, Wright was aware of nineteen other CoCr modular neck fractures. SGD 31. When Sarafian's CoCr modular neck fractured, the reported number of fractures had risen to twenty-eight. SGD 32.

On August 7, 2015, almost 20 months after first acquiring the PROFEMUR line, MicroPort finally announced a recall of the CoCr modular neck and pulled the defective device from the market.

### III.   SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, show that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1024 (9th Cir. 2012). The moving party has the burden of establishing that there are no material disputes of fact. *Campbell v. State Dept. of Soc. & Health Servs.*, 671 F.3d 837, 849 (9th Cir. 2011). In considering the motion, the Court "must draw all reasonable inferences in favor of the nonmoving party." *Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 952 (9th Cir. 2011). The "central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Id.* citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). "Where material factual disputes exist, the court must allow a jury to resolve them." *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 871 (9th Cir. 2010). In this

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

6

case, material factual issues exists as to each of Plaintiffs' causes of action, and therefore summary judgment is improper.

## IV.    ARGUMENT

### A.    Defendant's Motion Is Not Supported By Admissible Evidence

To support its Motion for Summary Judgment, MicroPort relies on the unsworn expert reports of Steven Kurtz and Harold Pellerite. However, in the Ninth Circuit, "it is well established that unsworn expert reports are inadmissible and cannot be used to create a triable issue of fact for purposes of summary judgment." *Liebling v. Novartis Pharm. Corp.*, No. 11-CV-10263 MMM (MRWx), 2014 U.S. Dist. LEXIS 195476, at *2-3 (C.D. Cal. Mar. 24, 2014); *King Tuna, Inc. v. Anova Food, Inc.*, No. 07-CV-7451 ODW (JWJX), 2009 U.S. Dist. LEXIS 22901, at *1 (C.D. Cal. Mar. 10, 2009) (stating "[i]t is well-settled that under Fed. R. Civ. P. 56(e), unsworn expert reports are not admissible to support or oppose summary judgment" and that "to be competent summary judgment evidence, an expert report must be sworn to or otherwise verified, usually by a deposition or affidavit."); *Munchkin, Inc. v. Luv N' Care, Ltd.*, No. 2:13-cv-07228 ODW (AGRx), 2015 U.S. Dist. LEXIS 189539, at *6 (C.D. Cal. Jan. 21, 2015) (stating "[i]n order to be competent summary judgment evidence, an expert report must be sworn to or otherwise verified, usually by a deposition or affidavit").

Therefore, expert opinions are admissible only where "the factual basis for the opinion is stated in the affidavit." *Romero v. Nev. Dep't of Corr.*, No. 2:08-cv-808 JAD (VCF), 2013 U.S. Dist. LEXIS 168736, at *42 (D. Nev. Nov. 27, 2013) *citing Bulthuis v. Rexall Corp.*, 789 F.2d 1315, 1318 (9th Cir. 1985). The opinions of Steven Kurtz and Harold Pellerite are contained in an unsworn expert report unaccompanied by any expert affidavit or declaration. *See* Decl. of Ryan O'Neil in Supp. of Def. Mot. for Summ. J. at Ex. C and Ex. U. Such unsworn reports cannot be considered as competent summary judgment evidence.

/ / /

1

2

**B.    As A Successor Manufacturer, MicroPort Has A Continuing Duty To Warn Patients Of Risks Associated With The PROFEMUR System**

3    In California, manufacturers of prescription medical devices, such as the

4    CoCr modular necks at issue here, have a continuing duty to warn of the dangers

5    associated with their product. CACI 1205, 1222 (stating "[defendant] had a

6    continuing duty to warn physicians as long as the product was in use"); *see also*

7    *Valentine v. Baxter Healthcare Corp.*, 68 Cal. App. 4th 1467, 1482 (1999)

8    (upholding a verdict where the jury was instructed that "[a] manufacturer's duty to

9    warn is a continuous duty which lasts as long as the product is in use . . . the

10    manufacturer must continue to provide physicians with warnings, at least so long as

11    it is manufacturing and distributing the product.").

12    Numerous California decisions have explicitly or implicitly recognized a

13    manufacturer's continuing duty to warn. *See Lunghi v. Clark Equipment Co.,* 153

14    Cal. App. 3d 485, 494 (1984) (finding that defendant's post-sale "knowledge of the

15    injuries caused by [its product] imposed a duty to warn of the danger, and/or a duty

16    to conduct an adequate retrofit campaign"); *see also Oxford v. Foster Wheeler LLC*,

17    177 Cal. App. 4th 700, 721 (2009) (stating "negligence of a manufacturer may be

18    established by a failure to act after the product has been distributed to its end

19    user"); *Torres v. Xomox Corp.,* 49 Cal. App. 4th 1, 16 (1996) (finding that a "duty to

20    warn may also arise if it is later discovered that the product has dangerous

21    propensities, and breach of that duty is a form of negligence"); *see also Rosa v.

