Helen Zukin, State Bar No. 117933
  *zukin@kiesel.law*
D. Bryan Garcia, State Bar No. 216904
  *garcia@kiesel.law*
Melanie Meneses Palmer, State Bar No. 286752
  *palmer@kiesel.law*
Cherisse H. Cleofe, State Bar No. 290152
  *cleofe@kiesel.law*
Ashley M. Conlogue, State Bar No. 292083
  *conlogue@kiesel.law*
**KIESEL LAW LLP**
8648 Wilshire Boulevard
Beverly Hills, California 90211-2910
Tel:   310-854-4444
Fax:   310-854-0812

George E. McLaughlin [admitted *pro hac vice*]
  *gem@w-mlawgroup.com*
**WARSHAUER-MCLAUGHLIN LAW GROUP, P.C.**
1890 Gaylord Street
Denver, Colorado 80206
Tel:   720-420-9800
Fax:   303-322-3423

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN BIORN,<br><br>          Plaintiff,<br><br>     v.<br><br>WRIGHT MEDICAL TECHNOLOGY, INC., a Delaware corporation; and MICROPORT ORTHOPEDICS, INC., a Delaware corporation.<br><br>          Defendants. | Case No. CV15-07102 CAS (KSx) [Consolidated with Case No. CV15-09397 CAS (KSx)]<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING A DUTY TO MAKE "SAFE AND EFFECTIVE" PRODUCTS AND OTHER FDA STANDARDS** |

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

RICHARD B. SARAFIAN,

        Plaintiff,

    v.

WRIGHT MEDICAL TECHNOLOGY,
INC., a Delaware corporation;
MICROPORT ORTHOPEDICS, INC.,
a Delaware corporation; and DOES 1-
10,

        Defendants.

| | |
|---|---|
| Judge: | Hon. Christina A. Snyder |
| Crtrm.: | 8D, 8th Floor |
| | |
| Date: | November 20, 2017 |
| Time: | 11:00 a.m. |
| Crtrm: | 8D |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING A DUTY TO MAKE "SAFE AND EFFECTIVE" PRODUCTS AND OTHER FDA STANDARDS**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION AND RELEVANT FACTS**

Defendant Wright Medical Technology, Inc.'s ("Wright") and MicroPort Orthopedics, Inc.'s ("MicroPort") (collectively, "Defendants") motion in *limine* to exclude argument or evidence concerning a duty to make "safe and effective" products and other FDA standards should be denied as (1) Defendants had a duty to make safe products under the law; and (2) because Defendants themselves utilized the term in their marketing materials to consumers.  Placing restrictions on Plaintiffs Kristin Biorn's and Richard B. Sarafian's (collectively, "Plaintiffs") use of these words would be improper and, as such, Defendants' Motion should be denied.

## **II.    LEGAL ARGUMENT**

### **A.    Legal Standards for Evidence**

Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "To be 'relevant,' evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same. All that is required is a 'tendency' to establish the fact at issue." *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007). The fact to be proved "may be ultimate, intermediate, or evidentiary; it matters not, so long as it is of consequence in the determination of the action." Fed. R. Evid. 401 advisory committee's note.

### **B.    The Term "Safe and Effective" is Relevant to Plaintiffs' Causes of Action for Negligence, Negligent Misrepresentation and Fraudulent Concealment**

This Court should deny Defendants' motion, in *limine*, to preclude Plaintiffs from using the words "safe" and "effective" at trial as these terms are relevant to Plaintiffs' negligence, negligent misrepresentation and fraudulent concealment

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING A DUTY TO MAKE "SAFE AND EFFECTIVE" PRODUCTS AND OTHER FDA STANDARDS**

causes of action.

"A manufacturer/seller of a product is under a duty to exercise reasonable care in its design so that it can be safely used as intended by its buyer/consumer." *Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal. App. 3d 135, 141. Accordingly, the "safety" of the PROFEMUR device is clearly relevant to Plaintiffs' negligence cause of action and, accordingly, this Court should not preclude Plaintiffs from using this term at trial.

Further, the term "safe and effective" is relevant to Plaintiffs' negligent misrepresentation and fraudulent concealment claims as Wright represented to consumer's that it monitors the "safety and efficacy" of the PROFEMUR devices through post-market surveillance systems. *See,* Declaration of Helen Zukin ("Zukin Decl."), Ex.1.  Wright made this representation to consumers even though Wright failed to enroll clinical sites or patients in the final post-market surveillance plan approved by the FDA as it relates to the PROFEMUR device.  As such, the term "safe and effective" is clearly relevant to Plaintiffs' negligent misrepresentation and fraudulent concealment claims.

Further, MicroPort also represented to consumers that they "should expect [MicroPort] to remain committed to keeping you informed about the safe and effective uses of [their] products."  *See,* Zukin Decl., Ex. 2.   Clearly, preventing Plaintiffs from establishing the elements of their causes of action and/or using the term "safe and effective" even though it was used by Defendants would be unfair and must be rejected. And in that regard, the *Christiansen* court admitted that it "generally is liberal in allowing argument by counsel." *Christiansen v. Wright Med. Tech. Inc. (In re Wright Med. Tech. Inc.)*, 2015 U.S. Dist. LEXIS 147805, at *53 (N.D. Ga. Oct. 30, 2015). At the close of trial, the jury will be instructed on the applicable law and Defendants' duties. Preemptively restricting the words and arguments of Plaintiffs' counsel through the instant Motion would be highly

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING A DUTY TO MAKE "SAFE AND EFFECTIVE" PRODUCTS AND OTHER FDA STANDARDS**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

1  prejudicial and it should be denied.

2       **C.**    **This Court Should Not Bar Argument or Testimony that the**
3                **PROFEMUR Device Should Have Been Designed to Be Reasonably**
              **"Safe and Effective"**

4

5       Defendants improperly seek to preclude any testimony or argument that

6  Defendants had a duty to make its products "safe and effective" because, they

7  contend, such standard concerns only the FDA's premarket approval ("PMA")

8  process.  MIL at p. 3. But "the FDA simultaneously maintains the exhaustive PMA

9  and the more limited § 510(k) processes in order to ensure both that medical devices

10  are reasonably safe and effective and that, if the device qualifies under the § 510(k)

11  exception, it is on the market within a relatively short period of time."  *Webster v.*

12  *Pacesetter, Inc*., 171 F. Supp. 2d 1, 11 (D.D.C. 2001) (quoting *Buckman*, 121 S. Ct.