22    Taser Int'l, Inc.*, 684 F.3d 941, 949 (9th Cir. 2012) (holding "though California law

23    measures the strict liability duty to warn from the time a product was distributed, a

24    manufacturer may be liable under negligence for failure to warn of a risk that was

25    subsequently discovered"). In this case, MicroPort gained knowledge of modular

26    neck fracture risks directly from its former Wright employees, and by virtue of

27    CRITT reports, its CAPA investigation, and complaint files. SGD 22. None of this

28    important information was communicated to doctors, including Dr. Snibbe. *See*

8

SGD 15. This material information should have been provided to users of the device in the form of a clear and specific warning and immediate recall of the product.

### 1. The Continuing Duty To Warn Extends To Successor Entities Like MicroPort

Under both Federal regulatory authority and California case law, "It is clear that a successor corporation may acquire an independent duty to warn where defects in a predecessor's products come to its attention." *Gee v. Tenneco, Inc.,* 615 F.2d 857, 866 (9th Cir. 1980).

By virtue of the extensive rules and regulations governing the medical device industry, a successor manufacturer steps into the shoes of a predecessor with respect to the duties of reporting on and warning of defects. *See* 21 C.F.R. 820.3; 21 C.F.R. 803.50. The FDA regulatory scheme contemplates that at all times there will be a designated manufacturer – here, the holder of a 510(k) clearance – responsible for the reporting requirements and responsibilities for the entire product line, regardless of date of manufacture or the sale of the line between device manufacturers. *Id.; see also* 21 C.F.R. 820 *et seq.* Here, MicroPort assumed those duties as a matter of law when it purchased the 510(k) clearance for the PROFEMUR line in January, 2014. GSD 24. This extensive federal regulatory oversight is critical to monitor patient safety for permanently implanted devices such as the CoCr modular necks, as it assures that devices will continue to be monitored regardless of the corporate status of the original manufacturer.

When MicroPort became the manufacturer of the PROFEMUR line, it stepped into the shoes of Wright and automatically assumed the duties and obligations imposed by federal law, including post-market surveillance and reporting. 21 C.F.R. 820 *et seq.* MicroPort's duty to maintain complaint files, issue warnings and recalls, and update product labeling and marketing was thus the same as its predecessor Wright's, and derives from its status as the current manufacturer of the product. *Id.; see also* 21 C.F.R. 806; 21 C.F.R. 803. It is precisely this duty, to

9

provide adequate and effective warnings regarding complaints and product defects, that was breached when MicroPort failed to send clear and specific warnings to doctors of the CoCr necks' propensity to break. *See Burroughs v. Precision Airmotive Corp.*, 78 Cal. App. 4th 681, 702 (2000) (finding a similar duty with respect to a successor entity producing airplane components under the FAA.)

**2.    MicroPort Gained Knowledge Of The Increased Risk Of Fracture Associated With CoCr Modular Necks Which Triggered Their Duty To Warn**

A manufacturer's duty to provide a post-sale warning is triggered as soon as the manufacturer becomes aware of any new danger associated with the product. *See Roberts v. Electrolux Home Prods.,* No. 12-CV-1644 CAS (VBKx), 2013 U.S. Dist. LEXIS 185488, at *39-40 (C.D. Cal. Mar. 4, 2013); *Lunghi*, 153 Cal. App. 3d at 494 (holding that the defendant's discovery of the "dangerous propensities" of a machine after it had been on the market imposed a duty to warn or retrofit).

MicroPort admits that it "noticed an unexpected increase in fractures associated with the PROFEMUR CoCr neck" in 2014, after it had purchased the PROFEMUR line from Wright. Mot. Summ. J. 5:20-21. This apparently newfound discovery as to the product's dangerous propensities created a duty on the part of MicroPort to issue a warning to surgeons and patients as to the newly discovered increased risk of fracture. *Lunghi*, 153 Cal. App. 3d at 494. This is especially true given the fact that MicroPort learned not only of an increased rate of fractures, but that the fractures were occurring in patients who were not high-activity, heavy-weight patients; a fact which expressly contradicted Wright's previous marketing materials regarding which patients were at an increased risk of fracture. SGD 30-32

These new facts showing an increased risk of danger associated with the CoCr modular necks triggered a duty on the part of MicroPort to provide post-sale warnings to all surgeons and patients who had CoCr modular neck implants. However, MicroPort failed to satisfy its duty to provide such a warning. In fact, it is

10

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

unknown whether MicroPort could have satisfied its duty even if it chose to, as MicroPort had neglected to continue to participate in FDA-mandated patient tracking since purchasing the PROFEMUR line. SGD 25. MicroPort's wholesale abdication of its duties to provide post-sale warnings to CoCr patients and their surgeons creates a triable issue of fact as to Plaintiffs' negligence claim.