13  at 1018).  In other words, the reasonable safety and efficacy of medical devices is

14  indisputably a goal of the 510(k) process, and the phrase "safe and effective" is not

15  restricted to the PMA process.

16       Moreover, Defendants' witnesses, including Patrick Fisher, Brian McDaniel,

17  and Jon Moseley discuss the importance of the safety and efficacy of Wright's

18  products. *See,* Zukin Decl., Ex. 3-5. Wright's own marketing materials also boast

19  about the clinical effectiveness and dependability of the PROFEMUR device. *See,*

20  Zukin Decl., Ex. 6. And MicroPort touts its commitment to the "safe and effective

21  use of its products" on its website. *See,* Zukin Decl., Ex. 7.  Defendants cannot hide

22  from the language they use in their marketing materials which were relied upon by

23  Dr. Jason Snibbe, Plaintiffs' orthopedic surgeon, in this case.

24       Dr. Snibbe and the parties' orthopedic surgeon experts, other "users" of the

25  PROFEMUR device, should be permitted to testify about their respective

26  expectations that the PROFEMUR device would be reasonably safe and effective.

27  As a result of representations made by Defendants' corporate representatives,

28

3

orthopedic surgeons were led to believe the PROFEMUR device was safe for use in their patients and would be an effective hip prosthetic for prolonged use. Although Defendants' experts may state that the PROFEMUR was "not defective" or "not unreasonably dangerous," it simply means "safe." That these terms are also utilized in the regulatory process does not render them unduly prejudicial or require their exclusion. The terms "safe" and "effective" are ubiquitous to the common vernacular. These words have common meanings which are broader then their use by the FDA. Therefore, Plaintiffs' should be permitted to use the terms "safe" and "effective," and the Motion should, accordingly, be denied.

## III.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion.

Dated: October 30, 2017                    **KIESEL LAW LLP**

By:        /s/ Helen Zukin

Helen Zukin
D. Bryan Garcia
Melanie Meneses Palmer
Cherisse H. Cleofe
Ashley M. Conlogue

**WARSHAUER-MCLAUGHLIN LAW GROUP, P.C.**
George E. McLaughlin
  *gem@w-mlawgroup.com*
1890 Gaylord Street
Denver, CO 80206
Tel. 720-420-9800
Fax  303-322-3423

Attorneys for Plaintiffs
Kristin Biorn and  Richard B. Sarafian

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**KIESEL LAW LLP**
Attorneys at Law
Beverly Hills, California

## <u>DECLARATION OF HELEN ZUKIN</u>

I, Helen Zukin, hereby declare as follows:

1.      I am an attorney at law licensed to practice before all courts of the State of California. I am a partner with Kiesel Law LLP, counsel for Plaintiffs Richard B. Sarafian and Kristin Biorn in the above-captioned action. This Declaration is offered in support of Plaintiffs' Opposition to Defendants Wright Medical Technology, Inc.'s and MicroPort Orthopedics, Inc.'s Motion *in Limine* to Exclude Argument or Evidence Concerning a Duty to Make "Safe And Effective" Products and Other FDA Standards. If called as a witness I could and would competently testify to the following based on personal knowledge:

2.      Attached hereto as Exhibit "1" is a true and correct **REDACTED** copy of "World Wide Neck Field Communication," WMT_BIORN001785-WMT_BIORN0086.

3.      Attached hereto as Exhibit "2" is a true and correct **REDACTED** copy of "Q&A for Cobalt Chrome Modular Neck Implants," MICRO_KB_0000146-MICRO_KB_0000151.

4.      Attached hereto as Exhibit "3" is a true and correct copy of relevant excerpts from the Deposition of Patrick Fisher, taken on May 24, 2017.

5.      Attached hereto as Exhibit "4" is a true and correct copy of relevant excerpts from the Deposition of Brian McDaniel, taken on March 29, 2017.

6.      Attached hereto as Exhibit "5" is a true and correct copy of relevant excerpts from the Deposition of Jon Pope Mosely, taken on April 21, 2017.

7.      Attached hereto as Exhibit "6" is a true and correct copy of "PROFEMUR Total Hip Modular Neck System Technical Monograph" WMT_BIORN000051-062.

8.      Attached hereto as Exhibit "7" is a true and correct copy of "Physical Education." This document was printed at my direction on October 29, 2017, from

1

1   http://www.ortho.microport.com/index.cfm/education/learn-about-our-

2   products/physician-education/.

3       I declare under penalty of perjury under the laws of the United States of

4   America that the foregoing is true and correct.

5       Executed October 30, 2017, at Beverly Hills, California.

6

7                                        ___/s/ Helen Zukin_____

8                                        Helen Zukin

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING A DUTY TO MAKE "SAFE AND EFFECTIVE" PRODUCTS AND OTHER FDA STANDARDS**

# EXHIBIT 1

*(ENTIRE DOCUMENT PROTECTED PURSUANT TO LOCAL RULE 79-5 AND PROTECTIVE ORDER SIGNED BY COURT ON MAY 23, 2016 (DOC NOS. 53 AND 70  )*

# EXHIBIT 2

*(ENTIRE DOCUMENT PROTECTED*
*PURSUANT TO LOCAL RULE 79-5 AND*
*PROTECTIVE ORDER SIGNED BY COURT ON*
*MAY 23, 2016 (DOC NOS. 53 AND 70  )*

# Exhibit 3

**KRISTIN BIORN, ET AL. VS. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.**
**Patrick Fisher on 05/24/2017**

```
 1              IN THE UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
 2    _____

 3    KRISTIN BIORN,            )
                                )
 4                              )
           Plaintiff,           )
 5                              )
      VS.                       )  NO. CV15-07102-CAS (KSx)
 6                              )  Consolidated with Case No.
                                )  CV15-09397 CAS (KSx)
 7                              )
      WRIGHT MEDICAL TECHNOLOGY,)
 8    INC., et al.,             )
                                )
 9                              )
           Defendants.          )
10    _____

11    RICHARD B. SARAFIAN,      )
                                )
12                              )
           Plaintiff,           )
13                              )
      VS.                       )
14                              )
      WRIGHT MEDICAL TECHNOLOGY,)
15    INC., et al.,             )
                                )
16                              )
           Defendants.          )
17    _____

18                    VIDEOTAPED DEPOSITION

19                            OF

20                       PATRICK FISHER

21                       MAY 24, 2017

22

23

24

25
```

 1   the products that the surgeon may be using?