### C.   Material Facts Support Plaintiffs' Negligence – Failure To Recall/Retrofit Claim

To establish a claim for negligent failure to recall or retrofit, a plaintiff must establish: (1) that the defendant manufactured or sold the product, (2) that defendant knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner, (3) that the defendant became aware of this defect after the product was sold, (4) that the defendant failed to recall the product, (5) that a reasonable manufacturer or seller under the same or similar circumstances would have recalled the product, (6) that the plaintiff was harmed, and (7) that the defendant's failure to recall the product was a substantial factor in causing plaintiff's harm. CACI 1223.

As MicroPort admits, California law recognizes that a duty to recall or retrofit a product can arise due to either a shift in industry standards or post-sale knowledge that puts a manufacturer on notice of a dangerous product defect. *Roberts*, 2013 U.S. Dist. LEXIS 185488, at *39-40; *Lunghi*, 153 Cal. App. 3d at 494 (holding that the defendant's discovery of the "dangerous propensities" of a machine after it had been on the market imposed a duty to warn or retrofit). Once a manufacturer is on notice that its product is dangerous, it must do "everything reasonably within its power to prevent injury." *Hernandez v. Badger Constr. Equip. Co*., 28 Cal. App. 4th 1791, 1828 (1994); *Balido v. Improved Mach., Inc.*, 29 Cal. App. 3d 633, 649 (1972).

By 2014, MicroPort was aware that the CoCr necks suffered from the same defects and were prone to the same fatigue fracture as the titanium modular necks. SGD 26-28. That information, alone, constituted a reason to recall the PROFEMUR

11

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

CoCr necks. SGD 24, 26-30. Instead, MicroPort elected to keep the CoCr modular necks on the market, without so much as issuing an additional warning or providing information to surgeons regarding the known fractures. Thus, MicroPort did not satisfy its obligation to do everything within its power to prevent injury resulting from the known dangers of fatigue fracture which MicroPort knew existed. MicroPort's failure to timely act creates a material issue of fact and therefore summary judgment on Plaintiffs' claims for negligent failure to recall should be denied.

### D.    MicroPort's Failure To Warn And Failure To Timely Recall Was A Proximate Cause of Plaintiffs' Injuries

MicroPort attempts to meet its burden on summary judgment by asserting that "there is no evidence . . . that Plaintiffs' PROFEMUR modular necks would have been revised prophylactically . . . if MicroPort had issued the voluntary recall at an earlier time." Mot. Summ. J. 9:4-9. However, such an assertion is insufficient, as a matter of law, to satisfy Defendant's obligations as the moving party. Under Rule 56, a party who does not bear the burden of proof at trial may discharge its burden on summary judgment either by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, . . . [by] show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Hernandez v. City of Oakley*, No. C-11-02415 JCS, 2012 U.S. Dist. LEXIS 159256, at *69-70 (N.D. Cal. Nov. 6, 2012).

Here, MicroPort states that neither Ms. Biorn nor Mr. Sarafian, at their depositions, volunteer that they would have agreed to a scheduled revision. This falls far short of establishing that Ms. Biorn and Mr. Sarafian cannot prove that fact at trial, especially as counsel for MicroPort failed to ask Plaintiffs whether they would have agreed to a scheduled revision had they known of the true risks associated with their CoCr modular necks. SGD 18.

12

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

Had MicroPort issued a recall of the CoCr modular necks when it became aware of fractures in January, 2014, or even warned of the true risks associated with the CoCr modular necks at that time, Dr. Snibbe would have provided that information to Plaintiffs. SGD 17. Plaintiffs, in turn, would have sought scheduled, non-emergency revision surgeries to avoid the risk of an emergency trochanteric osteotomy which causes trauma to the bone, muscle and tissue. SGD 18. However, both Plaintiffs were prevented from making that decision due to MicroPort's failure to provide information to Dr. Snibbe of the true risks of the CoCr modular neck. Accordingly, their CoCr modular necks continued to be subjected to corrosion and fretting, and their fatigue fractures continued to propagate for over a year while MicroPort concealed this information from surgeons and their patients.