 2       A.    I mean, that's partly the surgeon's

 3   responsibility and the sales representative,

 4   hospital staff.

 5       Q.    Mr. Fisher, do you agree that it was the

 6   responsibility of the sales representative to

 7   familiarize the surgeon with the surgical procedures

 8   that Wright Medical at least suggested as being the

 9   surgical procedure or technique for using its

10   products?

11            MR. BATSIDES:  I'll object to form of the

12   question.  You can answer.

13       A.    Sales reps are charged with helping to

14   educate the surgeons on the safe and effective use

15   of products.

16   BY MR. MCLAUGHLIN:

17       Q.    Wright Medical would publish surgical

18   technique brochures for each of its PROFEMUR hip

19   products, didn't it?

20       A.    Yes.

21       Q.    Those were brochures that were available

22   to distributors and sales representatives?

23       A.    Correct.

24       Q.    From time to time, they may be revised or

25   updated?

```
 1                C E R T I F I C A T E

 2  STATE OF TENNESSEE      )
                            )
 3  COUNTY OF SHELBY        )

 4
            I, Korian Neal, LCR #402, RPR, CCR, Licensed
 5  Court Reporter and Notary Public, in and for the
    State of Tennessee, do hereby certify that the above
 6  1 was reported by me, and the transcript is a true
    and accurate record to the best of my knowledge,
 7  skills, and ability.

 8          I further certify that I am not related to
    nor an employee of counsel or any of the parties to
 9  the action, nor am I in any way financially
    interested in the outcome of this case.
10
            I further certify that I am duly licensed by
11  the Tennessee Board of Court Reporting as a Licensed
    Court Reporter as evidenced by the LCR number and
12  expiration date following my name below.

13          I further certify that this transcript is
    the work product of this court reporting agency and
14  any unauthorized reproduction and/or transfer of it
    will be in violation of Tennessee Code Annotated
15  39-14-104, Theft of Services.

16          IN WITNESS WHEREOF, I have hereunto set my
    hand and affixed my notarial seal this 25th day of
17  May 2017.

18

19

20  _____
    Korian Neal, RPR, CCR, LCR #402
21  Expiration Date 06-30-2018
    Notary Public Commission Expires
22  04-25-2018

23

24
```

# Exhibit 4

**KRISTIN BIORN vs. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.**
30(b)(6)                          Brian McDaniel on 03/29/2017

1          UNITED STATES DISTRICT COURT
          CENTRAL DISTRICT OF CALIFORNIA
2  _____

3  KRISTIN BIORN,

4       Plaintiff,

5  VS.              NO. CV15-07102 CAS(KSx)

6  WRIGHT MEDICAL TECHNOLOGY,
   INC., a Delaware corporation; and
7  MICROPORT ORTHOPEDICS, INC.,
   a Delaware corporation.
8
        Defendants.
9  _____

10  RICHARD B. SARAFIAN,

11     Plaintiff,

12  V.

13  WRIGHT MEDICAL TECHNOLOGY,
    INC., a Delaware corporation;
14  WRIGHT MEDICAL GROUP, INC., a
    Delaware corporation; MICROPORT
15  ORTHOPEDICS, INC., a Delaware
    corporation; and DOES 1-10,
16
     Defendants.
17

18

19          30(B)(6) DEPOSITION

20               OF

21          BRIAN MCDANIEL

22          MARCH 29, 2017

23

24

25

 1   accepted by all regulatory bodies.

 2        Q.    Does FDA do testing?

 3        A.    No.

 4        Q.    Somebody other than FDA?

 5        A.    It would be the manufacturer, the

 6   material manufacturer's responsibility to do that

 7   testing, to show proof or evidence to a

 8   regulatory body that it was safe and effective.

 9        Q.    Would you ever look over Mr. Nambu's

10   testing?

11        A.    Yes.

12        Q.    How so?

13        A.    A lot of times his testing would be used

14   to support our regulatory filings to get

15   clearance for the device.

16        Q.    Are you ever involved in CAPAs?

17        A.    Sometimes.

18        Q.    Have you ever been involved in CAPAs as

19   it relates to Profemur devices?

20        A.    The gentleman that managed our hip

21   product group at the time, there was a CAPA on

22   the titanium modular necks he reported to me, so

23   I was aware of that going on.

24        Q.    Were you aware with the CAPA for the

25   cobalt chrome?

Case 2:15-cv-07102-CAS-KS   Document 250   Filed 10/30/17   Page 18 of 43   Page ID #:6973

KRISTIN BIORN vs. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.
30(b)(6)                    Brian McDaniel on 03/29/2017                    Page 153

```
 1                 C E R T I F I C A T E

 2   STATE OF TENNESSEE      )
                             )
 3   COUNTY OF SHELBY        )

 4
             I, Polly W. Wardlaw, LCR #019, Licensed
 5   Court Reporter, in and for the State of
     Tennessee, do hereby certify that the above
 6   proceeding was reported by me, and the transcript
     is a true and accurate record to the best of my
 7   knowledge, skills, and ability.

 8           I further certify that I am not related
     to nor an employee of counsel or any of the
 9   parties to the action, nor am I in any way
     financially interested in the outcome of this
10   case.

11           I further certify that I am duly licensed
     by the Tennessee Board of Court Reporting as a
12   Licensed Court Reporter as evidenced by the LCR
     number and expiration date following my name
13   below.

14           I further certify that this transcript is
     the work product of this court reporting agency,
15   and any unauthorized reproduction and/or transfer
     of it will be in violation of Tennessee Code
16   Annotated 39-14-104, Theft of Services.

17

18   _____
     Polly W. Wardlaw, LCR #019
19   Expiration Date 6-30-2018
     ALPHA REPORTING CORPORATION
20   236 Adams Avenue
     Memphis, Tennessee 38103

21

22

23

24

25
```