**E.      MicroPort Concealed Material Facts Of The Number Of Fatigue Fractures At the Oval Taper Junction From Dr. Snibbe And The Orthopedic Community**

MicroPort misconstrues Plaintiffs' fraudulent concealment claims. The claims against MicroPort are derived from MicroPort's failure to disclose relevant information of the increased risk of fracture of the CoCr after January, 2014, which would have allowed Plaintiffs to obtain non-emergency revision surgeries before their CoCr modular necks fractured. By January, 2014, and certainly by January, 2015, MicroPort knew and understood that CoCr modular necks were fracturing at a higher rate than expected, and that they were fracturing in patients who were previously thought to have no contraindications, including lighter-weight and low activity patients. SGD 26, 28-29, 30-32. Despite this knowledge, MicroPort failed to convey that information to doctors or patients, which ultimately deprived them of the option to obtain a non-emergency revision. SGD 18. This omission, alone, is sufficient to create a triable issue of material fact sufficient to defeat MicroPort's motion for summary judgment.

/ / /

---

13

All of the cases cited in support of MicroPort's argument that there is no post-sale duty to warn are distinguishable. *Tomek v. Apple, Inc.* dismissed the plaintiff's fraudulent concealment claims at the pleading stage because the plaintiff had failed to plead specific facts to show the defendant knew it's claims were false at the time they were made. *Tomek v. Apple, Inc.*, 636 Fed. Appx. 712, 713-14 (9th Cir. 2016). Likewise, in both *Elias v. Hewlett-Packard Co.* and *Resnick v. Hyundai Motor Am., Inc.*, the Court dismissed the plaintiffs' claims, at the pleading stage, due to inadequate pleading. *Elias v. Hewlett-Packard, Co.*, No. 12-CV-00421(LHK), 2014 U.S. Dist. 16836, at *22 (N.D. Cal. Feb 5, 2014); *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWx), 2016 U.S. Dist. LEXIS 160179, at * 46 (C.D. Cal. Nov. 14, 2016).

In contrast, the undisputed facts of this case establish that MicroPort was actually aware, and tracking, CoCr fractures as early as May, 2014. *See* SGD 23, 26, 30. Thus, MicroPort was aware that CoCr modular necks were fracturing at an increased rate, and fracturing in patients for which the device was not contraindicated. In addition it had knowledge that the fatigue fractures were occurring in the same location as the titanium predecessor device. GSD 27, 29. MicroPort's knowledge, coupled with its concealment of important safety information from doctors and patients, constitutes fraud sufficient to create a triable issue of material fact as to Plaintiffs' claim for fraudulent concealment.

## F.     Material Facts Support Plaintiffs' Fraudulent Misrepresentation Claim

The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997) (internal quotation marks omitted). "[A] representation may be made orally, in writing, or by nonverbal conduct." *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1567

14

(1996).

Concealment or non-disclosure of a material fact can support a fraudulent misrepresentation claim, where the concealment is calculated to induce a false belief. *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975); *see also Thrifty-Tel, Inc.*, 46 Cal. App. 4th at 1567 (stating "[a] misrepresentation need not be oral; it may be implied by conduct"); *Universal By-Products, Inc. v. City of Modesto*, 43 Cal. App. 3d 145, 151 (1974) (stating "[a] misrepresentation need not be express but may be implied by or inferred from the circumstances"). The distinction between active concealment and affirmative misrepresentation is therefore not legally significant. *Id.* Both are fraudulent, and an active concealment has the same effect as a representation that is positive in form. *Id.*

Here, MicroPort failed to disclose the mounting number of titanium and CoCr modular neck fractures, despite knowing that the fractures were occurring at a higher rate than expected, and in patients who were originally believed to have no contraindications. SGD 30-32. By intentionally withholding these facts from Dr. Snibbe, MicroPort prevented Dr. Snibbe and his patients from learning of the specific dangers of their CoCr modular necks, and acting thereon. *See* SGD 15. Thus, triable issues of material fact exist as to Plaintiffs' claims.