# Exhibit 5

**KRISTIN BIORN vs. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.**
30(b)(6)                    **Jon Pope Moseley on 04/21/2017**

```
 1            IN THE UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
 2   _____

 3   KRISTIN BIORN,              )
                                 )
 4                               )
          Plaintiff,             )
 5                               )
     VS.                         ) NO. CV15-07102-CAS (KSx)
 6                               ) Consolidated with Case No.
                                 ) CV15-09397 CAS (KSx)
 7                               )
     WRIGHT MEDICAL TECHNOLOGY,)
 8   INC., et al.,               )
                                 )
 9                               )
          Defendants.            )
10   _____

11   RICHARD B. SARAFIAN,        )
                                 )
12                               )
          Plaintiff,             )
13                               )
     VS.                         )
14                               )
     WRIGHT MEDICAL TECHNOLOGY,)
15   INC., et al.,               )
                                 )
16                               )
          Defendants.            )
17   _____

18          RULE 30(b)(6) VIDEOTAPED DEPOSITION

19                          OF

20                  JON POPE MOSELEY

21                   APRIL 21, 2017

22

23

24

25
```

```
 1              MR. BATSIDES:  Just allow the question to

 2   be finished.

 3              MS. ZUKIN:  The court reporter is going to

 4   tell us.

 5              THE WITNESS:  Just trying to get out of

 6   here.  Sorry.

 7              MS. ZUKIN:  We all feel that way.

 8   BY MS. ZUKIN:

 9      Q.  Let me back up for a moment.  As I said,

10   this isn't my area of expertise.

11              Let me ask you this:  What is the purpose

12   of testing an implantable medical device before

13   putting it on the market for use in patients?

14      A.  The overall response is it's to show that

15   the device is safe and effective.

16      Q.  And in testing -- so you would agree with

17   me that the primary purpose of testing an

18   implantable product, such as the type that Wright

19   manufactured, sold, was to assure that those

20   products were safe before they were sold and

21   implanted in patients?

22              MR. BATSIDES:  Objection to form.  You can

23   answer.

24      A.  Yes.  That is one of the primary reasons,

25   to show that they're safe but also to show that
```

Case 2:15-cv-07102-CAS-KS   Document 250   Filed 10/30/17   Page 22 of 43   Page ID #:6977

**KRISTIN BIORN vs. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.**
30(b)(6)                     Jon Pope Moseley on 04/21/2017                     Page 55

 1    they're effective.

 2    BY MS. ZUKIN:

 3        Q.    And when you say effective, do you mean

 4    that they are effective for the use they are

 5    intended?

 6        A.    Exactly.

 7        Q.    So for the modular neck, the cobalt chrome

 8    modular neck, what were you looking for in terms of

 9    it being effective?

10        A.    The -- in this particular case, the safety

11    and effectiveness kind of go hand in hand.  But

12    effectiveness is -- I'd say for the modular necks,

13    most of the testing was aimed towards the safety

14    aspect primarily.  Because if you look at the

15    overall geometry of the completed device, what's

16    assembled, the stem and the neck, look just like a

17    nonmodular stem.

18        Q.    You mean like a monoblock?

19        A.    Right.  So you've got -- so if -- if you

20    can show that it's safe, you already have

21    substantial clinical evidence that similar designs

22    perform effectively.  So in this particular case,

23    most of the testing is aimed towards safety as

24    opposed to determining is it going to work.  Because

25    we already know that hip stems of that type work

Case 2:15-cv-07102-CAS-KS   Document 250   Filed 10/30/17   Page 23 of 43   Page ID #:6978

**KRISTIN BIORN vs. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.**

30(b)(6)                    Jon Pope Moseley on 04/21/2017                    Page 291

```
 1                    C E R T I F I C A T E

 2    STATE OF TENNESSEE      )
                              )
 3    COUNTY OF SHELBY        )

 4
               I, Korian Neal, LCR #402, RPR, CCR, Licensed
 5    Court Reporter and Notary Public, in and for the
      State of Tennessee, do hereby certify that the above
 6    1 was reported by me, and the transcript is a true
      and accurate record to the best of my knowledge,
 7    skills, and ability.

 8             I further certify that I am not related to
      nor an employee of counsel or any of the parties to
 9    the action, nor am I in any way financially
      interested in the outcome of this case.
10
               I further certify that I am duly licensed by
11    the Tennessee Board of Court Reporting as a Licensed
      Court Reporter as evidenced by the LCR number and
12    expiration date following my name below.

13             I further certify that this transcript is
      the work product of this court reporting agency and
14    and any unauthorized reproduction and/or transfer of it
      will be in violation of Tennessee Code Annotated
15    39-14-104, Theft of Services.

16             IN WITNESS WHEREOF, I have hereunto set my
      hand and affixed my notarial seal this 1st day of
17    May 2017.

18

19

20    _____
      Korian Neal, RPR, CCR, LCR #402
21    Expiration Date 06-30-2018
      Notary Public Commission Expires
22    04-25-2018

23

24

25
```

KRISTIN BIORN vs. WRIGHT MEDICAL TECHNOLOGY, INC., ET AL.
Jon Pope Moseley on 04/21/2017