## G. A Factual Dispute Exists With Respect to Plaintiffs' Negligent Misrepresentation Claim

A claim for negligent misrepresentation requires a showing of the same elements as fraudulent misrepresentation, except that plaintiffs need not show that the defendant was aware that the representation was false when made. It is sufficient to establish that the defendant lacks reasonable grounds for believing the representation to be true. *R Power Biofuels, LLC v. Chemex LLC*, No. 16-CV-00716 LHK, 2016 U.S. Dist. LEXIS 156727, at *33 (N.D. Cal. Nov. 11, 2016) *citing Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp., Inc.*,

15

171 Cal. App. 4th 35, 50 (2009).

As set forth above, by January, 2014, and certainly by January, 2015, MicroPort knew and understood that CoCr modular necks were fracturing at a higher rate than expected, and that they were fracturing in patients which were previously thought to have no contraindications, including lighter-weight and low impact patients such as Ms. Biorn and Mr. Sarafian. SGD 23, 26, 30-32. However, MicroPort failed to alert doctors of the increased rate of fracture or of the mounting complaints it had received of fractured CoCr modular necks, and failed to issue any recall of the device until August, 2015, over a year and a half after it first obtained knowledge of CoCr modular neck fractures. *See* SGD 30-32. It was unreasonable for MicroPort to continue to assume, in 2015, that the CoCr modular necks were safe. *See* SGD 20. Nevertheless, MicroPort continued to impliedly make such a representation to Plaintiffs, through Dr. Snibbe. Such conduct creates a triable issue of fact as to Plaintiffs' negligent misrepresentation claim.

## H.   Material Facts Exist Which Support an Award of Punitive Damages

The question of whether the defendant's conduct will support an award of punitive damages is generally one for the trier of fact, "since the degree of punishment depends on the peculiar circumstances of each case." *Johnson & Johnson v. Superior Court*, 192 Cal. App. 4th 757, 762 (2011). Even where the plaintiffs' burden will ultimately be to establish punitive damages by "clear and convincing" evidence, the plaintiff is not obligated to prove a case for punitive damages at the summary judgment stage. *Id. citing American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton,* 96 Cal. App. 4th 1017, 1049 (2002). Therefore, summary judgment on the issue of punitive damages is proper only "when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression." *Id. citing Hoch v. Allied-Signal,*

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

*Inc.*, 24 Cal. App. 4th 48, 60-61 (1994); *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009).

In January, 2014, MicoPort purchased the PROFEMUR system from Wright. SGD 21. At that time, MicroPort inherited Wright's duties and obligations of complaint reporting, post-market testing, and post-sale warnings to consumers. SGD 24. However, MicroPort elected to ignore these obligations; first seeking an exemption from their FDA reporting and tracking duties, and then flatly disregarding them after an exemption was denied. SGD 25. MicroPort's failure to follow through on its post-market tracking and reporting is even more egregious as MicroPort was already aware, at the time it was negotiating with the FDA for an "exemption" from its reporting requirements, of a sharp uptick in the number of CoCr modular neck fractures. SGD 30, 31.

By January, 2014, and certainly by January, 2015, MicroPort knew and understood that CoCr modular necks were fracturing at a higher rate than expected, and in the same location as the titanium modular necks. SGD 20, 27-29, 30-31. However, MicroPort failed to notify surgeons for over a year and a half.

MicroPort failed to provide any post-sale warnings to doctors or patients, and failed to issue a recall of the device until August 2015, over one and a half years after it first obtained knowledge of CoCr modular neck fractures. SGD 33. When a recall was finally initiated, the FDA classified it as a "Class I" recall. A class I recall is designated when there is a reasonable probability that use of the product will cause serious health consequences or death. *Id.*

It was within MicroPort's power, as the owner of the CoCr 510(k) clearance, to issue a recall of the device earlier in time. Instead, MicroPort elected to keep the CoCr modular necks on the market, without issuing an additional warning or providing information to surgeons regarding the known fractures. *See* SGD 20, 30-33. All of these facts taken in context, establish material issues of fact as to Wright's willful and conscious disregard of the rights or safety of patients such as Ms. Biorn

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

17

and Mr. Sarafian. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiffs' claim for punitive damages should be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment should be denied in its entirety.

Dated: October 23, 2017        **KIESEL LAW LLP**

By:    */s/ Helen Zukin*
_____
Helen Zukin
D. Bryan Garcia
Melanie Meneses Palmer
Cherisse H. Cleofe
Ashley M. Conlogue

**WARSHAUER-MCLAUGHLIN LAW GROUP, P.C.**
George E. McLaughlin
  *gem@w-mlawgroup.com*
1890 Gaylord Street
Denver, CO 80206
Tel. 720-420-9800
Fax  303-322-3423

Attorneys for Plaintiffs
Kristin Biorn and  Richard B. Sarafian

**PLAINTIFFS' OPPOSITION TO DEFENDANT MICROPORT ORTHOPEDICS, INC.'S MOTION FOR SUMMARY JUDGMENT**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California