30(b)(6)                                                          Page 292   #1

1        ERRATA SHEET FOR THE TRANSCRIPT OF:

2               JON MOSELEY

3            CORRECTIONS Page 1

| Page | Line | Now Reads | Should Read | Reasons |
|------|------|-----------|-------------|---------|
| 16 | 1 | "Went to..." | "I went to..." | missing pronoun |
| 18 | 24 | "Barb Lynn.." | "Barb Blum..." | corrected surname |
| 19 | 1 | "There was ..." | "There were..." | grammer |
| 19 | 4 | "In a matter.." | "In a manner..." | corrected word |
| 31 | 19 | "..scan electron.." | "..scanning electron..." | corrected word |
| 39 | 18 | "...body similar to.." | "...body, similar to..." | corrected punctuation |
| 60 | 10 | "..needed the change." | "..needed to change." | corrected word |
| 62 | 22 | "..or to keep..." | "...to keep.." | clarify meaning |
| 73 | 24 | "..the term worst case." | "..the term "worst-case."" | added punctuation |
| 75 | 02 | "TS-0878" | "TS08-0078" | corrected format |
| 89 | 12 | "..PROFEMUR or ..." | "PROFEMUR for ..." | corrected word |
| 92 | 4 | "..there is some..." | "..there are some..." | corrected word |
| 97 | 10 | "..8" | "0.9" | corrected number & format |

18

19  *May-31-2017*
    (Date)                  *Jon Moseley*
                      Signature of Witness

20  Sworn to and Subscribed before me, *Patricia Powell*,
    this *31st* day of *May*, 2017.

22  *Patricia Powell*           *my commission expires 04/01/2019*

    PATRICIA POWELL
    STATE OF TENNESSEE
    NOTARY PUBLIC
    SHELBY COUNTY

# Exhibit 6

**PROFEMUR**® Total Hip Modular Neck System



T E C H N I C A L   M O N O G R A P H



EXHIBIT 137
Watson
3-28-17



WRIGHT.



**PROFEMUR**®
total hip SYSTEM
MODULAR NECK

technical monograph

WMT_BIORN000052

# PROFEMUR®
## modular neck

### introduction

The PROFEMUR® Hip Stems feature patented modular neck technology, which allows the surgeon to optimally restore normal hip biomechanics for each patient. Since 1985, surgeons have been utilizing the PROFEMUR® Modular Necks for:

- Minor variations in cup position or stem anteversion
- Impingement issues
- Anatomic variation in version neck orientation
- Avoiding the use of elevated liners & custom implants
- Independently adjust limb length and offset
- Additional neck length options for ceramic bearings

Additionally, surgeons who advocate small incisions have enjoyed the streamlined design of the PROFEMUR® Hip Stems. During implantation with a fixed neck hip stem, surgeons were having difficulty implanting the stem in the ideal orientation due to impingement of the fixed neck on the soft tissues during stem insertion. Since the PROFEMUR® Hip Stems have a modular neck, surgeons can easily achieve the optimal stem orientation during insertion with small incision.

Surgeons have chosen the PROFEMUR® Hip Stems for over 50,000 patients due to the modular necks and the surgeon ability to obtain a stable hip for each and every patient.





**FIGURE 1** | Head Centers Provided by Various PROFEMUR® Neck Configurations

### DESIGN HISTORY

The first PROFEMUR® modular neck prototypes were produced in 1985 by Wright Cremascoli Ortho (Milan, Italy). Following extensive finite element analysis and mechanical testing at the renowned Rizzoli Institute, various neck configurations (featuring an oval Morse taper) were finalized and commercialized (US patent 4,957,510) | FIGURE 1

WMT_BIORN000053

TECHNICAL MONOGRAPH | PROFEMUR® MODULAR NECK



**FIGURE 2** | PROFEMUR® R Hip System

## CLINICAL HISTORY

Modular necks have been employed by Wright Cremascoli Ortho since 1985. Over 50,000 have been successfully implanted in both primary and revision hip procedures.

Köhler, Köstler, Willert[1] in 1997 shared their clinical experience with hip revision cases using multiple hip stems which included the PROFEMUR® Hip Implants. They revised 67 patients with 69 PROFEMUR® Hip Implants with a follow up period of 6 - 54 months | FIGURE 2. Of the stems revised to PROFEMUR® Hips, 31 were cemented and 38 were noncemented. Through use of the PROFEMUR® Hip for revision, the mean Harris Hip Scores improved from 44.6 to 75 points and radiographic examination showed good bone integration and formation. *No complications were reported due to the use of the modular necks.*

Masse *et al* [2] in 1996 related 2.5 year clinical results with 134 cases, using the PROFEMUR® Hip for revision. In these cases, the mean Harris hip scores improved an average of 34 points. *No complications related to the use of modular necks were reported.*

Toni *et al* [3] in 2001 published 3 to 5 year clinical results of 216 cementless hip arthroplasties using PROFEMUR® Modular Necks and ceramic bearings in 208 patients between 1995 and 1997 with Anca-Fit™ Stem. From radiographic analysis, 99.4% of the prostheses showed osseointegration. There was no evidence of periprosthetic osteolysis other than one patient who required a stem and cup revision after 2 years. *No failures were related to the neck modularity.*

Also in 2001, Toni *et al* [4] reported clinical experience with 347 modular neck cementless hip stem implantations between January 1996 and December 1998. Follow up of 12 to 45 months was obtained for 316 of the patients. There were four cases of dislocation (1.2%), two healed without surgical intervention. One was caused by undersizing of the stem. The fourth case was corrected surgically by replacing the long straight modular neck with a 15-degree retroverted long neck.

==In summary, the clinical effectiveness and dependability of the modular necks has been consistently demonstrated throughout the PROFEMUR® Hip clinical history.== *Utilized in both primary and revision applications, the current neck design has been successfully employed to improve surgical outcomes with no reported failures.*

WMT_BIORN000054



**FEMORAL NECKS**

| TYPE | A |
| --- | --- |
| **Straight (Neutral)** | |
| Short | 28 |
| Long | 38.5 |
| **Varus/Valgus 8 Degree** | |
| Short | 27 |
| Long | 38 |
| **Ante/Retro 8 Degree** | |
| Short | 28 |
| Long | 38.5 |
| **Ante/Retro 15 Degree** | |
| Short | 28 |
| Long | 38.5 |
| **4 Degree Ante/Retro - 6 Degree Varus/Valgus 1** | |
| Short | 28 |
| Long | 38.5 |
| **4 Degree Ante/Retro - 6 Degree Varus/Valgus 2** | |
| Short | 28 |
| Long | 38.5 |

**FIGURE 3** | PROFEMUR® Neck Geometries



**FIGURE 4** | Reduced Profile of PROFEMUR® Necks Compared to Standard Fixed Necks

**RANGE OF MOTION IN DEGREES**
28mm BY 0mm HEAD LENGTH



| Wright [A] | 132° |
| Biomet [B] | 126° |
| Howimedica [C] | 120° |
| Zimmer [D] | 116° |

**FIGURE 5** | Range of Motion in Degrees

Ref. A    Data on file at Wright Medical Technology, Inc.
Ref. B    www.biomet.com, 2001
Ref. C    www.ceramic-hip.com, 2001
Ref. D    VerSys™ Design Rationale, 1996 Zimmer, Inc. publication

## MODULAR NECK DESIGN FEATURES

As indicated in the results of Toni et al [4], one of the greatest benefits of the PROFEMUR® Modular Necks is that they allow surgeons to correct leg length and offset intraoperatively. The surgeon may choose between six interchangeable neck geometries available in two lengths. | **FIGURE 3** The varied configurations give surgeons the ability to address impingement and dislocation issues intraoperatively; thus allowing greater ability to balance the hip and restore normal motion. Furthermore, the necks were designed with a reduced profile between the tapers to optimize range of motion | **FIGURES 4 & 5.** Further adjustments may be made by varying femoral head neck length (available in -3.5, 0, +3.5, +7, and +10.5 mm). The neck and head are connected via a standard 12/14 Morse taper. In addition, the necks are composed of a titanium alloy (Ti6Al4V) which is proven to afford suitable mechanical properties, ideal biocompatibility, and excellent resistance to corrosion.



Metal-on-poly cup system

Metal-on-metal cup system

LINEAGE® Ceramic-on-ceramic cup system

CONSERVE® TOTAL with BFH™ Technology cup system

CONSERVE® TOTAL with Spiked Shell cup system

*The benefits of these necks are further complemented by Wright's alternative hard bearings options illustrated above. These advanced materials are less forgiving to impingement and require optimal head position for ideal longevity, a fundamental feature of the modular neck.*

WMT_BIORN000055

## TESTING

Modular neck clinical experience and extensive laboratory tests have proven the coupling between the modular neck and femoral implant provides:

* Structural reliability
* Absence of significant micromovement
* Absence of fretting corrosion

These excellent characteristics are obtained due to the patented geometry of the coupling. The neck taper and the femoral implant neck housing feature have an oblong, conical profile which provides excellent stability under stress and prevents significant movement. The surface of the modular neck taper is finely machined to create spiral grooving. When the neck is inserted into the neck housing the crests of these grooves deform; ensuring intimate contact and reduction of micromotion. The necks are made from titanium alloy (Ti6Al4V) which is proven to afford suitable mechanical properties, ideal biocompatibility, and excellent resistance to corrosion.

### PROFEMUR® R Revision System - Neck/Body Taper Assembly and Distraction[3]

Six neck/proximal body couplings were tested using the PROFEMUR® R revision hip in 2000 | **FIGURE 6** Assembly for four of the couplings occurred by three firm surgical mallet blows of the components on a wooden table-top. Assembly of the two remaining couplings occurred in a fresh cadaver femur. The average assembly force was 11,668 N for the table assembly and 10,568 N for the femoral assembly. The average distraction force was 3970 N for the table-assembled couplings and 3328 N for the couples assembled in the femur (both are nearly 3 times of a 250 lb. body weight, or 1112 N) | **FIGURE 7** This test was a static test since the implants were assembled then immediately distracted. *It can be assumed that the distraction values would be higher once the implant is subjected to axial, cyclic loading, i.e. walking.*



**FIGURE 6** | Distraction Testing





**FIGURE 7** | Neck/Body Taper Assembly and Distraction Loads

WMT_BIORN000056





**FIGURES 8 & 9 |** ISO Specification 7206/4



**FIGURE 10 |**Typical '10/9 Fatigue Testing Set-up with Environmental Chamber.

**'10/9 Fatigue Testing PROFEMUR® R, PROFEMUR® Z, and PROFEMUR® E Hips With and Without Plasma Spray Coating**[6,7,8,9,10]

Fatigue testing was performed at the WMT testing facility per ISO 7206/4 and 7206/8, on "worst-case" component combinations for each system | FIGURES 8 & 9. Using the ISO guidelines, the assembled components were fixtured in an acrylic potting media oriented at 10 degrees adduction and 9 degrees of flexion within an environmental chamber containing saline solution | FIGURE 10. This orientation represents the heel-strike phase of the gait cycle. In testing of each PROFEMUR' Hip System, all six samples passed the testing requirements with no failures after 5 million cycles at a maximum load of 2300 N. *After completion of the fatigue testing, the assembled components were checked and no visible signs of taper fretting were found around any of the modular connections or within the environmental chamber.*



PROFEMUR® E          PROFEMUR® Z



**FIGURE 11** |Deep Flexion Testing Set-up with Saline Drip Over Neck Taper.

### Deep Flexion Fatigue Testing[11, 12]

This test was performed on two occasions, once with the PROFEMUR® R Hip System and once with the PROFEMUR® Z Hip System. Twelve samples were tested to examine the structural integrity of the modular neck taper in the "worst case" orientation of a person rising from deep flexion, i.e. rising from a chair. The long varus/valgus neck and 10.5 mm long 28mm femoral head implant combination allowed the largest bending moment, as well as torsion, and represented the "worst-case" scenario for implant selection. The assembled implants were fixtured within the testing frame such that the orientation mimicked that of a sitting person's proximal femur. A maximum load of 2300 N was applied at a ninety degree angle (with respect to the floor) at 2 Hz for one million cycles | FIGURE 11. One million cycles is equivalent to rising from a chair fifty times a day for over fifty-four years. *None of the twelve specimens failed, and the neck remained fixed within the proximal body taper housing.*

### Fretting Analysis of the Neck Taper – Weight Loss[13]

A cyclic loading test was performed on two types of hip implants. One set of implants tested featured the same modular necks as the PROFEMUR® Hip System. The other implants tested were prototypes which featured a smaller neck taper. The tests were conducted in three different environments: FeCl3, buffered Ringer's solution, and air. Load was applied at 2 Hz ranging from 200 to 2100 N (3x 160 lbs. body weight) for one million cycles; which approximates a yearly loading cycle. Both taper sizes were found to be corrosion resistant, however there were signs of mechanical wear which differed widely between the two sizes. The prototype necks in the acidic FeCl3 lost an amount of material in the range of 100 to 200 mg. The necks identical to those of the PROFEMUR® Hip System showed a material loss in the range of 0 – 1mg. *This test demonstrated sound taper design is essential in minimizing both corrosion and mechanical wear.*

WMT_BIORN000058

### Fretting Analysis of the Neck Taper – Weight Loss

This study involved an accelerated cyclic loading test (10 Hz) in Ringer's solution with increasing loading regimes, which compared various implant body sizes to the weight loss of their modular necks. The implant tested had the same modular neck taper housing as the PROFEMUR® Hip System. Testing was performed for 5.5 million cycles to approximate the first 5 years post-implantation. The testing on the larger stems was continued to 20 million cycles | FIGURE 13. Fretting wear was characterized by the post-test weight lost by the neck after separation from the neck taper housing and removal of the femoral head. The weight loss due the head and neck taper could not be separated from the weight loss of the neck and body taper. The weight loss measurement was therefore entirely attributed to the neck and body taper. The larger stems exhibited the greater neck weight loss. It was noted that some weight loss came from separating the neck/body taper, and the material lost probably never have spread out of the taper area. Estimated weight loss in the worst case modular neck junction (largest stem) was 0.6 mg/year for the first 5 years and 0.1 mg/year for the next 15 years,

A normal and stable cementless hip implant is likely to produce less than 10 mg/year of metal debris.[15] *The amount of weight loss from the modular neck should therefore not have any significant effect; such as causing osteolysis.*

**NOTE** | Dividing the 2.54mg total weight loss by 20 yields the amount of weight loss per 1 million cycles | FIGURE 14 . Considering 1 million cycles to be equivalent to the number of cycles in 1 year allows direct comparison of weight loss per year to the 10mg weight loss from a cementless titanium stem rubbing against bone cited in this reference.



**FIGURE 13** |Fatigue Generated Titanium Production By Weight PROFEMUR® Modular Neck Loaded to 3300N



**FIGURE 14** |One Year Weight Loss (1 Million Cycles)

WMT_BIORN000059

TECHNICAL MONOGRAPH | PROFEMUR® MODULAR NECK



19kN (4300 lbs.) → PROFEMUR® System



20kN (4500 lbs.) - AML®

**FIGURE 15** |PROFEMUR® Modular Neck and AML®
Neck Yield Strength Test

**Modular Neck Yield Strength Compared to DePuy AML®**

This evaluation was performed to show the strength of the PROFEMUR® Hip
System modular neck compared to the "gold standard" of primary cement-
less THA. The assembled PROFEMUR® Hip System components (10.5 mm
long head, long straight neck, and small proximal body) were chosen to
match the neck length and offset of the 12mm DePuy AML® femoral
implant with a 10.5mm long 28mm femoral head. The PROFEMUR® Hip
and AML® specimens were fixed in acrylic and mounted within the testing
frame at the 10 degree adduction / 0 degree flexion orientation specified in
ISO 7206-6. The loading member of the test frame moved down onto the
head of each specimen at a rate of 25 mm/minute. The peak load recorded
signified the yield of the neck. *The load values shown to the left indicate the
PROFEMUR® Hip System modular neck has comparable strength to the AML®
femoral implant neck | FIGURE 15.*

As evidenced in this technical monograph, laboratory testing and clinical
history has consistently demonstrated the strength and durability of the
PROFEMUR® Modular Necks. It is hoped that familiarity with this work
may instill confidence in the longevity and effectiveness of these innovative
implants. Also, the benefits of modular necks are reaffirmed with every
surgical use. The multiple neck options ensure outstanding clinical results
by empowering surgeons with the ability to ideally fine-tune length and
femoral head position for every patient.

WMT_BIORN000060

## REFERENCES

1   "Management of Femoral Bone Defects in Total Hip Revision Using Cementless Modular PROFEMUR Revision Stem", Kohler, Kostler, Willert, Orthopaedic Department of the University of Gottingen, Germany. Presented at EFORT, April 1997, Barcelona.

2   "The Modular Prosthesis For Hip Revision Surgery: Experience with the PROFEMUR Stem", Massè, Scagnelli, Trossarello, Buratti, Randelli, Basso, Dei Poli, Quiretta, Leonardi, Massetti, Pugliese: Italian Journal of Orthopaedics and Traumatology Suppl. 1, Vol. XXII., Fasc. 2- GIUGNO 1996.

3   "Anatomic Cementless Total Hip Arthroplasty with Ceramic Bearings and Modular Necks: 3 to 5 Years Follow-Up", Toni A., Paderni S, Sudanese A, Guerra E, Traina F, Giardina F, Antonietti B. Giunti A: Hip International: Vol. 11, number 1, 2001, pages 1 – 17.

4   "Cementless Hip Arthroplasty with a Modular Neck", Toni A., Sudanese A, Paderni S, Guerra e, Bianchi G, Antonietti B, Giunti A: Chir. Organi Mov: LXXXVI, 2001, pages 73 – 85.

5   "Evaluation of Axial Taper Distraction of the PROFEMUR R Hip Replacement System Neck and Proximal Body", Wright Medical Technology, December 2000.

6   "Evaluation of Fatigue Properties of the PROFEMUR R Hip Replacement System" Wright Medical Technology, Sept. 2000.

7   "Evaluation of Fatigue Properties of the PROFEMUR Plasma Sprayed Hip Replacement System", Wright Medical Technology, May 2001.

8   "Evaluation of Fatigue Properties of the [PROFEMUR Z] Hip Replacement System with Modular Neck Feature", Wright Medical Technology, April 2002.

9   "Fatigue Testing of the PROFEMUR Z with Plasma Spray Hip Replacement System", Wright Medical Technology, 2002.

10   "Fatigue Testing of the [PROFEMUR E] Hip Replacement System", Wright Medical Technology, July 2002.

11   "Evaluation of Fatigue Properties of the PROFEMUR R Hip System in the Deep Flexion Orientation" Wright Medical Technology, March 2002.

12   "Evaluation of Fatigue Properties of the PROFEMUR Z Hip System in the Deep Flexion Orientation" Wright Medical Technology, November 2002.

13   "Determination of Static and Endurance Properties of Head and Neck Region of Femoral Component of Hip Joint Prostheses", Rizzoli Orthopaedic Institute, Bologna, June 2000.

14   "Design-related Fretting Wear in Modular Neck Hip Prosthesis", Viceconti, Ruggeri, Toni, Giunti: Journal of Biomedical Materials Research, Vol.30, 1996.

15   "Fretting Wear in a modular Neck Hip Prosthesis", Viceconti, Baleani, Squarzoni, Toni: Journal of Biomedical Materials Research, Vol. 35., 1997.

16   "Evaluation of the Neck Yield Strength of the PROFEMUR Hip System Compared to the DePuy AML Hip System" Wright Medical Technology, March 2002.

WMT_BIORN000061



**Wright Medical Technology, Inc.**
5677 Airline Road
Arlington, TN  38002
901.867.9971 phone
800.238.7188 toll-free
www.wmt.com

**Wright Cremascoli Ortho SA.**
Zone Industrielle la Farlecle
Rue Pasteur BP 222
83089 Toulon Cedex 09
France
011.33.49,408,7788 phone

PROFEMUR AND LINEAGE are registered marks of Wright Medical Technology, Inc.
U.S. Patent #4,957,510
™ Trademarks and ® Registered mark of Wright Medical Technology, Inc.
© 2004 Wright Medical Technology, Inc.  All Rights Reserved.

MH179-703
Rev.0904

WMT_BICRN000062

# Exhibit 7

 (/)

HOME (/)  >  EDUCATION  >  LEARN ABOUT OUR PRODUCTS
  >  PHYSICIAN EDUCATION (/INDEX.CFM/EDUCATION/LEARN-ABOUT-OUR-PRODUCTS/PHYSICIAN-EDUCATION/)

## Physician Education

MicroPort Orthopedics is committed to providing education and training opportunities for all of its products. Each year, MicroPort Orthopedics offers a wide variety of global, national, and regional medical education events.

Whether attending a cadaver training course, visiting MicroPort Orthopedics's global headquarters for a manufacturing tour, or observing a live surgery through the Peer-to-Peer Surgeon Visitation Program, MicroPort Orthopedics is committed to educating healthcare professionals on safe and effective use of its products.



**CALENDAR OF EVENTS**      **INTERESTED IN ATTENDING?**      **FIND A MPO DISTRIBUTOR**

# Meetings, Trainings and Didactic Events

### *Surgical Observation Visits*

This program offers an opportunity for surgeons to observe recognized leaders in their field in a surgical setting. It allows the visiting surgeon valuable insight into specific operating techniques or products with ample time for patient related, interactive discussion, planning and prep.

## Surgical Observation Visits with Cadaveric Labs

This program offers an opportunity for surgeons to conduct their first surgeries with our recognized leaders in their own hospital setting.

## Reverse Surgical Observation Visits

This program is designed to provide a technically experienced MicroPort consultant to attend & observe multiple live surgeries in the surgeon's own operating room.

## Dinner Meetings

These meetings offer a relaxed format where product experts give presentations and roundtable discussions on our techniques, implants and surgical tips and pearls.

## MicroPort On-Site Surgeon Visits

This program provides a unique opportunity for health care professionals to visit MicroPort's Arlington, Tennessee campus to experience one on one product training, touring of our manufacturing plant, R&D facilities and sawbones demonstrations with a half day or full day customized agenda.

## National Cadaveric Training Labs

These skills laboratories offer high-quality educational opportunities in conveniently located facilities or surgery centers while proctored by an experienced surgeon faculty.

## International Didactic Courses

MicroPort's didactic programs consist of lectures, discussions and reviews of orthopedic basic sciences and clinical concepts with global and regional experts. For more information click here (http://www.ortho.microport.com/index.cfm/corporate/international1/events-and-meetings/).

Calendar of Events
View List ()

# October 2017

| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | 1 | 2 AAHKS- Dallas, TX (/index.cfm/events/aahks-dallas-tx1/) | 3 | 4 |
| 5 AAHKS- Dallas, TX (/index.cfm/events/aahks-dallas-tx1/) | 6 | 7 | 8 | 9 | 10 | 11 |

---

## Interested in Attending?

Contact our Medical Education Department for information on any of our upcoming training events by using the inquiry form below.

**Request an Event**

What event are you interested in?

Full Name *

Your Title *

Zip Code

Phone Number *

Submit

 (/)

Need more information? Call MicroPort Orthopedics Customer Service at (866) 872-0211 or contact your MicroPort Orthopedics Representative.

CAREERS AT MICROPORT (/index.cfm/corporate/about-us/careers/)

PRESCRIBING INFORMATION (/index.cfm/ifus/)

CONTACT US FORM (/index.cfm/corporate/contact-us1/contact-us/#emailform)

News and Press Releases (/index.cfm/news-and-press-releases/)

Privacy Policy (/index.cfm/privacy-policy/)

Terms of Use (/index.cfm/terms-of-use/)

Sitemap (/index.cfm/site-map/)

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 30, 2017.

DATED: October 30, 2017            Respectfully Submitted,

KIESEL LAW LLP


By:        /s/ Helen Zukin
            Helen Zukin
             zukin@kiesel.law
            8648 Wilshire Boulevard
            Beverly Hills, California  90211
            Tel.: (310) 854-4444
            Fax: (310) 854-0812

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE ARGUMENT OR EVIDENCE CONCERNING A DUTY TO MAKE "SAFE AND EFFECTIVE" PRODUCTS AND OTHER FDA STANDARDS**

KIESEL LAW LLP
Attorneys at Law
Beverly Hills, California